UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WEEKEND WARRIOR CLOTHING, LLC, | Case No.: 1:23-CV-00752 |
| *Plaintiff*, | |
| | Judge:  Douglas R. Cole |
| v. | Magistrate Judge Stephanie K. Bowman |
| | |
| AMAZON.COM SERVICES, LLC; | **ORAL ARGUMENT REQUESTED** |
| AMAZON.COM, INC., | |
| *Defendants*.[1] | |

**PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

[1] This brief refers to Plaintiff as "WW" and to Defendants collectively as "Amazon."

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................5

II.    SUMMARY OF ARGUMENT ...........................................................................6

III.   STATEMENT OF FACTS ...................................................................................8

     A.      Amazon controls "Merch on Demand."...................................................8

         1.      Amazon ███████████████████████████████████ ██████.........................................................................................8

         2.      Amazon sells, ██████████████████████████.............9

     B.      WW creates and copyrights designs depicting fearful beers, dancing tacos, and other whacky characters. ..........................................................9

     C.      For years, WW notifies Amazon of stolen WW artwork all over Amazon, but Amazon leaves it up...........................................................................10

         1.      Tim Whelan's notices establish the connection between the Whelans, USADT, and WW...........................................................11

         2.      Tim Whelan notifies Amazon of its infringement of the WW Designs.......................................................................................14

     D.      The Reason Amazon Rejected WW's Notices .....................................16

     E.      Dubious ████████ Dire Consequences .........................................19

     F.      In the middle of litigation, Amazon declares Tim Whelan ████████...........20

     G.      Amazon sells WW counterfeits before and throughout the case. .........................21

IV.   ARGUMENT........................................................................................................22

     A.      Amazon is liable for copyright infringement on Merch. .....................22

     B.      Amazon directly infringed the WW Designs.......................................24

         1.      WW owns valid copyrights in the WW Designs. .......................24

         2.      The WW Designs are original...................................................24

         3.      Amazon copied the WW Designs' protectable expression.........................27

     C.      Amazon infringed the WW Designs willfully. .....................................28

V.     CONCLUSION....................................................................................................31

## **TABLE OF AUTHORITIES**

### **CASES**

*Bouchat v. Baltimore Ravens, Inc.*,
  241 F.3d 350 (4th Cir. 2001) ........................................................................................27

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
  585 F.3d 267 (6th Cir. 2009) ........................................................................................28

*Bridgeport Music, Inc. v. WM Music Corp.*,
  508 F.3d 394 (6th Cir. 2007) ........................................................................................22

*Broad. Music, Inc. v. Meadowlake, Ltd.*,
  754 F.3d 353 (6th Cir. 2014) ........................................................................................23

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*,
  329 F.3d 923 (7th Cir. 2003) ...................................................................................25, 26

*Calibrated Success, Inc. v. Charters*,
  72 F. Supp. 3d 763 (E.D. Mich. 2014)..........................................................................28

*Ducks Unlimited, Inc. v. Boondux, LLC*,
  2017 WL 3579215 (W.D. Tenn. Aug. 18, 2017)......................................................29, 30

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
  958 F.3d 532 (6th Cir. 2020) ...................................................................................27, 28

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)..................................................................................................7, 24

*Hayden v. 2K Games, Inc.*,
  629 F. Supp. 3d 736 (N.D. Ohio 2022)..........................................................................27

*Int'l Korwin Corp. v. Kowalczyk*,
  665 F. Supp. 652 (N.D. Ill. 1987) .................................................................................31

*Keeling v. Hars*,
  809 F.3d 43 (2d Cir. 2015)............................................................................................24

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) ........................................................................................29

*NCR Corp. v. Korala Assocs., Ltd.*,
  512 F.3d 807 (6th Cir. 2008) ...................................................................................22, 23

*North Coast Indus. V. Jason Maxwell, Inc.*,
  972 F.2d 1031 (9th Cir. 1992) ......................................................................................25

*Peer Int'l Corp. v. Pausa Recs., Inc.*,
    909 F.2d 1332 (9th Cir. 1990) ...............................................................................28

*Philpot v. L.M. Commc'ns II of S.C., Inc.*,
    343 F. Supp. 3d 694 (E.D. Ky. 2018) ..............................................................29, 31

*Philpot v. LM Commc'ns II of S.C.*,
    776 F. App'x 906 (6th Cir. 2019) .........................................................................29

*Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*,
    93 F.4th 985 (6th Cir. 2024) ........................................................................ *passim*

*Princeton Univ. Press v. Michigan Doc. Servs., Inc.*,
    99 F.3d 1381 (6th Cir. 1996) ...........................................................................7, 29

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    100 F.4th 659 (6th Cir. 2024) ..........................................................................6, 22

*Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*,
    2018 WL 4007537 (M.D. Tenn. Aug. 20, 2018) ..................................................29

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
    715 F.2d 1327 (9th Cir. 1983) ........................................................................27, 28

*Varsity Brands, Inc. v. Star Athletica, LLC*,
    799 F.3d 468 (6th Cir. 2015) ...............................................................................24

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir. 1994) .................................................................................29

## **STATUTES**

17 U.S.C. § 504(c)(2) ...................................................................................................28

Copyright Act ...............................................................................................................25

## **RULES**

Local Rule 7.2(a)(3) .......................................................................................................6

## I.     __INTRODUCTION__

What Amazon admits publicly makes it liable for infringing WW's copyrights. What it hides from the public proves that infringement was willful.

Amazon admits it controls a service called Merch on Demand ("Merch"). Amazon admits it is the seller of record for every product sold through Merch. It admits ██████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████. It admits it ███████████████████ bearing designs that look exactly like designs created by WW ("the WW Designs"), including after WW sued Amazon. All of this means Amazon infringed WW's copyrights in the WW Designs.

But the *reason* Amazon sold so many knockoffs, despite WW pleading for it to stop for more than a year and a half, establishes more than mere infringement. The reason Amazon infringed the WW Designs establishes *willful* infringement as a matter of law. Amazon revealed the reason to WW's lawyers for the first time more than three years after WW submitted to Amazon its first notice of claimed infringement. Amazon still refuses to tell WW's founders, brothers Tim and Daniel Whelan, exactly what happened. According to Amazon, only WW's lawyers, not its founders, can know why Amazon never removed a single WW Design knockoff until WW sued. Amazon won't reveal to WW's owners why Amazon was telling Tim Whelan his notices of claimed infringement were "invalid, inaccurate, false, or misleading" even though Amazon ████████████████████████ The reason, Amazon says, is so sensitive and confidential it could jeopardize the company. It's so sensitive and confidential, Amazon claims, that the public cannot see the vast majority of this brief.

It's not really that sensitive, but it is embarrassing. The reason is shocking, nonsensical, and for people who have ever felt frustrated when a massive corporation seems like it's not actually

listening to their complaints, chilling. But above all, the reason—which this brief discusses in detail in blacked-out sections below—establishes that Amazon willfully disregarded WW's rights.

After digesting why Amazon refused to take down reams of infringements despite valid takedown notices, the Court should grant summary judgment for WW and order a trial on damages.

## II.     SUMMARY OF ARGUMENT

In accordance with Local Rule 7.2(a)(3), WW provides the following summary of argument: Amazon is liable for infringing the copyrights in the WW Designs as a matter of law. To prove infringement, Plaintiff must show: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024). WW's evidence meets the mark. WW registered its designs with the Copyright Office, obtaining valid registrations for each. Statement of Proposed Undisputed Facts ("UF")[2] ¶¶ 35–37. Amazon took exact copies of those designs and ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶ 106. It displayed them on product listing pages, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and sold and shipped that apparel across the country. *Id.* & ¶¶ 20–24. Amazon's own witnesses acknowledge that the Amazon products look anywhere from "similar" to "▮▮▮▮" to the WW Designs. *Id.* ¶¶ 112–113.

Forced to admit the scope of its exact copying, Amazon must attempt to undermine the designs themselves. It retained a design professor, Caroline de Baere, to argue that all 49 of the WW Designs are completely unoriginal in any way, showing not a shred of creativity. ECF No. 57-4 PageID 4284–85. Ms. de Baere is wrong: the WW Designs clear the Copyright Act's low bar for originality. Last year, the Sixth Circuit affirmed the originality of a car dealer's warranty certificate, finding original its arrangement of sections and "express[ion of] the idea of covering

---

[2] Citations are to the UF unless indicated otherwise.

damages to a car" because they "showed some inventiveness and imagination." *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 991 (6th Cir. 2024). If a car dealer's warranty program meets the Supreme Court's low standard (a "minimal degree of creativity" (*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991))), the WW Designs do as well. WW co-founder and artist Dan Whelan created each design with his own skill and voice, making numerous artistic decisions to create eye-catching, chuckle-worthy works that fit well on a t-shirt. UF ¶¶ 32–34. The designs themselves, and the precedent discussed further below, demonstrate the WW Designs are original as a matter of law.

Beyond straightforward copyright infringement, Amazon acted willfully. Infringement is willful when the defendant acts "with knowledge that the defendant's conduct constitutes copyright infringement." *Princeton Univ. Press v. Michigan Doc. Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996). WW sent notice after notice of infringement to Amazon, pleading with the company to remove exact copies of WW's designs from various Amazon product pages. UF ¶ 39. Amazon rejected every notice until WW sued. *Id.* ¶ 40. Not because the notices were confusing or unclear; they were anything but. Instead, Amazon rejected WW's notices because ██████ ████████████████████████████████████████████████████ *Id.* ¶¶ 67–92. ██████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████. *Id.* ¶¶ 93–94. Worse, Amazon never told Tim Whelan any of this, so he continued to submit notices without knowing ███████████████████████████ *Id.* ¶¶ 95–99.

Amazon's █████████████████████████████████████████ ████████████████ willfully violated WW's rights.

## III. STATEMENT OF FACTS

### A. Amazon controls "Merch on Demand."

1. **Amazon** ██████████████████████████████████████
████████████████████████████████████████████████ .

Before content creators can upload designs to Merch, Amazon screens creators' applications. UF ¶ 1. Amazon intakes applicants' names, addresses, phone numbers, banking details, and Social Security or Tax ID numbers. ¶ 2. ██████████████████████
████████████████████████████████████. ¶ 3. ██████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████. ¶ 4. ████████████████████████████████
████████████████████████████████████████████████████
███████████████████. ¶ 5. ██████████████████████████████
████████████. ¶ 6.

Amazon determines how many designs a Merch creator can upload to Merch for sale. ¶ 7.
████████████████████████████████████████████████████
████████████. ¶ 8. ██████████████████████████████████████
████████████████████████████████. ¶ 9. ██████████████████
████████████████████████████████████████████████████
████████████████████████. ¶ 10.
████████████████████████████████████████████████████
████████████████████████████████████████████████████ ¶
11 ████████████████████████████████████████████████
████████████████████████████. ¶ 12. ████████████████████

8



¶ 13.

¶ 15.

¶ 16.

¶ 18.

¶ 19.

2. **Amazon sells,**

Amazon handles every Merch task besides uploading designs.

¶ 20.

¶ 21. ¶ 22.

¶ 23. Amazon is the seller of record for all Merch transactions,

¶ 24.

¶ 25.

B. **WW creates and copyrights designs depicting fearful beers, dancing tacos, and other whacky characters.**

Brothers Tim and Daniel Whelan founded WW in 2018. ¶ 26. Around that time, WW was

---

[3] "ASINs" refers to "Amazon Standard Identification Numbers," which correspond to individual listings offered on Amazon.

selling apparel through its website, officialusadrinkingteam.com. ¶ 27. WW sells products under the brand name USA Drinking Team ("USADT"), having used the officialusadrinkingteam.com website as its primary platform since at least 2018. ¶ 28. WW also markets its designs through customer email as well as Facebook and Instagram profiles for USADT. ¶ 29. USADT's Facebook profile currently has 424,000 followers, and its Instagram has 407,000 followers. ¶ 30. Around 2001, USADT had a similar number of Instagram followers. ¶ 31.

High-quality images of each of the WW Designs are included in Exhibit A to the Complaint and First Amended Complaint (in color) and are incorporated herein by reference. Dan Whelan created all the WW Designs with a combination of hand-drawing and software using a tablet, stylus, and Adobe Illustrator, which he taught himself to use. ¶ 32. A fan of art from a young age, Dan draws inspiration for the WW Designs from various ideas, memes, movies, games, products, characters, themes, and events. ¶ 33. He channels that inspiration to create USADT's distinct designs centered around holidays, American drinking culture, and patriotism, using outlandish and crude humor. ¶ 34.

Dan's little brother and WW co-founder, Tim Whelan, completed copyright registration applications for each of the WW Designs on Dan's behalf, listing Dan as the author and claimant. ¶ 35. Subsequently, Dan transferred to WW all right, title, and interest in the WW Designs copyrights, as well as all causes of action based on any infringement thereof, meaning WW owns the copyrights. ¶¶ 36–37. WW has never licensed any of its designs to any third party because WW wants to be the exclusive seller and control the marketing of the WW Designs. ¶ 38.

### C.    For years, WW notifies Amazon of stolen WW artwork all over Amazon, but Amazon leaves it up.

Between May of 2021 and when WW sued Amazon on November 13, 2023, Tim Whelan complained to Amazon of its infringement of WW's IP numerous times. ¶ 39. The complaints

concerned a variety of different ASINs that copied the WW Designs and other WW IP. *Id.* ███
████████████████████████████████████████████████████████████████████████ ¶
40. The magnitude of the copying—both before and after WW sued—will be covered in detail
below. But what matters here is ***why***. Why didn't Amazon respond to WW's notices by removing
the copies? Did Amazon have enough information—about who WW was, what it owned, and what
it accused—to act on WW's notices?

A resounding yes. The below facts show that WW gave Amazon everything it needed and
more to remove the infringement all over its website. Amazon just chose not to listen.

### 1. Tim Whelan's notices establish the connection between the Whelans, USADT, and WW.

In May of 2021, WW was selling a ridiculous basketball jersey—the Statue of Liberty, but
with a beer-holding belly-pocket sewn into the torch. ¶ 41. On the USADT website, WW used
pictures of Dan modelling the jersey to showcase the product. *Id.* But USADT was not the only
website featuring Dan sporting the Statue of Libeerty; without permission, Amazon offered the
product as well. *Id.*



WW wanted Amazon to remove this unauthorized product, so Tim Whelan set out to
determine how to make that happen. On May 5, 2021, at 2:41 PM, Tim lodged a complaint with

Amazon for intellectual property infringement by emailing Amazon's copyright agent at copyright@amazon.com, a method of reporting infringement Amazon explicitly permits. *Id.* In his email, Tim identified himself as the owner of officialusadrinkingteam.com, notified Amazon of multiple companies stealing design photos and selling on Amazon, noted that the copycats on Amazon confused USADT customers, and requested immediate removal. ¶ 42. Tim provided a link to the Libeerty jersey on USADT's website, calling it "our website." *Id.* He then identified the "companies posing as us" with links to five Amazon webpages that offered the same jersey without permission. *Id.* The email signature read, "Thanks, Official USA Support Team." *Id.*

Amazon's response set off the Kafkaesque chain of events that led to this lawsuit. One minute after notifying Amazon from the USADT support email address, Tim received a reply confirming Amazon's receipt of the email at 2:42 PM. ¶ 43. Twelve minutes later, at 2:54 PM, Tim received another reply from Amazon stating that Amazon had determined Tim's report was "incomplete," and that Amazon could not take action. ¶ 44. Amazon's email asked for resubmission of the request with additional information: (i) name and email address of the person submitting the notice and any additional contact details; (ii) rights owner name if the notice is submitted by an agent of the rights owner; (iii) physical or electronic signature; (iv) description of the copyrighted work claimed to be infringed; (v) "your address, telephone number, and email address;" (vi) statement by the submitter that the use of the material was not authorized and that, under penalty of perjury, the information in the notice was accurate and authorized. *Id.*

Tim heeded Amazon's request 22 minutes later at 3:16 PM, messaging copyright@amazon.com. ¶ 45. He used as the email subject "Copyright Claim." ¶ 46. He also provided (i) his name, along with the support@officialusadrinkingteam.com email address, (ii) his brother's name; (iii) a link to the Libeerty jersey on USADT's website, with a description of the

work ("this is our specific jersey design. In addition, they are using our mock-ups and photos from photo shoots we have done . . . "); (iv) his home address, phone number, and the support@officialusadrinkingteam.com email address; (v) the affirmations Amazon requested; and (vi) an electronic signature. *Id.* About an hour later, at 4:15 PM, Tim received another email from Amazon with the same vague rejection text as before: "Thank you for your report of infringement. We reviewed your report of infringement and determined that it is incomplete. We cannot take action on or complete any of your requests. Please resubmit your report with all the required information listed below." ¶ 47. The "requested information below" started with a confusing "${DELETE IF THE REPORTER HAS ALREADY PROVIDED THIS INFORMATION OR IF NOT RELEVANT}", and proceeded to ask Tim to identify the intellectual property right asserted, which he had already provided in the subject line of his previous email: "Copyright Claim." ¶ 48.

After Amazon refused to remove the accused content, more appeared. By five days later, May 10, 2021, WW had located two more copies of the Libeerty jersey on Amazon. ¶ 49. Given Amazon's refusal to remove the infringements in response to the email notices from support@officialusadrinkingteam.com, Tim decided to try one of Amazon's other permitted methods of reporting infringement—the public notice form. ¶ 50. To submit a claim of infringement through Amazon's form, Tim had to create an Amazon account. ¶ 51. When he created his Amazon account, he used his email address, twhelan40@gmail.com. ¶ 52. After creating his Amazon account, on May 10, 2021, Tim submitted a notice of claimed infringement through Amazon's form for the two new copies of the Libeerty jersey. ¶ 53. Amazon rejected Tim's notice, asking him to re-submit with additional verifying information, including a verification code and answers to specific questions. ¶ 54.

Tim complied. Twelve minutes after Amazon asked him to verify his submission, Tim gave

Amazon ample information to confirm his identity and his connection to both USADT and WW. ¶ 55. He provided the verification code and *so much more*: (i) a link to the design alleged to be infringed; (ii) links to the allegedly infringing ASINs; (iii) an identification of himself as the owner of the IP; (iv) company name ("USA Drinking Team (Weekend Warrior LLC))"; (v) his first and last name; (vi) his job title ("owner"); (vi) his company email (support@officialusadrinkingteam.com); (vii) his available contact time (any time day or night); (viii) the rights owner business name (Weekend Warrior LLC); (ix) the rights owner contact name (Tim Whelan); (x) the rights owner phone number (Tim's phone number); (xi) the rights owner address (Tim's own); (xii) the rights owner URL (a link to the Libeerty jersey); and (xiii) the business's Tax ID number. *Id.* ████████████████████████████████ ¶ 56.

Amazon nonetheless rejected Tim's notice. ¶ 57. The grounds for rejection? "Incomplete Notice." *Id.* Crucially, "████████████████████████████████ ████████████████████ ¶ 58. In other words, once a notice form is submitted, ████ ████████████████████████ ¶ 59.

### 2. Tim Whelan notifies Amazon of its infringement of the WW Designs.

Tim's struggle was far from over. Around March 14, 2022, he found on Merch an exact copy (ASIN B09V38KR4B) of one of the WW Designs: Bad Day to be a Beer.

**WW Original**



**Amazon Infringement**



Tim submitted a notice of claimed infringement through Amazon's notice form using his twhelan40@gmail.com Amazon account. ¶ 60. In his notice, he included a link to WW's Bad Day to be a Beer design on the USADT website, identified the accused ASIN, and made the requisite representations under penalty of perjury. ¶ 61. ███████████████████████ ¶ 62.

From this point on, before ultimately filing suit in November 2023, WW submitted a bevy of additional notices through Amazon's notice form and through email. ¶ 63. For each notice he submitted through the public notice form, he entered the requested information into all required fields. ¶ 64. Of particular note, on April 4, 2022, he ████████████████████ ███████████████████████████████████████████████████: ¶ 65. The link works to this day, and is also featured on USADT's Instagram and Facebook profiles. *Id.* Amazon rejected each notice, providing various vague, robotic responses: "We reviewed your report and determined that it is incomplete" ECF No. 64-14 at PageID 6780; "We have determined that the notices you have reported to Amazon are invalid and/or inaccurate. Reporting false,

misleading, or consistently inaccurate notices of infringement violates our policies" (6782); "All reports are thoroughly investigated by our investigations team" (6788); "please email us from the address with a registered Merch by Amazon account. We currently find no accounts under this email address and will need to correspond with the account holder directly" (6792). ¶ 66. Tim tried his best, pleading with Amazon about the amount of money WW was losing (6778), asking for options to expedite the process and a real person to talk to (6780–81), offering to provide any additional information while firmly threatening legal action (6784), and asking directly how WW could correct and re-submit an allegedly "invalid or inaccurate" claim. 6801–02.

Nothing worked. But why did Amazon turn a blind eye? Why did it leave counterfeits of the WW Designs all over Merch while giving WW no clear answers? **Because Amazon** ███████

███████

**D.** **The Reason Amazon Rejected WW's Notices**







¶ 79.

¶ 80.

¶ 81.

¶ 82.

¶ 83.

¶ 84.

¶ 85.

¶ 86.[4]

---

[4] Amazon corporate representative and manager of Amazon's Notice and Takedown Team, Chad Bundy, testified

Amazon's public-facing phone number to its legal department simply refers callers to different Amazon webpages for "more information." ¶ 87.

██████ ▪

███████████████████████████████████████████ The second Google-search result for "Tim Whelan Cincinnati" is Tim's LinkedIn profile, which identifies him as the co-owner of an Ecommerce business and graduate of Xavier University. ¶ 89. Tim's LinkedIn has identified him as an Ecommerce owner since he first created the profile around 2015 or 2016. ¶ 90. There are also numerous other results about Tim's tenure as a basketballer at Xavier, and his LinkedIn shows him as a Xavier grad. ¶ 91 Without even clicking on the link, someone Googling Tim can see the same address Tim provided Amazon in multiple notice forms and emails listed on a website called the "Ohio Residents Database." ¶ 92,

Instead of digging a little deeper or clearing this up with a simple phone call, Amazon said,

████████████████

### E.  **Dubious ████████ | Dire Consequences**

The consequences of Amazon's decision to ███████ were catastrophic for WW.

█████████████████████████████████████████████████████

███████████████████ ¶ 93. ████████████████████████

████████████████████ ¶ 94. █████████████████████

███████████████████ ¶ 95. ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████



¶ 96.

¶ 98.

¶ 99.

*See* ¶ 66.

Every message was a gaslighting lie.

(ECF No. 64-14 at 6788);

(6791)? Lie.

(*id.*)?

¶¶ 73, 78, 94.

ECF No. 1.

SUF ¶ 98. But not for long.

F.  **In the middle of litigation, Amazon declares Tim Whelan** **!**

Seven months into the litigation, Tim Whelan ¶ 100.

---

[5] Ironically, if

¶ 97.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ ¶ 101. ██████████████████

███████████████████████████████████████████████████

███████████████████████████████████ ¶ 102. ██████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████ ¶ 103. ███████████████████████████████

███████████████████████████████████████████████████

████████████████████ ¶ 104.

Rather than fess up, Amazon insists on keeping all of this a secret. ██████████████

███████████████████████████████████████████████████

██████████████████████████ ¶ 105. ██████████████████

███████████████████████████████████████████ *Id.* Amazon remains

unwilling to inform WW's owners to this date. Amazon has forbidden the Whelan brothers from

understanding what actually happened.

### G.    <u>Amazon sells WW counterfeits before and throughout the case.</u>

███████████████████████████████████████████████ ¶ 106.

███████████████████████████████████████████████████

████████████████████████████████████████████ ¶ 107. ████████

███████████████████████████████████████████████████

██████████████████████████ ¶ 108. ██████████████████

████████████████████████████████████████ ¶ 109. ██████████████

████████████████████████████████████ ¶ 700.

Amazon displayed, sold, ████████, and/or shipped an immense volume of exact and near-exact copies of the WW Designs. *See* ECF No. 33. As recently as October of this year, exact copies remained. ¶ 111. Amazon's witnesses—both percipient and retained—admitted that ████ ███████████████████████████████████████████████████████ ¶¶ 111–12. Amazon retained Caroline de Baere to offer the absurd conclusion that no WW Design displays even one inkling of creativity whatsoever. Laiolo Decl. Ex. A-10 (PageID 5972). At deposition, WW showed Ms. de Baere at least one accused ASIN for nearly all[6] respective WW Designs side-by-side with the original. ¶ 113. Where Ms. de Baere did not admit that the exact or near-exact copies looked at least "similar" (*id.*), she strained to find differences. *Id.*

WW seeks justice for Amazon's five years of infringement.

## IV. ARGUMENT

### A. Amazon is liable for copyright infringement on Merch.

A defendant may be held directly liable for copyright infringement if it violates "any one of the exclusive rights of a copyright owner." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008). To prove direct infringement, the claimant must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024). A defendant is liable for contributory copyright infringement if it "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Bridgeport Music, Inc. v.*

---

[6] FrankenSTEIN is the one WW Design where no direct comparison was elicited, though exact copying of FrankenSTEIN by Amazon is clear. *See* ECF No. 33-1 at PageID 1606.

*WM Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007). A plaintiff must show: "(1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008). A defendant is liable for vicarious infringement if the defendant "profit[ed] from [the] infringement while declining to exercise a right to stop or limit it." *Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014). "The first half of the test . . . asks whether the defendant had the right and ability to supervise the infringing conduct." *Id.* "The second half of the test asks whether the defendant had an obvious and direct financial interest in the infringement." *Id.*

Whether directly or indirectly, Amazon is liable for the copyright infringement committed on Merch. The service is not like eBay—or even like other branches of Amazon—where third parties offer and sell items that already exist. Instead, Amazon controls who may and may not become a Merch "content creator:" those who upload designs that Amazon ███████ onto new products that Amazon sells and ships. UF ¶¶ 1–6. Amazon also determines the designs Merch offers for sale, drafting and attempting to enforce rules about the designs Amazon customers can and cannot see. *Id.* ¶¶ 7–12. Once a content creator has uploaded a Merch design, Amazon handles every other aspect of the business: It ███████ Merch products, ships Merch products harnessing Amazon's shipping network, and handles all customer service issues. *Id.* ¶¶ 20–24.

Amazon agrees that direct infringement is the proper vehicle for this case. At the May 7, 2025 discovery conference, Amazon's counsel stated that Amazon viewed products sold through Merch as presenting direct infringement issues, rather than indirect. Laiolo Decl. ¶ 33. And Amazon's retained witness, Richard LaMagna, echoes that sentiment: "███████████████████ ███████████████████████████████████████████████

████████ " ECF No. 53, Ex. A.13 (LaMagna Report) ¶ 21.

**B.     Amazon directly infringed the WW Designs.**

**1.     WW owns valid copyrights in the WW Designs.**

A copyright registration certificate is "prima facie evidence of the validity of the copyright and of the facts stated in the certificate," if one obtained the registration "before or within five years after first publication of the work." *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015). Once the plaintiff shows "that he registered the work before or within five years after first publication," the onus is on "the alleged infringer to present evidence that the plaintiff's copyrights are invalid." *Id.* Every WW Design is duly registered with the Copyright Office. Tim Decl. ¶ 8. Registration occurred within five years of each design's first publication. *Id.* Subsequent to registration, the author, Dan Whelan, assigned for all purposes each copyright to WW. Dan Decl. ¶ 5. WW thus owns the copyrights in the WW Designs.

**2.     The WW Designs are original.**

Works are original when they (1) were "independently created by the author," and (2) "possess at least some minimal degree of creativity . . . **no matter how crude**, humble, or obvious." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–346 (1991) (emphasis added). "Most works will satisfy this low standard of creativity," as the "author's choices must evince some inventiveness and imagination, but not necessarily artistic merit." *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, 93 F.4th 985, 989 (6th Cir. 2024). The required "creative spark" may come from "choices about style and setting" and whether there were "decisions about what materials to include and how to organize them." *Id.* A work that incorporates preexisting materials can be original and distinct if its selection or arrangement of another's materials renders the new work original as a whole. *See Keeling v. Hars*, 809 F.3d 43, 50 (2d Cir. 2015) (holding

24

"[c]opyright law protects not only the individual elements [of a work] themselves, but the creative choices made in selecting and arranging even uncopyrightable elements" in case involving theater production that used elements of prior film). "All that is needed to satisfy both the Constitution and the [copyright] statute is that the author contributed something more than a merely trivial variation, **something recognizably his own**." *North Coast Indus. V. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992). Even works that incorporate elements of works in the public domain are sufficiently creative if they contain "enough expressive variation from public-domain or other existing works to enable the new work to be readily distinguished from its predecessors." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 929 (7th Cir. 2003).

Look at the WW Designs. ECF No. 17 at 142–243. Consider whether they reflect even the tiniest drop of creative juices, a mere speck of artistic imagination. If they meet that lowest of standards, they are original under the Copyright Act as a matter of law. They do:



For the above Thicc Santa and for all the other WW Designs, Dan proceeded as artists throughout history have—drawing inspiration from a variety of things in the world to create something new, using his artistic practice and skill. UF ¶ 34. He sorts through different reference images on the internet, recalls his own memories and experiences, and observes culture to try and find something to say. *Id.* Once he has an idea, he sketches it out in black and white, adds color, plays with different fonts, backgrounds, and textures, making adjustments until the design looks good on a shirt. *Id*. In other words, he makes "choices about style and setting" and "decisions about what materials to include and how to organize them." *Premier Dealer Servs.*, 93 F.4th at 989.

To be sure, Dan draws inspiration from, and even mimics and pokes fun at, all sorts of preexisting products, advertisements, movies, games, and the like. But there is not a single WW Design that Dan Whelan simply copied from a preexisting work without adding his own "expressive variation . . . to be readily distinguished from its predecessors." *Bucklew*, 329 F.3d at 929. Amazon may claim the closest calls are "I Want Brew" and "Enjoy Beer," but they're not close at all.

**I Want Brew**



**Enjoy Beer**



The former, hand-drawn by Dan, converts the Uncle Sam poster beckoning recruits into a plea for a good time. Uncle Sam is drawn in a different style, features a WW "USA Drinking

Team"-branded lapel button, and a frothy cold one not included in the inspiration. ECF No. 59-1 at 6215–16. The latter sends up the classic "Enjoy Coke" ads: Dan ran filters and a threshold over a still image he found, altering the original's colorway, thickening up the lines around Santa, and grafting on a similarly-filtered and threshholded beer in place of a Coke, to which he made sizing adjustments and added his own hop design. *Id.* at 6210–11.

Courts have found works original even when they contain exact copies of previous works, which the WW Designs do not. *See, e.g., Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736, 744–45 (N.D. Ohio 2022) (finding originality as a matter of law in tattoos that featured exact copies of parts of the *Sistine Chapel*, *The Creation of Adam*, and a Vegas casino playing card logo because the creation of the works required "**artistic decisions, including as to the precise shape, style, expression, shading, line thickness, density, color**") (emphasis added); *Bouchat v. Baltimore Ravens, Inc.*, 241 F.3d 350, 356 (4th Cir. 2001) (originality as a matter of law for design that contained public-domain cross and shield because of its selection, coordination, and arrangement of those elements). That Dan's creations required numerous artistic decisions about every aspect of how the works appear on the page (or shirt). The WW Designs are original as a matter of law.

### 3.  Amazon copied the WW Designs' protectable expression.

"A plaintiff may demonstrate that original elements of its work were copied through direct or indirect evidence." *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 536 (6th Cir. 2020). "Direct evidence of copying . . . may be established through evidence such as party admissions . . . ." *Id.* Direct evidence also exists "where works are so **overwhelmingly identical that the possibility of independent creation is precluded**." *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1330 (9th Cir. 1983) (emphasis added). Direct evidence supports summary judgment in a plaintiff's favor. *See Premier Dealer Services*, 93 F.4th at 992.

WW filed a mountain of accused ASINs "overwhelmingly identical" to the WW Designs. ECF No. 33. This document shows at least one—and often many more—exact or near-exact copy of each of the WW Designs that Amazon displayed, ███████████████ sold, and/or shipped. *Id.* An Amazon content moderator's testimony puts it simply:



UF ¶ 112. Amazon's own retained witness agreed there was at least one accused ASIN that looked "similar" to the WW Designs. *Id.* ¶ 113.

This is a rare case of direct evidence of identical copying established through both party admissions and overwhelming similarity between the works. The Court can and should grant summary judgment for WW on infringement. *Enchant Christmas Light*, 958 F.3d at 536; *Twentieth Century-Fox Film Corp.*, 715 F.2d at 1330; *Premier Dealer Services*, 93 F.4th at 992.

**C.** **Amazon infringed the WW Designs willfully.**

"The federal copyright statute provides for the imposition of greater penalties 'in a case where . . . the court finds[] that infringement was committed willfully.'" *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009) (citing 17 U.S.C. § 504(c)(2)). A determination of willful infringement may be made at the summary judgment stage. *Calibrated Success, Inc. v. Charters*, 72 F. Supp. 3d 763, 775 (E.D. Mich. 2014) ("where the relevant facts are admitted or otherwise undisputed, willfulness can be appropriately resolved on summary judgment"); *see also Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1335–36 (9th Cir. 1990).

Infringement is willful when the defendant acts "with knowledge that the defendant's

conduct constitutes copyright infringement." *Princeton Univ. Press v. Michigan Doc. Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996). "Willfulness includes reckless behavior or willful blindness." *Sony/ATV Music Publ'g LLC v. 1729172 Ontario, Inc.*, 2018 WL 4007537 (M.D. Tenn. Aug. 20, 2018) (citing *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011)). "**Examples of reckless disregard that rise to the level of willfulness include . . . repeatedly ignoring warnings from a copyright holder that defendant's behavior violates copyright law** [and] exhibiting willful blindness to a copyright owner's rights." *Ducks Unlimited, Inc. v. Boondux, LLC*, 2017 WL 3579215 at *40 (W.D. Tenn. Aug. 18, 2017) (emphasis added). "Willfulness may be inferred from a defendant's conduct . . . when the facts suggest that the infringer[] had been placed on notice by the copyright holder and had ample time to ameliorate the infringing acts *prior to litigation*." *Philpot v. L.M. Commc'ns II of S.C., Inc.*, 343 F. Supp. 3d 694, 701 (E.D. Ky. 2018)*, denial of plaintiff's attorneys' fees reversed, Philpot v. LM Commc'ns II of S.C.*, 776 F. App'x 906 (6th Cir. 2019) (emphasis added); *see also Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 513 (7th Cir. 1994) (affirming willful infringement determination where defendant "had notice of a possible infringement . . . and yet did not contact the copyright owner to investigate the charge further").

WW insisted Amazon remove obvious infringements from Merch for years. UF ¶ 39. Through the email address and public notice form Amazon advertises claimants can use to submit claims, Tim Whelan swore under penalty of perjury that Amazon was infringing the WW Designs. *Id.* & ¶¶ 40–65. He filled out every required field on Amazon's form, linking to the designs WW owned on WW's website, and linking to the ASINs that copied the WW Designs down to the pixel. *Id.* ¶¶ 40–65. He gave Amazon comprehensive details about his connection to WW, WW's house brand USADT, WW's website, WW's company email, and WW's Tax ID, along with his ***home***

*address and phone number*. ¶¶ 40–65. Amazon had more information about Tim Whelan than the TSA has about airline passengers. But Amazon "repeatedly ignore[ed] warnings from a copyright holder that [its] behavior violate[d] copyright law." *Ducks Unlimited*, 2017 WL 3579215 at *40 (W.D. Tenn. Aug. 18, 2017).

Amazon didn't remove any WW Designs until WW sued. UF ¶ 66. Instead,  while WW pleaded into the void. And it *was* a void: . UF ¶¶ 67, 94.

*Id.* His phone number wasn't worth calling. His company's art not worth protecting. His livelihood expendable. *Id.* ¶¶ 85–88.

The foundation for the                       was a pile of twigs UF ¶¶ 70–74. . *Id.*

*Id.* ¶¶ 75–84.

a LinkedIn profile for an Ohioan named Tim Whelan who ran an e-commerce business. ¶¶ 89–90.                       an Ohio residence webpage showing a man named Tim Whelan living at the same address Tim had already given Amazon,

and would continue to give Amazon. ¶¶ 46, 64, 92. ██████████████ Instagram and Facebook profiles for a brand of the same name, linking to the same website Tim had linked to repeatedly. ¶¶ 29–31; ECF No. 64 (Page ID6271) ¶ 6. And if, God forbid, ██████████████ simply given Tim a call, ████████████████████████ UF ¶¶ 86–88.

Instead, ████████████ Amazon ██████████████████ ¶¶ 67–69. It never told Tim—and still hasn't—claiming the information is too sensitive for WW to know. ¶ 99. All Tim knew was that Amazon was not removing the copyright infringement all over Merch, and was claiming that the notices were "invalid, inaccurate . . . false, or misleading." *See generally* ECF No. 64-14. Unable to discern why, WW sued. In the middle of that lawsuit, again without telling the Whelan brothers, Amazon █████████████████ ¶¶ 100–101. And even after WW sued, through all of Amazon's ████████████████████████ Amazon's infringement did not cease. WW spotted infringements as recently as two days ago. ECF No. 59 at 6177–78; 59-5.

Defendants can be held liable for willful copyright infringement when they had "ample time to ameliorate the infringing acts prior to litigation," and failed to stop it before being sued. *Philpot*, 343 F. Supp. 3d at 694 (citing *Int'l Korwin Corp. v. Kowalczyk*, 665 F. Supp. 652, 658–59 (N.D. Ill. 1987). Amazon had all the time and resources in the world to stop infringing the WW Designs.

It still hasn't.

## V.  <u>CONCLUSION</u>

WW respectfully requests the Court find Amazon liable for willful copyright infringement as a matter of law and order a trial on damages.

Dated: October 24, 2025                    Respectfully submitted,


                                           *s/ George B. A. Laiolo*
                                           _____
                                           George B. A. Laiolo, *pro hac vice*
                                           California Bar No. 329850
                                           Keith J. Wesley, *pro hac vice*
                                           California Bar No. 229276
                                           Matthew Venezia, *pro hac vice*
                                           California Bar No. 313812
                                           Elizabeth Carpenter, *pro hac vice*
                                           California Bar No. 315674
                                           Amanda Mannshahia, *pro hac vice*
                                           California Bar No. 340619
                                           Ellis George LLP
                                           2121 Avenue of the Stars, 30th Floor
                                           Los Angeles, California 90067
                                           Telephone: (310) 274-7100
                                           Email:  glaiolo@ellisgeorge.com
                                           Email:  kwesley@ellisgeorge.com
                                           Email:  mvenezia@ellisgeorge.com
                                           Email:  ecarpenter@ellisgeorge.com
                                           Email:  amannshahia@ellisgeorge.com

                                           Gary F. Franke, Trial Attorney
                                           Ohio Bar No. 0029793
                                           GARY F. FRANKE CO., LPA
                                           201 E. Fifth Street, Suite 910
                                           Cincinnati, Ohio 45202
                                           Telephone: (513) 564-9222
                                           Email:  gff@garyfrankelaw.com

                                           *Attorneys for Plaintiff Weekend Warrior Clothing,*
                                           *LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, a true and correct copy of the foregoing

**PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S MEMORANDUM OF LAW IN**

**SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served via the United States

District Court CM/ECF system on all parties or persons requiring notice as follows:

Gregory F. Ahrens                  Attorneys for Defendants
Wood Herron & Evans LLP         AMAZON.COM SERVICES, LLC; and
600 Vine Street, Suite 2800        AMAZON.COM INC.
Cincinnati, OH 45202
Telephone:  (513) 241-2324
Email: gahrens@whe-law.com
Email: tyoung@whe-law.com (paralegal)

Todd M. Siegel
Ziyu Ma
Ryan L. Frei
Klaus H. Hamm
Klarquist Sparkman, LLP
121 SW Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone:  (503) 595-5300
Facsimile:   (503) 595-5301
Email: todd.siegel@klarquist.com
Email: ziyu.ma@klarquist.com
Email: ryan.frei@klarquist.com
Email: klaus.hamm@klarquist.com
Email: amy.kendig@klarquist.com

Moez M. Kaba
Jessica N. Trafimow
Hueston Hennigan LLP
1 Little West 12th Street, 2nd Floor
New York, NY 10014
Telephone: (646) 930-0415 (Kaba)
Telephone: (212) 715-1123 (Trafimow)
Email: mkaba@hueston.com
Email: jtrafimow@hueston.com

Christine Woodin
Hueston Hennigan LLP
523 West 6th Street, Suite 400

Los Angeles, CA 90014
Telephone: (213) 788-4099
Facsimile: (888) 866-4825
Email: cwoodin@hueston.com

Sourabh Mishra
Hueston Hennigan LLP
620 Newport Beach, CA 92660
Telephone: (949) 356-5536
Facsimile: (888) 866-4825
Email: smishra@hueston.com

*s/George B. A. Laiolo*
George B. A. Laiolo

3071739