**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| Weekend Warrior Clothing, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> Amazon.com Services, LLC; <br> Amazon.com, Inc., <br><br> *Defendants*. | Case No. 1:23-cv-00752 <br> Judge Douglas R. Cole <br> Magistrate Judge Stephanie K. Bowman |

**DEFENDANTS AMAZON.COM SERVICES, LLC AND
AMAZON.COM, INC.'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

BACKGROUND ............................................................................................................................. 9

    I.    Amazon Merch on Demand Is a Marketplace that Provides a Service to Small Businesses and Other Content Creators .................................... 9

    II.    Amazon Sets and Enforces Strict Content and Intellectual Property Policies ................................................................................................ 10

    III.    Weekend Warrior's Copyrights Rely on Unauthorized Copying of Other Works ............................................................................................ 12

    IV.    Amazon Acted Reasonably in Questioning Weekend Warrior's Pre-Suit Claims .................................................................................... 15

    V.    Amazon's Prompt and Ongoing Responses to Weekend Warrior's Allegations ................................................................................. 16

LEGAL STANDARD ON SUMMARY JUDGMENT ................................................................ 17

SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF WEEKEND WARRIOR'S CLAIMS .................................................................................................. 18

    I.    Weekend Warrior's Direct Infringement Claim Fails as a Matter of Law ....................................................................................................... 18

    II.    Weekend Warrior's Contributory Infringement Claim Fails as a Matter of Law ...................................................................................... 21

    III.    Weekend Warrior's Vicarious Infringement Claim Fails as a Matter of Law .............................................................................................. 26

        A.    Amazon Is Not in a Respondeat Superior Relationship with the Alleged Third-Party Infringers ............................................... 26

        B.    Amazon Polices Infringement and Therefore Did Not Decline to Limit Infringement on Its Website .................................. 29

IN THE ALTERNATIVE, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT .................................................................................................. 31

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

I.     21 Asserted Copyrights Are Invalid Because They Are Unlawful Derivatives ............................................................................................ 32

     A.     21 Asserted Copyrights Are Derivative Works ........................... 33

     B.     The 21 Derivative Works Are Unlawful...................................... 36

II.     The DMCA Precludes Liability for 107 Accused Product Listings ................... 41

III.     Weekend Warrior Cannot Recover Attorney's Fees for 22 Copyrights ............................................................................................... 49

IV.     Weekend Warrior Cannot Recover Enhanced Statutory Damages...................... 52

     A.     Weekend Warrior Cannot Obtain Enhanced Damages for the 22 Copyrights Where It Concedes Statutory Damages are Unavailable ................................................................................. 54

     B.     Weekend Warrior Cannot Show that Amazon Willfully Infringed the Remaining 26 Copyrights ........................................ 54

V.     The Court Should Grant Partial Summary Judgment of No Infringement Regarding Five Copyrights ......................................................... 58

     A.     Weekend Warrior Did Not Plead Copyright Infringement for the *King of the Kill*, *Happy St. PatRizz Day*, and *Down Goes Liver* Copyrights ..................................................................... 59

     B.     Weekend Warrior Has Not Identified Any Infringing Works for its *Ameri-CAN v2* and *Shut-Up Liver* Copyrights ............................. 60

CONCLUSION................................................................................... 61

APPENDIX A ..................................................................................... 61

APPENDIX B ..................................................................................... 61

APPENDIX C ..................................................................................... 78

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Am. Broadcasting Cos., Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014) ................................................................................. 18, 19

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ................................................................................. 33, 38

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................ 35

*Athos Overseas Ltd. Corp. v. YouTube, Inc.*,
   No. 21-21698-CIV, 2023 WL 5607936 (S.D. Fla. Aug. 29, 2023).......................... 46

*Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*,
   No. 3:16-cv-3294-JPM-JB, 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018) .............. 18, 21, 22

*Bell v. Worthington City Sch. Dist.*,
   No. 2:18-cv-961, 2020 WL 2905803 (S.D. Ohio June 2, 2020) ............................... 37

*Bridgeport Music, Inc. v. Dimension Films*,
   410 F.3d 792 (6th Cir. 2005) ........................................................................... 19

*Bridgeport Music, Inc. v. UMG Recordings, Inc.*,
   585 F.3d 267 (6th Cir. 2009) ........................................................................ 8, 53

*Bridgeport Music, Inc. v. WB Music Corp.*,
   508 F.3d 394 (6th Cir. 2007) ........................................................................ 5, 21

*Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*,
   No. 10-CV-419-GPC (WVG), 2014 WL 5438532 (S.D. Cal. Oct. 24, 2014) .................. 50, 51

*BWP Media USA, Inc. v. T&S Software Assocs., Inc.*,
   852 F.3d 436 (5th Cir. 2017) ........................................................................ 18, 19

*Caffey v. Cook*,
   409 F. Supp. 2d 484 (S.D.N.Y. 2006) ................................................................. 34

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ............................................................................. 37, 38, 40

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Capitani v. World of Miniature Bears, Inc.*,
  552 F. Supp. 3d 781 (M.D. Tenn. 2021) ................................................................. 8, 56

*Capitol Recs., LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016) ......................................................................... 42, 47

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................ 17, 18

*Cengage Learning, Inc. v. Google LLC*,
  786 F. Supp. 3d 611 (S.D.N.Y. 2025) ......................................................................... 28

*Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials, Inc.*,
  535 F.3d 506 (6th Cir. 2008) ......................................................................... 17

*Concord Music Grp., Inc. v. X Corp.*,
  No. 3:23-cv-00606, 2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ................................ 6, 27, 28

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ......................................................................... 5

*Dam Things from Denmark, a/k/a Troll Co. ApS v. Russ Berrie & Co., Inc.*,
  290 F.3d 548 (3d Cir. 2002) ......................................................................... 32

*Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx),
  2008 WL 11339619 (C.D. Cal. Nov. 7, 2008) ......................................................... 8, 51, 52

*Dona't v. Amazon.com/Kindle*,
  482 F. Supp. 3d 1137 (D. Colo. 2020) ................................................................... 43

*Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*,
  122 F.3d 1211 (9th Cir. 1997) ......................................................................... 32

*Erickson Prods., Inc. v. Kast*,
  921 F.3d 822 (9th Cir. 2019) ......................................................................... 55

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) ................................................................................ 28, 32

*Flynn v. Health Advocate, Inc.*, No. CIV.A.,
  No. CIV.A. 03-3764, 2004 WL 51929 (E.D. Pa. Jan. 13, 2004) ....................................... 9, 59, 60

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*FurnitureDealer.net, Inc. v. Amazon.com, Inc.*,
  No. CV 18-232 (JRT/HB), 2019 WL 3738622 (D. Minn. Aug. 8, 2019) ................................ 43

*Gee v. CBS, Inc.*,
  471 F. Supp. 600 (E.D. Pa. 1979) ...................................................................... 59, 60

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) ........................................................................................... 55

*Greg Young Publ'g, Inc. v. Zazzle, Inc.*,
  No. 2:16-cv-04587-SVW-KS, 2017 WL 2729584 (C.D. Cal. May 1, 2017) ...................... 7, 42

*Harper & Row Publishers, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985) ........................................................................................... 40

*Hendrickson v. Amazon.com, Inc.*,
  298 F. Supp. 2d 914 (C.D. Cal. 2003) ............................................................... 43, 49

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ....................................................................................... 50, 51

*Hiller, LLC v. Success Grp. Int'l Learning All., LLC*,
  976 F.3d 620 (6th Cir. 2020) ......................................................................... Passim

*Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*,
  58 F.3d 1093 (6th Cir. 1995) ............................................................................... 32

*Imwalle v. Reliance Med. Prods., Inc.*,
  515 F.3d 531 (6th Cir. 2008) .......................................................................... 50, 51

*Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*,
  25 F. Supp.2d 127 (E.D.N.Y. 1998) ................................................................. 50, 52

*Io Grp., Inc. v. Veoh Networks, Inc.*,
  586 F. Supp. 2d 1132 (N.D. Cal. 2008) .................................................................. 49

*Itar-Tass Russian News Agency v. Kurier*,
  No. 95 CIV. 2144, 1997 WL 324086 (S.D.N.Y. June 13, 1997) ................................ 50, 52

*Johnson v. Jones*,
  149 F.3d 494 (6th Cir. 1998) ............................................................................. 8, 50

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*King Recs., Inc. v. Bennett*,
    438 F. Supp. 2d 812 (M.D. Tenn. 2006) ................................................................. 54

*King v. Amazon Corp.*,
    No. 3:18-CV-00534-KDB-DSC, 2019 WL 6404882 (W.D.N.C. Nov. 27, 2019) ................... 48

*Knitwaves, Inc. v. Lollytogs Ltd.*,
    71 F.3d 996 (2d Cir. 1995) ........................................................................... 8, 50

*Lee v. Amazon.com Inc.*,
    No. 221CV01090RAJBAT, 2023 WL 6931800 (W.D. Wash. July 27, 2023) ........................ 48

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) .............................................................. 5, 23, 24, 25

*Matthew Bender & Co., Inc. v. West Pub. Co.*,
    158 F.3d 693 (2d Cir. 1998) ........................................................................ 22, 23

*Melk v. Pa. Med. Soc'y*,
    No. CIV.A. 08-3515, 2011 WL 2582105,n.2 (E.D. Pa. June 29, 2011) ..................... 9, 59, 60

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) ...............................................................................Passim

*Michael Grecco Prods., Inc. v. Fandom, Inc.*,
    No. 2:24-CV-05963 MWC (BFMX), 2025 WL 1675668 (C.D. Cal. May 9, 2025)..... 55, 57, 58

*Mulcahy v. Cheetah Learning LLC*,
    386 F.3d 849 (8th Cir. 2004) ............................................................................ 33

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*,
    361 F.3d 312 (6th Cir. 2004) ............................................................................ 60

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
    299 F. App'x 509 (6th Cir. 2008) ....................................................................... 61

*Navarro v. Procter & Gamble Co.*,
    515 F. Supp. 3d 718 (S.D. Ohio 2021) .................................................................. 26

*Nye v. CSX Transp., Inc.*,
    437 F.3d 556 (6th Cir. 2006) ............................................................................ 18

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Palladium Music, Inc. v. EatSleepMusic, Inc.*,
    398 F.3d 1193 (10th Cir. 2005) ................................................................... 32, 35, 36

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ........................................................................ 46, 47

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .......................................................................... 19, 20

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .......................................................................... 26, 29

*Philpot v. L.M. Commc'ns II of S.C., Inc.*,
    343 F. Supp. 3d 694 (E.D. Ky. 2018) ........................................................ 8, 53, 56

*Pickett v. Prince* ("*Pickett I*"),
    52 F. Supp. 2d 893 (N.D. Ill. 1999) ................................................................ 36, 41

*Pickett v. Prince* ("*Pickett II*"),
    207 F.3d 402 (7th Cir. 2000) .......................................................................... 34, 36

*Price v. Ohio Dep't of Rehab. & Corr.*,
    649 F. Supp. 3d 598 (S.D. Ohio 2023) .................................................................. 18

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    100 F.4th 659 (6th Cir. 2024) ................................................................................ 32

*SA Music LLC v. Apple, Inc.*,
    592 F. Supp. 3d 869 (N.D. Cal. 2022) ........................................................ 53, 56, 57

*Smith v. BarnesandNoble.com, LLC*,
    143 F. Supp. 3d 115 (S.D.N.Y. 2015) ................................................................... 23

*Sobhani v. @Radical.Media Inc.*,
    257 F. Supp. 2d 1234 (C.D. Cal. 2003) .......................................................... 36, 41

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...............................................................................Passim

*Stewart v. Abend*,
    495 U.S. 207 (1990) ............................................................................................. 33

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010) ................................................................................................ 24, 25

*Tomelleri v. SunFrog, LLC* ("*Tomelleri I*"),
   No. 1:23-CV-10370, 2023 WL 10676154 (E.D. Mich. Oct. 30, 2023)................................ 6, 29

*Tomelleri v. SunFrog, LLC* ("*Tomelleri II*"),
   721 F. Supp. 3d 566 (E.D. Mich. 2024) ................................................................... 1, 5, 19, 20

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ........................................................................................... 43, 45

*Ventura Content, Ltd. v. Motherless, Inc.*,
   2013 WL 11237204 (C.D. Cal. July 3, 2013)........................................................................... 47

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018) ........................................................................................Passim

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ................................................................................................... 56

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ........................................................................................... 43, 45, 47

*White v. DistroKid, LLC*,
   766 F Supp. 3d 451 (S.D.N.Y. 2025) ....................................................................................... 21

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d 724 (S.D.N.Y. 2012) ..................................................................................... 21

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) ..................................................................................... 25

<u>Statutes</u>

17 U.S.C. § 101................................................................................................................................ 33

17 U.S.C. § 103................................................................................................................................ 36

17 U.S.C. § 103(a) ....................................................................................................................Passim

17 U.S.C. § 106(2) .................................................................................................................. 7, 33, 34

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

17 U.S.C. § 107 ............................................................................................................... 37

17 U.S.C. § 107(1) .......................................................................................................... 37

17 U.S.C. § 410(c) .......................................................................................................... 32

17 U.S.C. § 412 ........................................................................................................Passim

17 U.S.C. § 504(c) ..................................................................................................... 8, 53

17 U.S.C. § 505 ............................................................................................................... 49

17 U.S.C. § 512(c) ....................................................................................................Passim

17 U.S.C. § 512(i) ....................................................................................................... 42, 47

17 U.S.C. § 512(k) .......................................................................................................... 42

Rules

Fed. R. Civ. P. 56(a) ...................................................................................................... 31

Fed. R. Civ. P. 56(c) ...................................................................................................... 17

Other Authorities

6 *Patry on Copyright* § 21:78 ................................................................................. 27, 28

*Volition and Copyright Infringement*,
   37 Cardozo L. Rev. 1259 (2016) .............................................................................. 19

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## INTRODUCTION AND SUMMARY OF ARGUMENT[1]

Amazon's Merch on Demand service brings the old print shop into the digital age.[2] It provides tools and services to third-party businesses and individual creators to design and produce affordable custom apparel (and other "merch") from the convenience of their homes and without the cost of expensive inventory. And to protect others' intellectual property rights, Amazon enforces strict content policies and proactively screens for potential infringement. Still, Plaintiff Weekend Warrior Clothing, LLC ("Weekend Warrior") seeks to hold Amazon liable for allegedly infringing *third-party* designs that Amazon neither created nor selected and had no reason to know were infringing. The service may now be digital, but the law is unchanged: copyright liability does not extend to companies that merely provide services that, as here, are "widely used for legitimate, unobjectionable purposes." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984) ("the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes"). The Court should therefore grant summary judgment to Amazon on Weekend Warrior's three claims for direct, contributory, and vicarious copyright infringement premised on Amazon's print-on-demand online service. *See, e.g.*, *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 580 (E.D. Mich. 2024) ("*Tomelleri II*") (dismissing direct, contributory, and vicarious copyright infringement claims premised on defendant's print-on-demand online service).

---

[1] Pursuant to the Court's order that briefs exceeding 20 pages contain a summary of arguments, the closing portion of this Introduction includes a summary of less than five pages in compliance with that directive.

[2] "Amazon" refers to Defendants Amazon.com Services, LLC and Amazon.com, Inc.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

For decades, small businesses and individuals who wanted to sell merchandise bearing their logos and other custom designs had to rely on brick-and-mortar print shops. That process could be costly and inefficient: sellers had to manage physical inventory, allocate storage space, handle shipping, and estimate demand in advance to avoid unprofitable per-unit costs. And if their merch became more popular than they expected, the creators often could not scale production quickly enough to meet demand.

In 2015, Amazon launched Merch on Demand to solve those problems. Starting by offering t-shirts, the service gave small businesses and creators a simple, self-service tool to design and sell branded products without the overhead of production or fulfillment. Amazon handled the manufacturing, inventory, and shipping, while creators focused on their designs and customers. For many, the program eliminated the upfront costs and logistical hurdles that had long kept custom merchandise out of reach.

What began as a t-shirt program in 2015 has grown to include over a dozen customizable products—from apparel to accessories—sold to millions of customers worldwide. Merch on Demand creators can use the website to produce original designs, including using their own trademarks. Creators can also join Amazon's "Merch Collab" program to "access and/or incorporate certain third-party content from known brands and celebrities" from whom Amazon has procured licenses. (Amazon's Statement of Proposed Undisputed Facts ("SPUF") ¶ 7.) Such partnerships ensure that Merch on Demand supports legitimate creative enterprises while protecting the intellectual property rights of others. For many small businesses, Amazon's Merch on Demand has become an indispensable, low-risk way to compete in the same marketplace as major brands.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Regrettably, bad actors attempt to abuse the service. That is why Merch on Demand has strict policies prohibiting the unauthorized use of intellectual property, automated and manual monitoring systems to detect violations, and enforcement measures that remove infringing content and suspend repeat violators. At the same time, Amazon has received numerous fraudulent or mistaken infringement notices which, if accepted on their face, can harm legitimate sellers and suppress lawful expression. To prevent such misuse, Amazon requires that reports of alleged infringement include specific, verifiable information to initiate action. These safeguards strike the proper balance by protecting rights holders while ensuring creators are not penalized by false claims.

In 2022, Weekend Warrior contacted Amazon about a small subset of the asserted copyrights in this case through a series of supposed infringement notices that were riddled with red flags. The initial emails came from a personal Gmail account, not an official business domain (such as from their website, https://officialusadrinkingteam.com/).[3] The correspondence also ██████████████████████████████ despite Weekend Warrior's claim to be an Ohio-based company. And none of the notices contained any documentation linking the sender to the asserted copyrights. Acting in good faith, Amazon followed its standard anti-fraud procedures but could not verify the legitimacy of the claims. Weekend Warrior then filed suit, asserting infringement of 48 different allegedly copyrighted designs (well beyond the five in its attempted notices to Amazon).

---

[3] Though their business name is Weekend Warrior, a *different* company sells apparel under the name (and on the website) named "Weekend Warriors." *See* https://weekendwarriors.io/.

AMAZON MEMO IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT

-3-

1:23-cv-00752

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

At its core, Weekend Warrior's operative complaint alleges that Amazon is liable for willful copyright infringement because Amazon operates a service—Merch on Demand—through which third parties allegedly uploaded and sold products bearing Weekend Warrior's supposedly copyrighted designs. (Doc. 17 at PageID 119–120, 125–126.) Weekend Warrior claims that these "copycats . . . work in concert with Amazon" to reproduce its designs and that Amazon "manufacture[s], print[s], sell[s], fulfill[s], and ship[s]" those products. (*Id.* at PageID 119, 125.) It does *not* allege that Amazon itself designed, edited, or selected any of the accused designs. Instead, Weekend Warrior asserts that Amazon should be held responsible for others' conduct merely because it provides a service that prints items bearing third-party artwork. (*Id.* at PageID 125–126, 129–130, 132–135.)

Discovery has confirmed that Amazon's actual role is limited to providing a service, not creating or editing content. As relevant to this case, the undisputed record shows that Amazon provides only the technical and logistical infrastructure for Merch on Demand, such as hosting third-party uploads, producing items only when ordered, and handling fulfillment and customer service. Significantly, discovery demonstrated that Amazon: (1) does not participate in or contribute to the creation or selection of content; (2) enforces strict content policies to detect and remove infringing material; and (3) had no prior knowledge that the listings at issue allegedly infringed Weekend Warrior's copyrights.

The undisputed facts regarding Amazon's lack of involvement in content and lack of knowledge of allegedly infringing listings make this case appropriate for summary judgment because settled law forecloses liability under these circumstances. Summary judgment should therefore be granted on all three of Weekend Warrior's copyright claims.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*First*, Weekend Warrior's direct infringement cause of action fails for lack of evidence of volitional conduct: "something more" than "mere ownership of a machine used by others to make illegal copies." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004). Relying on the volitional conduct requirement, courts hold that online services are not directly liable when users, not the service, control the *content*. *See, e.g.*, *Tomelleri II*, 721 F. Supp. 3d at 576 (citing a "growing 'national trend' to limit online servicer direct copyright infringement liability when third parties are primarily responsible for the copying") (internal citations omitted). Courts have applied this rule to dismiss copyright claims against print-on-demand services nearly identical to Amazon's. *See id.* (no volitional act by print-on-demand service where "plaintiff's images were uploaded by third-party sellers"). This Court should do the same.

*Second*, Weekend Warrior's contributory copyright infringement cause of action also fails. Contributory infringement requires proof that a defendant knowingly induced or materially contributed to another's infringement. *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398, 400 (6th Cir. 2007). But merely providing a product or service that *can* be used unlawfully does not suffice. *See Sony*, 464 U.S. at 442 (no liability where device had "substantial noninfringing uses"). Courts have repeatedly applied this rule to dismiss claims against online companies that, like Amazon, provide services relating to user-created and user-submitted content. *See Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (no contributory liability where carrier "engage[d] in the equivocal conduct of selling an item with substantial lawful as well as unlawful uses") (internal citations omitted). Because Amazon's Merch on Demand service is widely and primarily used for legitimate purposes, and because Amazon lacked

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

specific knowledge of any alleged infringement, summary judgment to Amazon on contributory infringement should be granted.

*Third*, Weekend Warrior's vicarious copyright infringement cause of action should likewise be dismissed. To prove vicarious liability, a plaintiff must show both control and indifference: that the defendant (1) had the right and ability to supervise infringing acts; and (2) "declin[ed]" to "limit" the infringement. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Weekend Warrior cannot satisfy either requirement. Amazon has no control over what designs third-party creators choose to submit—foreclosing any finding of supervisory authority. *See Concord Music Grp., Inc. v. X Corp.*, No. 3:23-cv-00606, 2024 WL 945325, at *10 (M.D. Tenn. Mar. 5, 2024) (no vicarious liability where platform users were not "even loose equivalents of agents or subordinates"). Nor can Weekend Warrior show indifference. Amazon's proactive content-screening systems and prompt takedown procedures demonstrate that it actively limits potential infringement. Because no reasonable jury could conclude that Amazon "declined" to exercise its right to stop or "limit" infringement, summary judgment should be granted. *See Tomelleri v. SunFrog, LLC*, No. 1:23-CV-10370, 2023 WL 10676154, at *7 (E.D. Mich. Oct. 30, 2023) (*"Tomelleri I"*)*, report and recommendation adopted,* 721 F. Supp. 3d 566 (E.D. Mich. 2024) (dismissing vicarious liability claim against print-on-demand service where plaintiff could not show defendant declined to prevent infringement).

Because the undisputed facts require judgment on all three of Weekend Warrior's causes of action, the Court can end its analysis there. But if it proceeds further, Amazon is also entitled to partial summary judgment on five significant issues.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*First*, 21 of the asserted 48 copyrights are invalid. The Copyright Act grants original creators the exclusive right "to prepare derivative works." 17 U.S.C. § 106(2). That protection "does not extend" to material "used unlawfully," i.e., without authorization. 17 U.S.C. § 103(a). Here, 21 of Weekend Warrior's asserted copyrights are unauthorized derivatives of prior works, and the fair use exception does not apply. Under Sixth Circuit precedent, these 21 unauthorized derivatives "lose[] all copyright protection" and are thus invalid. *Hiller, LLC v. Success Grp. Int'l Learning All., LLC*, 976 F.3d 620, 629 (6th Cir. 2020).

*Second*, the Digital Millennium Copyright Act ("DMCA") shields internet "service providers" from liability for user-uploaded content for which there are no sales by the service. 17 U.S.C. § 512(c). That provision applies here to at least 107 of the 560 product listings ("Unsold Listings") that Weekend Warrior accuses of infringement. The undisputed record shows that Weekend Warrior failed to provide Amazon with adequate pre-suit notice for the Unsold Listings, and that once Amazon became aware of the allegations, it acted expeditiously to remove the accused listings without financial benefit from any sales or advertisement revenue. Accordingly, the safe harbor applies as a matter of law to all of the Unsold Listings. *See Greg Young Publ'g, Inc. v. Zazzle, Inc.*, No. 2:16-cv-04587-SVW-KS, 2017 WL 2729584, at *6–8 (C.D. Cal. May 1, 2017) (holding that § 512(c) barred liability for a print-on-demand service "to the extent [the plaintiff] seeks to impose liability based solely on the unauthorized display of copyrighted images").

*Third*, even if Weekend Warrior could establish infringement, it cannot recover attorney's fees for 22 of the 48 asserted copyrights. The parties have stipulated that, for these works, the alleged infringement began after first publication but before registration, and that registration

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

occurred more than three months later. (Doc. 41 (Stipulation) at PageID 2061–2063; SPUF ¶ 103.) Under 17 U.S.C. § 412, "no award … of attorney's fees … shall be made" in such circumstances, and the Sixth Circuit has made clear that § 412 "leaves no room for discretion." *Johnson v. Jones*, 149 F.3d 494, 505 (6th Cir. 1998). Courts applying § 412 consistently enforce this prohibition, denying fees for untimely registered works even when other claims remain. *See Del Amo v. Baccash*, No. CV 07-663 PSG (JWJx), 2008 WL 11339619, at *5 (C.D. Cal. Nov. 7, 2008) (holding that "no discretion exists" to award fees barred by § 412); *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1012 (2d Cir. 1995) (reducing fee award to exclude time spent on fee-barred works).

*Fourth*, even if Weekend Warrior could prevail on liability, it cannot recover enhanced statutory damages. Enhanced statutory damages are available only for infringement "committed willfully." 17 U.S.C. § 504(c)(2). Willfulness requires proof that the defendant "knowingly or recklessly" infringed a copyright. *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009). The undisputed evidence forecloses that showing. Weekend Warrior has stipulated to no statutory damages for 22 copyrights. For the other 26 asserted copyrights, Amazon received no adequate notice of alleged infringement until after this lawsuit was filed and promptly removed all identified listings once notified. Those facts confirm that Amazon did not act willfully—even assuming infringement could be proven. *See Philpot v. L.M. Commc'ns II of S.C., Inc.*, 343 F. Supp. 3d 694, 701 (E.D. Ky. 2018), *rev'd on other grounds*, 776 F. App'x 906 (6th Cir. 2019) (no willfulness where defendant removed photo upon notice and cooperated); *Capitani v. World of Miniature Bears, Inc.*, 552 F. Supp. 3d 781, 799 (M.D. Tenn. 2021) (same).

*Finally*, Weekend Warrior cannot prevail on claims that 18 of the accused product listings infringe three copyrights it never asserted in its operative complaint—*King of the Kill*, *Happy St.*

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*PatRizz Day*, and *Down Goes Liver*. A plaintiff cannot recover on unpleaded works. *See Melk v. Pa. Med. Soc'y*, No. CIV.A. 08-3515, 2011 WL 2582105, at *1 n.2 (E.D. Pa. June 29, 2011) (granting summary judgment and rejecting reliance on unpleaded works). The same defect applies to *Ameri-CAN v2* and *Shut-Up Liver*, because Weekend Warrior has not identified any listings that allegedly infringe those works. *See Flynn v. Health Advocate, Inc.*, No. CIV.A. 03-3764, 2004 WL 51929, at *12 (E.D. Pa. Jan. 13, 2004) (holding that a complaint must identify the "specific original work" and specify "by what acts and during what time" the defendant allegedly infringed) (internal citations omitted). With no pleaded claim or identified infringement, summary judgment should be granted as to all five copyrights.

## **BACKGROUND**

I.      **Amazon Merch on Demand Is a Marketplace that Provides a Service to Small Businesses and Other Content Creators**

Amazon's Merch on Demand service is a website that enables independent creators and third-party businesses to design and sell customized products conveniently and at low cost. (SPUF ¶¶ 1, 3, 34.) The service provides technical infrastructure, manufacturing workflow, and fulfillment logistics. (SPUF ¶ 2.)

Amazon itself does not draft, edit, or select any design content. The creators alone upload their artwork and control the text and imagery appearing on their products. (SPUF ¶¶ 5, 8–9, 17.) Amazon enforces robust content policies to prevent infringing material, processes takedown requests, and removes content that violates those policies. (SPUF ¶ 23.) In short, Merch on Demand clearly delineates responsibility: creators make the expressive choices; Amazon provides the tools, routes approved files to its website, and, once an item sells, handles production and delivery. (SPUF ¶¶ 2, 17.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Within the program, creators set every creative detail for their listings. They upload artwork, choose products from Amazon's catalog, and enter titles, descriptions, brand names, and recommend prices. (SPUF ¶¶ 12, 21.) Amazon's system then automatically generates and/or translates the public product page from those inputs, and may also add listings, without altering the design, to additional marketplaces on its website (unless the creator opts out). (SPUF ¶¶ 13, 34.) The uploaded artwork is virtually rendered on standardized templates—such as t-shirts, mugs, or tote bags—and the resulting listing is advertised as created by the content owner. (SPUF ¶ 12.) Amazon does not draft, modify, or curate the design itself.

When a customer places an order, Amazon performs only the operational steps necessary to fulfill it. Amazon routes the approved design to production, applies the image to the chosen product, packages the finished item, and ships it to the customer. It also manages post-sale customer service and returns. (SPUF ¶¶ 16–17.) Creators receive royalties based on a standardized schedule that Amazon sets by product type and format. (SPUF ¶ 19.)

By centralizing manufacturing, logistics, and customer service, Merch on Demand gives creators nationwide reach without the burden of inventory or multiple third-party vendors. (SPUF ¶ 28.) Its standardized processes ensure consistent product quality, reliable fulfillment, and efficient returns at scale. (SPUF ¶ 20.)

## II. **Amazon Sets and Enforces Strict Content and Intellectual Property Policies**

Before any design is published on Merch on Demand, creators must certify that their submissions do not violate or infringe any intellectual property, including copyrights. (SPUF ¶ 24.) Amazon's written guidance reinforces that policy, stating that the company "cannot make, sell, distribute, or promote items that infringe the intellectual property rights (including copyright,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

trademark, and publicity rights) of a third party," and reminding creators that they alone are responsible for securing necessary rights before submitting designs. (SPUF ¶ 25.) These certifications form part of Amazon's formal content policies, which expressly prohibit the unauthorized use of others' intellectual property and authorize Amazon to remove violating listings and suspend or terminate repeat offenders. (SPUF ¶¶ 24, 29.)

Amazon also implements internal compliance checks. A dedicated content operations team reviews certain orders for policy adherence, and Amazon reserves the right to suspend or terminate any account that violates its program guidelines. (SPUF ¶¶ 24, 33, 36, 29.) These pre-publication measures, together with mandatory creator representations of ownership and explicit IP prohibitions, demonstrate Amazon's proactive approach to preventing infringement before listings appear online. (SPUF ¶¶ 24, 29, 32–33, 36.)

In addition, Amazon maintains a comprehensive notice-and-takedown system to address claims of infringement. Rights holders can report alleged violations through multiple channels, including a dedicated email address, mailing address, and an online "Report Infringement" form that prompts users for the information required by 17 U.S.C. § 512(c)(3)(A). (SPUF ¶¶ 38–42, 48.) Amazon receives many millions of notices annually—roughly ███████ NOCIs in 2022. (SPUF ¶ 45.) Even with a recent downward trend, the volume of notices remains enormous, requiring a team of ███████ trained investigators to review those reports, some of which are fraudulent. (SPUF ¶¶ 45–46, 48, 51, 56.) Upon receiving a valid notification, Amazon promptly removes or disables access to the reported material and notifies the affected creator. (SPUF ¶¶ 48, 58.) Amazon also uses valid takedown notices to identify and monitor for similar content across its Merch listings. (SPUF ¶ 60.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Amazon also enforces a repeat-infringer policy. It processes and acts on DMCA-compliant notices, terminates repeat infringers when appropriate, and deploys automated tools to prevent likely repeat infringers from creating new accounts. (SPUF ¶¶ 27, 29–30.) Post-publication content moderation combines automated detection with human review to identify and remove policy-violating content. (SPUF ¶¶ 34–36.) To prevent abuse of the takedown system, Amazon also ███ ████████████████████████████████████████. (SPUF ¶¶ 46–54.) ██████████ ████████████████████████████████████████████████████████████████ ████████ (SPUF ¶¶ 53–54.)

These layered safeguards—creator certifications, pre-publication review, an extensive notice-and-takedown process, a repeat-infringer policy, and fraud-prevention systems—reflect Amazon's active and ongoing commitment to enforcing intellectual property rights while maintaining a fair service for legitimate creators. (SPUF ¶ 28.) And the safeguards create real results: Amazon blocks ██████████████ *Merch designs globally per month*. (SPUF ¶ 32.)

### III. <u>Weekend Warrior's Copyrights Rely on Unauthorized Copying of Other Works</u>

Weekend Warrior describes itself as a graphic apparel company marketing designs created by its co-founder, Daniel Whelan. (SPUF ¶ 105.) The company does not operate under that name. Instead, it operates as "Official USA Drinking Team," selling t-shirts and other garments through the website officialusadrinkingteam.com. (SPUF ¶¶ 62–63.) The site features imagery drawn from popular culture, alcohol brands, sports logos, and well-known characters. Many of its designs glorify drinking or drug use or contain overtly sexist themes:

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER



Neither the website nor any of its promotional materials identifies the name Weekend Warrior or its owners, Daniel and Tim Whelan. (SPUF ¶¶ 63–64.)

In its First Amended Complaint ("FAC"), Weekend Warrior portrays itself as a small business built through "only the elbow grease and creativity invested by its founders," claiming its "success is based almost entirely on its original, copyrighted … designs." (Doc. 17 at PageID 118–119.) The undisputed record tells a different story. Mr. Whelan testified that before creating any design, he collects "reference images" from the internet to use as visual guides. (SPUF ¶ 106.) Weekend Warrior admits that it assumes those reference materials "may, to some extent, be protected by some form of intellectual property law." (SPUF ¶ 107.) Despite that awareness, Mr. Whelan took no steps to identify the owners of the source images, never searched copyright databases, and never obtained a license to use them. (SPUF ¶ 108.) Many of the works Weekend Warrior now claims as "original" were therefore created by copying third-party material without inquiry, permission, or restraint—the very same conduct it alleges in this case that third-party users engaged in and that forms the basis of its claims against Amazon.

After the Court ordered discovery into its creative process, Weekend Warrior produced sworn interrogatory responses identifying numerous designs that are "based on," "mimic," or "call

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

to mind" preexisting works of others. (SPUF ¶¶ 110, 119, 125, 131, 138, 144, 149, 154, 166, 172, 178, 187, 193, 198, 204, 208.) Those admissions include eight asserted copyrights derived from well-known beer brand designs—Samuel Adams Boston Lager, Budweiser, Corona, Miller Lite, and Pabst Blue Ribbon—and others that copy or adapt imagery from *Conan the Barbarian*, the Notre Dame Fighting Irish mascot, Lucky Charms cereal characters, Clint Eastwood's *Dirty Harry*, and Hulk Hogan. Weekend Warrior also acknowledged reproducing the Coca-Cola Santa and even a hairstyle from *Eastbound and Down*. (SPUF ¶¶ 166, 172, 204, 208.) Additional asserted works imitate lesser-known sources, including a drawing of a dapper man drinking beer, an image of Uncle Sam holding a foaming mug, and the logo of a small plumbing company. (SPUF ¶¶ 210–211, 213–215, 217–218, 220–221, 224–225, 227–228.)

A side-by-side comparison of these originals and Mr. Whelan's designs shows that the copying is unmistakable and pervasive. (*See* <u>Appendix B</u>, *infra*.) Weekend Warrior's own testimony confirms that the designs are not parodies or commentary on the underlying works but are intended to capitalize on their familiarity "to get attention." (SPUF ¶¶ 114, 123, 129, 135, 142, 153, 158.)

Weekend Warrior's communications with rights holders further confirm its awareness of this copying. In June 2024, Anheuser-Busch sent a cease-and-desist letter demanding removal of a t-shirt design that reproduced its Budweiser can, and Weekend Warrior agreed to remove the product. (SPUF ¶¶ 115–116.) The following year, Conan Properties International issued a similar demand regarding a design based on the *Conan the Barbarian* poster, and Weekend Warrior again agreed to stop selling it. (SPUF ¶¶ 184–185.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**IV.** **Amazon Acted Reasonably in Questioning Weekend Warrior's Pre-Suit Claims**

On March 14, 2022, Weekend Warrior began submitting a series of purported infringement notices to Amazon concerning a small subset of the copyrights it now asserts in this case. (SPUF ¶ 67.) The notices originated from the personal email address twhelan40@gmail.com, and ███ ████████████████████████████████████████████████████. (SPUF ¶¶ 74–75.) Each message listed "Tim Whelan" as the contact person, some identified "Weekend Warrior" as the brand owner, and others listed "USA Drinking Team." (SPUF ¶¶ 74, 76.) No independent public information connects Tim Whelan to either brand, nor is there any publicly available record linking Weekend Warrior and USA Drinking Team to one another. (SPUF ¶¶ 63–64.) The pre-suit notices referenced only five of the 48 asserted copyrights and just 21 of the 560 product listings Weekend Warrior now accuses of infringement. (SPUF ¶¶ 69, 74.)

Amazon reviewed the submissions under its standard anti-fraud verification procedures but found they lacked sufficient information to substantiate the claims. (SPUF ¶¶ 77–78.) ███



(SPUF ¶¶ 77–78.) ████████████████████████████████████████ (SPUF ¶ 80.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

During 2022 and 2023, Amazon received additional notices from other unrelated email accounts asserting ownership of some of the same designs, including *Bad Day to Be a Beer* and *Leprechaun Griddy*. (SPUF ¶ 81.) ████████████████████████

████████████████████████████████

████████████      ████████████      ████████████

████████████      ████████████      ████████  ██

████████████ (SPUF ¶ 82.) As with twhelan40@gmail.com, Amazon could not verify that any of these senders were associated with the purported rights holders and determined that they were invalid. (SPUF ¶ 84.) ██████████████

████████████████████████████████

████████████ (SPUF ¶ 85.)

## V.      Amazon's Prompt and Ongoing Responses to Weekend Warrior's Allegations

Amazon first learned of Weekend Warrior's infringement allegations on November 13, 2023, when this lawsuit was filed. (SPUF ¶¶ 65–68, 74, 78–80.) Within two days, Amazon began identifying and removing the accused product listings from its website. (SPUF ¶ 87.) On November 22, 2023, Amazon's counsel contacted Weekend Warrior's counsel to provide an update on those efforts and to discuss additional coordination. (SPUF ¶ 88.) Six days later, on November 28, 2023, Amazon formally requested that Weekend Warrior identify any listings it believed to be infringing so Amazon could remove them. (SPUF ¶ 89.)

Amazon removed every product listing identified by Weekend Warrior's counsel within approximately 14 days of each report. (SPUF ¶¶ 89–92, 96.) By December 21, 2023—barely five weeks after the lawsuit was filed—Amazon had removed more than 1,000 listings, the vast

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

majority of which Weekend Warrior later abandoned as part of its claims. (SPUF ¶ 91.) Amazon's efforts have continued throughout this litigation: in total, it has removed more than 7,500 product listings, even though Weekend Warrior ultimately accuses only 560 of them. (SPUF ¶ 94.) Most of the removed listings recorded no sales before they were taken down. (SPUF ¶ 95.)

Amazon also strengthened its proactive screening and monitoring procedures to detect potential infringement and to prevent recurrence. (SPUF ¶ 90.) Once specific listings were confirmed as violating Amazon's policies, Amazon used those examples to train its automated detection systems to flag and remove similar designs across Merch on Demand. (SPUF ¶ 31.) These compliance operations combine automated scanning with manual review by content operations teams. (SPUF ¶ 36.) In addition, Amazon enforced its repeat-infringer policy by terminating creator accounts associated with confirmed violations—███████ in total, including roughly ███ linked to the accused listings. (SPUF ¶¶ 29, 97.)

## LEGAL STANDARD ON SUMMARY JUDGMENT

The Court should grant summary judgment "where the evidence, viewed in the light most favorable to the non-movant, demonstrates that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Gen. Materials, Inc.*, 535 F.3d 506, 508 (6th Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings,

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (internal citation omitted). "Once the moving party presents evidence to meet its burden, the nonmoving party must come forward with significant evidence to support its claim." *Price v. Ohio Dep't of Rehab. & Corr.*, 649 F. Supp. 3d 598, 605 (S.D. Ohio 2023) (Cole, J.). Where "no reasonable jury could find" for plaintiff, summary judgment is warranted. *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 558 (6th Cir. 2006).

## SUMMARY JUDGMENT SHOULD BE GRANTED ON ALL OF WEEKEND WARRIOR'S CLAIMS

Weekend Warrior asserts three claims against Amazon: (1) direct copyright infringement; (2) contributory copyright infringement; and (3) vicarious copyright infringement. (Doc. 17 at PageID 132–135.) Because no reasonable jury could find in Weekend Warrior's favor on any claim, summary judgment should be granted in Amazon's favor on each (and therefore all) claims. *See Nye*, 437 F.3d at 558 (affirming "district court's grant of summary judgment" where "no reasonable jury could find for [plaintiff]").

## I.    Weekend Warrior's Direct Infringement Claim Fails as a Matter of Law

"Courts widely recognize that direct infringement requires 'volitional conduct' by the alleged infringer." *Average Joe's Ent. Grp., LLC v. SoundCloud, LTD.*, No. 3:16-cv-3294-JPM-JB, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018). Indeed, "[e]very Court of Appeals to have considered an automated-service provider's direct liability for copyright infringement has adopted [the volitional-act] rule." *Am. Broadcasting Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia, J., dissenting); *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 442, 444 (5th Cir. 2017) (holding that Judge Scalia's "dissent [is] helpful in understanding the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

decision" and "conclud[ing] that the volitional-conduct requirement is consistent with the *Aereo* majority opinion"); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 667 (9th Cir. 2017) (similar).[4]

To meet the volitional conduct requirement, a plaintiff must show "'a relationship between the system owner and the copyrighted work that will permit the owner to prevent infringement of the work without the necessity of monitoring the behavior of third parties.'" *Tomelleri II*, 721 F. Supp. 3d at 576 (quoting Robert C. Denicola, *Volition and Copyright Infringement*, 37 Cardozo L. Rev. 1259, 1276 (2016)). And "'courts are likely to conclude that there is an absence of volition when the only means available for a service provider to prevent the infringement is to police the actions of its individual customers.'" *Id.* Applying these principles, there is "a growing 'national trend' to limit online servicer direct copyright infringement liability when third parties are primarily responsible for the copying." *Id.* at 576; *BWP Media*, 852 F.3d at 444 (affirming summary judgment to defendant for failure to show volitional conduct and approvingly quoting Justice Scalia's comment that direct liability "'will come down to who selects the copyrighted content: the defendant or its customers'" (quoting *Aereo*, 573 U.S. at 454–55 (Scalia, J., dissenting)).

Here, the undisputed facts demonstrate that Amazon is not involved in drafting, editing, or selecting the alleged infringing designs. (SPUF ¶¶ 5, 9, 13.) Merch on Demand hosts a wide range

---

[4] "Although the Sixth Circuit has not directly adopted the volitional conduct requirement, several district courts within the Sixth Circuit classify the Sixth Circuit's decision in *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005), as implicitly adopting the requirement." *Tomelleri II,* 721 F. Supp. 3d at 576 n.5. Additionally, "several district courts within the Sixth Circuit have adopted the volitional conduct requirement" and "[n]o Sixth Circuit" case "has rejected the volitional conduct requirement." *Id.* at 576 & n.6.

AMAZON MEMO IN SUPPORT        -19-        1:23-cv-00752
OF MOTION FOR SUMMARY
JUDGMENT

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

of merchants—many of them small businesses and independent creators—who rely on Amazon's website to produce customized goods affordably. (SPUF ¶¶ 3, 5.) Amazon itself plays no role in designing or modifying those merchant designs. (SPUF ¶¶ 5, 9, 13.) *See Giganews*, 847 F.3d at 670 (affirming dismissal of direct infringement claim where defendant did not "select[] any material for upload, download, transmission, or storage").

In this respect, Amazon acts solely as a service, not as a content creator or collaborator. (SPUF ¶¶ 2–3, 5, 9, 16, 20.) And preventing infringement on Merch on Demand requires Amazon to monitor and police the conduct of third-party users—something it already undertakes through its content policies, which expressly prohibit copyright infringement. (SPUF ¶¶ 15, 23, 30.) Where a listing does not trigger any red flags in that moderation system, it is "automatically accepted" without further review of, or revisions to, the third-party content. (SPUF ¶ 33.)

*Tomelleri II*, 721 F. Supp. 3d at 566, is persuasive here. An artist brought copyright infringement claims against a "self-described print-on-demand online service provider" after third-party sellers displayed and sold his copyrighted illustrations on the defendant's website. *Id*. at 569–70. The court found no volitional act by the defendant, noting that "Plaintiff's copyrighted images were uploaded by third-party sellers, not by SunFrog," who "then selected the products on which they wanted those images to be displayed and sold." *Id.* at 571 (cleaned up). Because the platform itself took no direct action in creating or selecting the content, the court dismissed the direct infringement claim, holding that "merely displaying a copyrighted work does not plausibly suggest that the displayer knew the work was copyrighted." *Id*. at 577.

Consistent with *Tomelleri II*, district courts routinely dismiss direct copyright infringement claims where, as here, plaintiff seeks to hold a defendant service provider responsible for copyright

infringement by third parties who designed and selected the offending pieces. *See, e.g.*, *Average Joe's*, 2018 WL 6582829, at \*4 (dismissing direct infringement claim because defendant "does not exercise control of the selection of any material for upload, download, transmission, or storage; users exercise that control"); *White v. DistroKid, LLC*, 766 F Supp. 3d 451, 461–62 (S.D.N.Y. 2025) (dismissing direct infringement claim because though "DistroKid operates the system that takes the necessary steps to transmit the songs in the proper format to the platforms chosen by the user," the existence of that system does not show that the defendant "played some deliberate role in the alleged infringement, such that the platform morphed from a passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement") (cleaned up); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742–43 (S.D.N.Y. 2012), *aff'd, Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (granting summary judgment on direct infringement claim where "[t]he fact that Wolk's images are copied into product simulations in addition to being transmitted to fulfillment vendors does not constitute a volitional act where the copying is automated").

## II.  **Weekend Warrior's Contributory Infringement Claim Fails as a Matter of Law**

Weekend Warrior's claim for contributory infringement likewise fails. (Doc. 17 at PageID 133–134.) "Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *WB Music*, 508 F.3d at 398 (internal citation omitted) (granting summary judgment to defendant on contributory infringement). "A mere failure to act, such as a failure to police an Internet service or a failure to take affirmative steps to prevent infringement, does not suffice for contributory infringement."

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Average Joe's*, 2018 WL 6582829, at *3 (citing *Grokster, Ltd.*, 545 U.S. at 913). "Nor does mere knowledge of actual infringing uses of a service suffice." *Id.*

"Two types of activities that lead to contributory liability are: (i) personal conduct that encourages or assists the infringement; and (ii) provision of machinery or goods that facilitate the infringement." *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 706 (2d Cir. 1998). As discussed above, there is no evidence that Amazon encouraged or assisted in the design or selection of the allegedly infringing works—its involvement was limited to content-neutral services. (SPUF ¶¶ 3, 5, 9.) *See Average Joe's*, 2018 WL 6582829, at *6 (encouraging or assisting infringement "requires evidence that shows SoundCloud intentionally induced infringement by clear expression or other affirmative steps"). Where, as here, the defendant "intentionally established ways to prevent and eliminate copyright infringement" (SPUF ¶ 23) and there is no proof of knowledge of the infringement (SPUF ¶¶ 64–68, 74, 78–80), a plaintiff cannot succeed on a personal conduct theory. *Average Joe's*, 2018 WL 6582829, at *6 (granting summary judgment where defendant "has numerous tools to help prevent and stop copyright infringement and has actively addressed issues of infringement").

Instead, Weekend Warrior's principal theory is that because Amazon provided the means—a website—through which the third parties could sell goods with the allegedly infringing material, it is liable. Not so.

Under Supreme Court precedent, the mere sale of "copying equipment" or "other articles of commerce[] does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes." *Sony Corp.*, 464 U.S. at 442. Indeed, for a defendant to defeat a contributory infringement claim, it need only show that the equipment or service it

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

provided is "capable of substantial noninfringing uses." *Id.*; *Matthew Bender*, 158 F.3d at 707

("The Supreme Court applied that [capable of substantial noninfringing uses] test to prevent

copyright holders from leveraging the copyrights in their original work to control distribution of

(and obtain royalties from) products that might be used incidentally for infringement, but that had

substantial noninfringing uses.").

There can be no genuine dispute that Amazon's Merch on Demand website has substantial

noninfringing uses. (SPUF ¶ 8.) Amazon's Merch on Demand marketplace is used by a diverse

array of merchants, including many small businesses or independent creators for whom creating

customized items would otherwise be cost prohibitive. (SPUF ¶ 6.) Among other lawful purposes,

customers use Merch on Demand to create apparel and other goods featuring: (1) original artwork

produced by independent artists and small businesses; (2) merchandise displaying a seller's own

brand names, logos, and slogans; (3) licensed designs from rights holders, including brands

enrolled in Amazon's Brand Registry or participating in Amazon's brand programs; (4) designs

derived from public-domain materials; and (5) parody or other transformative works. (SPUF ¶ 8.)

Where, as here, an equipment or service has substantial noninfringing uses, courts routinely

dismiss contributory copyright infringement claims. *See, e.g.*, *Luvdarts*, 710 F.3d at 1072

(affirming dismissal of contributory copyright infringement claim where "[i]t is undisputed that

the Carriers engage in the equivocal conduct of selling an item with substantial lawful as well as

unlawful uses") (internal citation omitted); *Matthew Bender*, 158 F.3d at 707 (affirming summary

judgment of contributory copyright infringement claim where product had "substantial,

predominant and noninfringing uses"); *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115,

126 (S.D.N.Y. 2015), *aff'd*, 839 F.3d 163 (2d Cir. 2016) (granting summary judgment on

AMAZON MEMO IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT

-23-

1:23-cv-00752

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

contributory infringement where "noninfringing capability sets Barnes & Noble apart from defendants who provided the site and facilities for infringement and were found liable under theories of contributory infringement").

Weekend Warrior may assert that it notified Amazon of some, limited alleged infringement before initiating this lawsuit and thus Amazon had knowledge of copyright infringement. (SPUF ¶¶ 67, 69, 74.) But even accepting that assertion as true, such notice could affect only sales of the challenged products *after* Amazon received notice. Amazon would remain entitled to summary judgment on all pre-notice sales. (*See infra* at 54.)

Regardless, Weekend Warrior's notices cannot create contributory copyright infringement liability for Amazon because the notices were plainly insufficient to create knowledge. *See, e.g.*, *Luvdarts*, 710 F.3d at 1073 (rejecting pre-litigation notices as insufficient to create knowledge); *cf. Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 108–09 (2d Cir. 2010) (in trademark context, affirming judgment to defendant on contributory infringement claim because plaintiff "did not identify particular sellers" in notice). And once Amazon did confirm the details, it acted promptly and in good faith to remove the allegedly infringing products. (SPUF ¶¶ 86–87.)

Amazon legitimately balances its robust efforts to stop and limit infringement on Merch on Demand against a countervailing concern: protecting merchants from fraudulent takedown requests. Unfortunately, Merch on Demand—like other print-on-demand services—is often plagued by bad faith actors that submit fraudulent takedown requests to undermine business rivals, carry out personal grudges, or cause general discord. (SPUF ¶ 16 ("The potential for abuse is significant . . . Sellers or content creators may file fraudulent or exaggerated takedown notices against competitors to remove popular products, disrupt business operations, or unfairly dominate

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

search results.").) Thus, to protect merchant speech and creative expression, takedown notices

regarding Merch on Demand must comply with strict requirements that are in accordance with the

Digital Millennium Copyright Act. (SPUF ¶ 59.)

Here, Weekend Warrior failed to comply with those reasonable requirements. For example,

Weekend Warrior's initial takedown notice had multiple red flags, █████████████████

████████████████████████████████████████████

████████████████. (SPUF ¶¶ 74–75.) In addition, Weekend Warrior

did not specifically identify all of the copyrights-at-issue in this case with specificity (just five of

the 48), nor sufficient details needed to identify all of the listings that underlaid their allegations

of infringement. (SPUF ¶¶ 67–69.) *See Luvdarts*, 710 F.3d at 1073 (no knowledge where "notices

do not identify which of these titles were infringed, who infringed them, or when the infringement

occurred"). And when Amazon *did* obtain sufficient assurance that Weekend Warrior was who it

claimed to be, it did take down the allegedly infringing material. (SPUF ¶¶ 86–97.) *See Tiffany*

*(NJ)*, 600 F.3d at 109 (no contributory liability for trademark infringement where defendant

removed listings for those "it knew or had reason to know were selling counterfeit Tiffany goods").

Therefore, because Weekend Warrior's notices were "indistinguishable from a generalized

notification that infringement is occurring," they cannot create knowledge sufficient to defeat

summary judgment to Amazon on Weekend Warrior's contributory copyright infringement claim.

*Luvdarts*, 710 F.3d at 1073 (affirming dismissal *on a motion to dismiss* where notices were

deficient); *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

(dismissing contributory copyright infringement claim where "Plaintiff never alleges that Plaintiff notified Defendant of specific infringing products").

## III. Weekend Warrior's Vicarious Infringement Claim Fails as a Matter of Law

Weekend Warrior's final claim is for vicarious copyright infringement. (Doc. 17 at PageID 134–135.) "[S]uch liability arises when the defendant is the 'primary decision maker' who is in charge of operating the infringer's business, and as such, had the ability to directly police the infringing conduct." *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 753 (S.D. Ohio 2021) (cleaned up). In other words, courts impose vicarious liability where "the offending party's actions were in some sense an extension of the defendant's own conduct." *Id.* at 752–53. And even where a plaintiff could show that vicarious liability applied, "[one] infringes vicariously by profiting from direct infringement" only when it "declin[es] to exercise a right to stop or limit it." *Grokster*, 545 U.S. at 930.

Here, Weekend Warrior's theory that Amazon is vicariously liable for third-party copyright infringement fails for two independent reasons: (1) Amazon did not have a respondeat superior relationship with third-party businesses that sold allegedly infringing apparel; and (2) Amazon did not "declin[e]" to "limit" infringement on its website (in fact, the opposite is true). *Id.*

### A. Amazon Is Not in a Respondeat Superior Relationship with the Alleged Third-Party Infringers

Vicarious liability in copyright is an "outgrowth" of respondeat superior. *Navarro*, 515 F. Supp. 3d at 753–54; *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007) ("Whereas contributory infringement is based on tort-law principles of enterprise liability and imputed intent, vicarious infringement's roots lie in the agency principles of *respondeat*

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*superior.*"). That is why courts recognize that "vicarious liability most often arises in a situation involving an actual right of control, such as when a principal, employer, or controlling business owner is held liable for the actions of his agent, employee, or controlled business." *Concord*, 2024 WL 945325, at *9.

Here, there is no evidence that Amazon has a respondeat superior relationship with any of the alleged third-party infringers. In fact, the evidence shows otherwise: Amazon does not even control or edit what *content* third parties use on the Merch on Demand website. (SPUF ¶ 9.) Broad notions of theoretical control—such as the ability to deny service to a merchant, including *removing* listings—are insufficient to establish vicarious liability for third-party infringement. *See Sony Corp.*, 464 U.S. at 439 (no vicarious liability where company merely "sold [a product] with constructive knowledge" that customers might use it for unauthorized copying). Neither Amazon nor its peers in the print-on-demand industry can be required to "scrap [their] entire business just to spite infringers." *Concord*, 2024 WL 945325, at *9.

A contrary ruling would have devastating consequences for the very existence of print-on-demand and similar websites—services that enable small businesses and independent creators to reach consumers without the prohibitive costs of production and inventory. As the treatise *Patry on Copyright* explains, holding services liable for third-party infringement "would prevent distribution of a product with substantial noninfringing uses merely because the defendant could have, but didn't exercise control, and because of financial benefit." 6 *Patry on Copyright* § 21:78. Weekend Warrior's theory would go even further by imposing liability even where the services "need not have known about the infringement," a result especially absurd where, as here, the alleged copyrights are obscure or unknown. *Id.* That approach not only threatens the future of

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

legitimate online marketplaces but also defies the foundational tenets of copyright law, which penalize defendants when there is evidence of *copying*—i.e., if direct infringement requires evidence of copying, it would be inequitable to impose vicarious liability against an innocent service provider who had no knowledge of the plaintiff's copyrights whatsoever. *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991) ("To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."). The same principle that once protected the neighborhood copy shop from liability for unknowingly providing services that customers use to infringe applies equally to Amazon today.

The proper application of vicarious liability is to impose it only on those who exercised control over the infringing content itself—not on neutral services like Merch on Demand that offer lawful, content-agnostic services for legitimate use. 6 *Patry on Copyright* § 21:78 (if "product was used in commercially significant noninfringing ways," vicarious liability claim should fail). Where, as here, the defendant is *not* in a respondeat superior relationship with the direct infringers, courts dismiss vicarious copyright infringement claims. *See, e.g.*, *Cengage Learning, Inc. v. Google LLC*, 786 F. Supp. 3d 611, 625–26 (S.D.N.Y. 2025) (dismissing vicarious liability claim because "that Google reserves the right to terminate the Pirate Sellers' ads and accounts and that it highlights otherwise relatively obscure websites shows that it had some power over the Pirate Sellers — the way that a company that provides a valued service always has power over the customers who rely on it — but that does not turn the Pirate Sellers into even loose equivalents of agents or subordinates for purposes of vicarious liability" (cleaned up)); *Concord*, 2024 WL 945325 at *10 (dismissing vicarious liability claim because though "X Corp. undoubtedly had

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

some power over X/Twitter's users—the way that a company that provides a valued service always has power over the customers who rely on it—[] that does not turn customers into even loose equivalents of agents or subordinates"); *Visa Int'l*, 494 F.3d at 802–05 (affirming dismissal of vicarious copyright infringement claim and rejecting argument that "Defendants have the right and ability to control the content of the infringing websites by refusing to process credit card payments to the websites, enforcing their own rules and regulations, or both" because "[f]or vicarious liability to attach, however, the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it" (emphasis in original)).

    B.    <u>Amazon Polices Infringement and Therefore Did Not Decline to Limit Infringement on Its Website</u>

    Weekend Warrior also fails to satisfy a second requirement for vicarious liability. Under controlling precedent in *Grokster*, liability for vicarious infringement turns not merely on whether a defendant had the "right to stop" infringement, but on whether it "declin[ed]" to "limit it." 545 U.S. at 930; *Tomelleri I*, 2023 WL 10676154, at *7 (dismissing vicarious liability claim where plaintiff could not show that "Defendants 'declined' to prevent a third party from infringing his copyright, as required to show vicarious liability").

    Weekend Warrior seemingly contends that Amazon must have failed to limit infringement on its website simply because some infringement allegedly occurred. But the mere occurrence of infringement is insufficient, as a matter of law, to establish vicarious liability. *Grokster*, 545 U.S. at 930 ("declining to exercise a right to stop or *limit it*" (emphasis added)). Amazon's obligation is to take reasonable steps to limit infringement—not to eliminate it entirely. And Weekend Warrior cannot credibly dispute that Amazon's processes, at a minimum, do exactly that.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Amazon operates with robust, multi-layered policies specifically designed to detect, prevent, and limit infringement on its Merch on Demand website. (SPUF ¶¶ 23, 25, 27, 30.) Amazon provides clear guidance to merchants through its Merch on Demand FAQ, which contains a dedicated section on intellectual property. (SPUF ¶ 27.) There, Amazon emphasizes that it "cannot make, sell, distribute, or promote items that infringe the intellectual property rights (including copyright, trademark, and publicity rights) of a third party," and instructs merchants that they are "responsible for ensuring that [they] hold all necessary intellectual property rights" before submitting designs. (*Id.*) Likewise, Amazon's Anti-Counterfeiting Policy prohibits "products that infringe another party's intellectual property rights" and warns that "[i]f you sell or supply inauthentic products, we may immediately suspend or terminate your Amazon selling account." (SPUF ¶ 26.)

Amazon's anti-infringement efforts extend far beyond written policy statements. It actively employs both manual review teams and automated content-screening tools "to identify and block infringing or policy-violating content before publication" on Merch on Demand. (SPUF ¶¶ 24, 27, 30, 36.) When potential infringement is detected, Amazon promptly removes the content and penalizes repeat violators. (SPUF ¶ 23.) In addition, Amazon empowers rights holders to protect their works directly through an easily accessible online portal for reporting suspected infringement. (*See generally* SPUF ¶¶ 37–61 (describing Amazon's takedown procedures).) Amazon also ensures that multiple teams are dedicated to content moderation and review, which results in ███ ███████ designs being blocked per month. (SPUF ¶ 32.) As expert Richard LaMagna concludes, "Amazon takes reasonable steps to align with or exceed industry standards to prevent

AMAZON MEMO IN SUPPORT                    -30-                    1:23-cv-00752
OF MOTION FOR SUMMARY
JUDGMENT

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

intellectual property infringement on its Merch on Demand marketplace." (SPUF ¶ 61.) Weekend

Warrior has presented no expert evidence to the contrary.

In sum, Amazon's robust anti-infringement policies, procedures, and practice undermine

any finding that Amazon "declin[ed] to exercise the right to stop or limit" infringement on the

Merch on Demand marketplace. *Grokster*, 545 U.S. at 914. Because no reasonable jury could find

otherwise, summary judgment must be granted.

## IN THE ALTERNATIVE, THE COURT SHOULD GRANT PARTIAL SUMMARY JUDGMENT

Even if the Court finds that some factual disputes remain, partial summary judgment is

warranted to narrow the issues for trial. Fed. R. Civ. P. 56(a) (courts may resolve parts of individual

claims or defenses where the material facts are undisputed). Here, Amazon is entitled to partial

summary judgment on five independent grounds: (1) 21 asserted copyrights are invalid as

unauthorized derivative works; (2) the DMCA safe harbor bars liability for at least 107 accused

listings; (3) 22 asserted copyrights are ineligible for attorney's fees under 17 U.S.C. § 412; (4) the

undisputed facts foreclose any finding of willful infringement; and (5) Weekend Warrior asserts

claims for five copyrights that were never pleaded (three) or lack identified infringing listings

(two). For the Court's convenience, these issues are summarized on a work-by-work basis in the

table attached to this brief as Appendix A.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

I.  **21 Asserted Copyrights Are Invalid Because They Are Unlawful Derivatives**

Weekend Warrior's copyright infringement claims fail at the outset for 21[5] of the 48 copyrights at issue because those works are unauthorized derivative works and therefore are invalid.

A plaintiff must first prove "ownership of a valid copyright" to prevail on a copyright infringement claim. *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024) (quoting *Feist Publ'ns*, 499 U.S. at 361). Although a timely registration certificate constitutes prima facie evidence of validity, 17 U.S.C. § 410(c), "the presumption may be rebutted." *Hi-Tech Video Prods. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995). "To rebut the presumption,[] a defendant sued for infringement 'must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement.'" *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) (quoting *Ent. Rsch. Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997)).

Here, at least 21 of the asserted copyrights are invalid as a matter of law because they are unauthorized derivative works. "[W]hen a person creates a derivative work without the original author's permission, that person has unlawfully used the original work." *Hiller*, 976 F.3d at 629; *see also* 17 U.S.C. § 103(a). Therefore, once a court determines that a non-compilation work is "derivative" and "unauthorized," the plaintiff, by law, "lose[s] its copyright." *Hiller*, 976 F.3d at 629. Other Circuits are in accord. *See Dam Things from Denmark, a/k/a Troll Co. ApS v. Russ*

---

[5] To reduce the number of pages in this brief, Amazon has identified these copyrights in <u>Appendix B</u>, which is attached to this brief.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Berrie & Co., Inc.*, 290 F.3d 548, 563 (3d Cir. 2002) ("if the underlying work is itself protected by copyright, then he will receive no protection at all; on the contrary, he is a copyright infringer, because in order to create his work he has copied the underlying work"); *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 853 (8th Cir. 2004) ("if the *PMP Exam Prep* is an unauthorized derivative work of the *PMBOK*, Mulcahy's copyrights are invalid").

Here, a reasonable jury could *only* find that: (1) the 21 copyrights are derivative works; and (2) the 21 works are unlawful because Weekend Warrior did not get a license from the creators of the prior works. Therefore, summary judgment must be granted for the 21 asserted copyrights because Weekend Warrior cannot own copyrights on these unauthorized derivatives as a matter of law. *Hiller*, 976 F.3d at 629.

A.     21 Asserted Copyrights Are Derivative Works

A "derivative work" is any work "based upon one or more preexisting works" that is "recast, transformed, or adapted." 17 U.S.C. § 101. Although derivative works may be eligible for copyright protection, the statute draws a clear line: protection does not extend to parts of works that unlawfully incorporate preexisting material. 17 U.S.C. § 103(a)*; see also Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 529 (2023) ("derivative transformations … may be substantial, like the adaptation of a book into a movie"). Section 106 reinforces the rule by granting the copyright owner the *exclusive right* to prepare derivative works based on the original. 17 U.S.C. § 106(2); *Stewart v. Abend*, 495 U.S. 207, 220 (1990) (noting creator's "bundle of exclusive rights" includes "the right to incorporate the work into derivative works"). In short, while an author may hold a copyright in a derivative based on her own work, she cannot obtain protection for a derivative that unlawfully appropriates someone else's work. 17 U.S.C. § 103(a).

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

The Sixth Circuit's decision in *Hiller* is instructive. That case held that a 117-page training guide *could* be copyrighted even though some pages relied on prior works because the manual contained discrete chapters, some of which copied and some not. 976 F.3dd at 624–25, 629–30 ("because the [plaintiff's work] contains discrete parts, some of which are clearly not based on protected elements [], the district court properly instructed the jury that it could find that [plaintiff] maintained a copyright in some parts of the [work] even if other parts copied from the [prior work] without authorization"). The jury thus had to consider whether "content from [the prior works] ran throughout every 'part' of the [copyrighted work], or in other words '*pervaded'* it." *Id.* at 629 (emphasis added); *see also Caffey v. Cook*, 409 F. Supp. 2d 484, 497 (S.D.N.Y. 2006) (differentiating between individual works and "compilation" because "collective work will qualify for copyright by reason of the original effort expended in the process of compilation, even if no new matter is added") (cleaned up).

But the Sixth Circuit emphasized that such a compilation was the rare case in which a copyright could be partially maintained even though it copied third-party works without authorization. *Hiller*, 976 F.3d at 629. "[I]n most cases, a work that 'adapts' or 'recasts' another work without permission would contain no discrete 'parts' that did not unlawfully use the original work." *Id.* Indeed, without a compilation, "the determination that a work is derivative would necessarily imply that the preexisting work 'pervades' the derivative." *Id.* (citing *Pickett v. Prince* ("*Pickett II*"), 207 F.3d 402, 406–07 (7th Cir. 2000) (an unauthorized derivative cannot be copyrighted because holding otherwise "would inject enormous uncertainty into the law of copyright and undermine the exclusive right that § 106(2) gives the owner of the copyright on the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

original work")). Therefore, in "most cases" (i.e., where the unauthorized derivative work was *not* a compilation), the plaintiff, by law, "lose[s] its copyright." *Id*.

There can be no genuine dispute that the works Weekend Warrior asserts are individual designs, not compilations. But the Court need not dwell on that distinction. As shown in <u>Appendix B</u>, attached to this brief, 21 of Weekend Warrior's asserted copyrights are plainly derivative of earlier works—works that also "pervade" the later designs. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (courts can consider "experience and common sense" to decide motions). Indeed, as further detailed in <u>Appendix B</u>, Weekend Warrior has admitted that many of these 21 copyrighted designs were made by reproducing the original works, are "based" on, and "mimic" their structure and features, or that the original works form "an element" of its designs. (SPUF ¶¶ 110, 125, 131, 138, 144, 149, 154, 160, 166, 172, 178, 187, 193, 198, 204); *see Palladium*, 398 F.3d at 1198–99 (finding asserted copyrights cover derivative works when plaintiff "does not dispute that its sound recordings … are 'based upon' preexisting works" and invalidating them under § 103(a) because no authorization was obtained).

Moreover, unrebutted expert analysis from Defendant's expert concludes that these 21 works, among other Weekend Warrior works, "heavily rely on common, widely used design elements and themes, sometimes directly mimicking existing works" and that "Weekend Warrior's designs, both when broken up into their individual pieces and considered as a whole, do not showcase original or creative additions unique to the author." (SPUF ¶ 109.)

The Court should, as other courts have on summary judgment, conclude that a reasonable jury could *only* find that Weekend Warrior's 21 copyrights are derivatives of prior designs, either as non-compilations or because the prior work "pervades" the asserted copyright. *See, e.g.,*

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Sobhani v. @Radical.Media Inc.*, 257 F. Supp. 2d 1234, 1240–41 (C.D. Cal. 2003) (granting summary judgment on the basis that the plaintiff's work was a derivative because the "Copyrighted Jack–in–the–Box commercial footage, and, particularly, the Jack antenna ball head character, are integrated into and integral to Plaintiff's Spec Commercials" and "it would be impossible to compare the works at issue in this case without reference to the Jack head"); *Pickett v. Prince* ("*Pickett I*"), 52 F. Supp. 2d 893, 907–09 (N.D. Ill. 1999) (granting summary judgment on the basis that the plaintiff's work was a derivative where plaintiff could not explain "what th[e] original, creative parts are" outside of the copying of the prior work), *aff'd*, 207 F.3d 402 (7th Cir. 2000).

      B.      <u>The 21 Derivative Works Are Unlawful</u>

"[P]rotection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. § 103. Accordingly, when a derivative work is created without authorization, the resulting copyright is invalid. *See Hiller*, 976 F.3d at 629 ("when a person creates a derivative work without the original author's permission, that person has unlawfully used the original work").

That is the case here. Weekend Warrior has admitted that the company did not obtain a license from the creators of the prior works for any of their copyrights-at-issue. (SPUF ¶ 108.) In fact, Weekend Warrior did not even *consider* seeking permission for those works. (*Id*.) The failure to obtain a license or similar authorization means that the derivatives are unauthorized. *See, e.g.*, *Palladium*, 398 F.3d at 1200 ("copyrights in the sound recordings are invalid and unenforceable because it has failed to obtain compulsory or consensual licenses from the copyright owners of the underlying musical compositions"); *see also Hiller*, 976 F.3d at 629 (citing *Pickett II*, 207 F.3d at

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

406–07 ("Pickett could not make a derivative work based on the Prince symbol without Prince's authorization even if Pickett's guitar had a smidgeon of originality")).

Weekend Warrior may argue that the derivative works are nonetheless lawful under the doctrine of fair use, including because they are parodies. They are not.

### 1. Weekend Warrior's Fair Use Argument Cannot Save Its Copyrights

Fair use, of which parody is merely a subset, applies only when the secondary work "adds something new, with a further purpose or different character," and "has [a] critical bearing on the substance or style of the original." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579–80 (1994). A work that fails to comment on the original and simply copies another's expression "to get attention or to avoid the drudgery in working up something fresh" does not qualify. *Id.* at 580. Weekend Warrior, as "[t]he party asserting fair use[,] bears the burden of proof." *See Bell v. Worthington City Sch. Dist.*, No. 2:18-cv-961, 2020 WL 2905803, at *6 (S.D. Ohio June 2, 2020).

To evaluate fair use, courts examine four statutory factors: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of what was taken; and (4) the effect on the potential market. 17 U.S.C. § 107. Here, every factor weighs decisively against fair use for the 21 derivative works.

*First*, Weekend Warrior's designs are quintessentially commercial: they exist to sell t-shirts. (*See* SPUF ¶¶ 62, 115–116.) The Supreme Court has made clear that a commercial purpose "weigh[s] against a finding of fair use." *Campbell*, 510 U.S. at 585 (cleaned up); *see also* 17 U.S.C. § 107(1) (first factor includes consideration of "whether such use is of a commercial nature or is for nonprofit educational purposes"). Second, many of the original designs are used on t-shirts,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

such that Weekend Warrior's copyrights "share substantially the same purpose." *Andy Warhol*, 598 U.S. at 526. (*See also* SPUF ¶¶ 124, 137, 143, 159, 165, 177, 183, 192, 199, 203, 231, 237.)

Weekend Warrior cannot avoid that conclusion by invoking "parody," because not everyone "who calls himself a parodist can skim the cream and get away scot free." *Campbell*, 510 U.S. at 589. True parody is narrowly defined. It must "comment[] on the original" itself and "needs to mimic an original to make its point." *Andy Warhol*, 598 U.S. at 530, 532 (quoting *Campbell*, 510 U.S. at 580–81). Merely borrowing a famous image "to get attention or to avoid the drudgery in working up something fresh" is not parody. *Campbell*, 510 U.S. at 579–80. Likewise, merely adding a new "meaning or message" is not enough. *Andy Warhol*, 598 U.S. at 542.

Weekend Warrior's designs fall squarely on the wrong side of that line. They make no commentary on the works they copy but instead use recognizable imagery to attract consumers, as Appendix B makes plain. *Andy Warhol*, 598 U.S. at 544 ("subjective intent" of designer does not "determine the purpose of the use"). For example, the "beer-brand" designs (*Bad Day to Be a Beer – \* America Edition\**, *Bad Day to Be a Cerveza*, *Poor Day to Be a Pilsner*, *Ameri-CAN Eagle*, *Meri-CAN Eagle*, *Ameri-CAN V2, Griddy Cerveza*, *Uncle Sam's American Lager*) replicate Budweiser, Corona, Miller Lite, Pabst Blue Ribbon, and Samuel Adams branding to appeal to fans of those beers—not to critique them. (SPUF ¶¶ 114, 123, 129, 135, 142, 153, 158, 164.) *Bad Day to Be a Beer – Christmas Edition* repurposes the Grinch but without any critical bearing on it. (SPUF ¶ 148.) Likewise, *Enjoy Beer* and *Enjoy Beer – Ugly Sweater* borrow Coca-Cola's Santa without commentary (SPUF ¶¶ 170, 176), swapping in alcohol for soda while preserving the original tone and goodwill.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

The same pattern appears in its sports and entertainment-themed works: *Fantasy Football Legend* copies *Conan the Barbarian* merely as a convenient "warrior" image (SPUF ¶ 182); *Real American - Uncle Sam* mimics images of Hulk Hogan ripping off his shirt for a new character, not to convey any message about the wrestler (SPUF ¶¶ 201–202); *Do You Feel Lucky* reproduces Clint Eastwood's likeness and iconic stance with a revolver from *Dirty Harry* for humor, not critique (SPUF ¶ 197); and *Protect the Charms* and *Make Mullets Great Again* exploit the popularity of Notre Dame sports, Lucky Charms, and *Eastbound & Down* without comment on them. (SPUF ¶¶ 191, 208.) Finally, *I Want Brew*, *Can't Get Hungover*, *Papa Woody Plumbing*, *Pat McCrotch*, and *Ameri-CAW* copy from relatively obscure preexisting works, not to comment on them (SPUF ¶¶ 215, 222, 229, 235, 241) or even to freeride off their popularity but solely to avoid the drudgery of working up something fresh.

Weekend Warrior's own testimony removes all doubt. For example, its founder and designer admitted that *Uncle Sam's American Lager* does "not" comment on the Samuel Adams brand (SPUF ¶ 164), that *Enjoy Beer* and *Enjoy Beer-Ugly Sweater* convey no message about Coca-Cola's use of Santa (SPUF ¶¶ 170, 176), that *Griddy Cerveza* does not contain "specific commentary," (SPUF ¶ 135) and that *Fantasy Football Legend* is "not even trying to go for Conan" (SPUF ¶ 197). He makes similar concessions about *Bad Day to Be a Beer - \*America Edition\**, *Ameri-CAN Eagle*, *Meri-CAN Eagle*, *Ameri-CAN V2*, *Bad Day to Be a Beer – Christmas Edition*, *Fantasy Football Legend*, *Do You Feel Lucky*, *Real American-Uncle Sam*, and *I Want Brew*. (SPUF ¶¶ 114, 123, 148, 153, 158, 182, 197, 202, 222.)

Taken together, these admissions confirm that the works borrow well-known images "to get attention or to avoid the drudgery in working up something fresh," not to express commentary.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Campbell*, 510 U.S. at 580. Such uses have "no critical bearing on the substance or style of the original composition." *Id*. The first factor thus weighs overwhelmingly against fair use.

    *Second*, the works that Weekend Warrior copied—beer-label art, advertising characters, and entertainment imagery—are paradigmatic creative works at "the core of intended copyright protection." *Campbell*, 510 U.S. at 586*.* They are not factual or informational works that receive greater latitude for fair use. *Id*. This factor thus also weighs against fair use.

    *Third*, Weekend Warrior copied far more than was necessary even to signal supposed humor. Its designs replicate the most distinctive and recognizable features of the originals—the Budweiser, Corona, and Miller Lite logos nearly in full; Coca-Cola's Santa intact; and Clint Eastwood's likeness from *Dirty Harry.* Taking "the heart" of a work undermines any claim of fair use. See *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564–65 (1985). Mr. Whelan easily could have created original imagery—a generic beer can or a different warrior— yet instead reproduced the originals' central expression. This factor squarely disfavors fair use.

    *Fourth*, Weekend Warrior's designs harm the very markets the Copyright Act protects. The rights holders—including those with rights to the Samuel Adams, *Conan the Barbarian*, Corona, Budweiser, Pabst Blue Ribbon, Miller Lite, Hulk Hogan, Coca-Cola, and Notre Dame works— license their imagery for t-shirts and merchandise. (SPUF ¶¶ 124, 137, 143, 155, 159, 165, 177, 183, 192, 203.) Indeed, two even sent cease-and-desist letters demanding that Weekend Warrior stop selling infringing designs. (SPUF ¶¶ 115, 184.) Weekend Warrior's unlicensed copies compete directly in that same market, displacing authorized sales and diminishing the licensing value of the originals. The fourth factor, which the Supreme Court has called "undoubtedly the single most important element," *Harper & Row*, 471 U.S. at 566, weighs heavily against fair use.

AMAFAZON MEMO IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT

1:23-cv-00752

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Weekend Warrior's copying is not transformative, not critical, and not fair. It merely repackages others' creative expression for commercial gain. Each statutory factor cuts against fair use, and the undisputed evidence forecloses any genuine dispute of fact on fair use.

\*      \*      \*

In sum, the record establishes that each challenged design is an unlawful derivative, leaving nothing protectable under § 103(a). *See Hiller*, 976 F.3d at 629 (when a work is based on unauthorized preexisting material, "copyright protection may not be granted"). The Court should thus grant partial summary judgment holding Weekend Warrior's 21 asserted copyrights invalid. *See, e.g.*, *Pickett I*, 52 F. Supp. 2d at 908–09 (granting summary judgment to defendant on the basis that "Plaintiff's copyright in the Symbol-guitar is invalid because it is uncontested that Plaintiff lacked authorization"); *Sobhani*, 257 F. Supp. 2d at 1240–41 (similar).

## II.      The DMCA Precludes Liability for 107 Accused Product Listings

Amazon is not liable for copyright infringement as a matter of law for user-uploaded designs that were displayed but never made or sold (the "Unsold Listings") identified in Appendix C. (SPUF ¶¶ 4, 16, 18–19, 72.)

The Digital Millennium Copyright Act ("DMCA") provides that an online service provider "shall not be liable" for infringing material stored "at the direction of a user" or displayed "by reason of [such] storage," provided it lacks actual knowledge of the infringement and acts expeditiously to remove or disable access upon obtaining such knowledge or receiving proper

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

notice. 17 U.S.C. § 512(c). Here, this defense fully disposes of 11 asserted copyrights,[6] for which

all accused listings are Unsold Listings, and partially disposes of another 10[7] where both sold and

unsold listings are accused. *Greg Young*, 2017 WL 2729584, at *6–8 (holding that the DMCA safe

harbor protected the print-and-demand website service Zazzle from infringement claims "to the

extent [the plaintiff] seeks to impose liability based solely on the unauthorized display of

copyrighted images on Zazzle's website").

The DMCA's § 512(c) safe harbor immunizes online service providers from liability for

user-directed content if they meet several specific conditions. 17 U.S.C. § 512(c) & (i) (identifying

elements). When those conditions are met, the provider "shall not be liable" for monetary or

equitable relief. 17 U.S.C. § 512(c); *see Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 83 (2d

Cir. 2016) (same).

Here, all conditions are present, requiring partial summary judgment to Amazon on the

Unsold Listings.

(1) Service Provider. Amazon easily meets the DMCA's definition of a "service provider."

The statute defines the term broadly to include "a provider of online services or network access."

17 U.S.C. § 512(k)(1)(B). Amazon's Merch on Demand service fits squarely within that definition:

---

[6] The 11 copyrights are: *Uncle Sam's American Lager*, *Real American - Uncle Sam*, *Ameri-CAN V2*, *Bad Day to be a Beer – Christmas Edition*, *Do You Feel Lucky*, *FrankenSTEIN*, *Get Smashed*, *Most Interesting Pumpkin*, *Protect the Charms*, *Where the Horrors At?*, and *Shut-Up Liver*.

[7] The additional 10 copyrights for which the DMCA safe harbor provides a defense for some but not all accused listings are: *Tits McGee Irish Pub*, *Bad Day to Be a Cerveza*, *Pat McCrotch Irish Pub*, *Griddy Cerveza*, *Bad Day to Be a Beer - *America Edition**, *Uncle Sam Griddy*, *Bad Day to Be a Beer*, *I Want Brew*, *Papa Woody Plumbing*, and *Santa Griddy*.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

it hosts and displays user-submitted designs on Amazon's systems and presents them to customers through product listings. (SPUF ¶ 3.) Courts addressing Amazon's various online services have uniformly found that it qualifies as a service provider under the DMCA. *See FurnitureDealer.net, Inc. v. Amazon.com, Inc.*, No. CV 18-232 (JRT/HB), 2019 WL 3738622, at \*5 (D. Minn. Aug. 8, 2019) ("Amazon is a service provider"); *Dona't v. Amazon.com/Kindle*, 482 F. Supp. 3d 1137, 1141 (D. Colo. 2020) (Amazon qualifies as service provider and granting DMCA defense on summary judgment); *Hendrickson v. Amazon.com, Inc.*, 298 F. Supp. 2d 914, 915–16 (C.D. Cal. 2003) (same).

(2) <u>User-Directed Storage</u>. The accused listings were "stored at the direction of a user" and any display occurred "by reason of the storage," as required by § 512(c)(1). *See Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 605–07 (9th Cir. 2018) (cleaned up) (content uploaded and labeled by users is stored "at the direction of a user" even where provider screens for prohibited material). Here, Merch on Demand creators—not Amazon—upload their designs, choose the product type, recommend the price, and provide the title, description, and other listing details. (SPUF ¶¶ 3, 5, 9–10, 12.) Amazon's systems then automatically store the user inputs and generate listing pages and mockups through routine, automated processes. (SPUF ¶¶ 13–14.) Apart from limited screening and post-notice removals, Amazon does not review, edit, or select designs. (SPUF ¶¶ 9, 11, 13, 15.) Because the content originates from users and Amazon's display results solely from automated storage functions, § 512(c)(1) squarely applies. *See UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1016–20 (9th Cir. 2013) (display occurs "by reason of storage" when provider performs automated, access-facilitating functions such as transcoding or formatting); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 38–40 (2d Cir. 2012) (same).

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

(3) <u>Lack of Knowledge and Removal Upon Notice</u>. The third factor requires evidence that the service provider "does not have actual knowledge that the material … is infringing," "is not aware of facts or circumstances from which infringing activity is apparent," and "upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material." 17 U.S.C. § 512(c)(1)(A)(i)–(iii).

The record establishes that Amazon lacked both actual and "red-flag" knowledge of any alleged infringement regarding the Unsold Listings before this lawsuit was filed, and that it acted expeditiously to remove such listings once notified—satisfying this factor. Weekend Warrior did not send Amazon a notice identifying any of the Unsold Listings.[8] (SPUF ¶¶ 72–73.) Nor were the limited notices that did not mention the Unsold Listings sufficient to confer knowledge for the Unsold Listings because the DMCA expressly provides that a notice which fails to identify *the copyrighted work* and *the allegedly infringing material* "shall not be considered" in determining whether a service provider had actual or apparent knowledge of infringement. 17 U.S.C. § 512(c)(3)(B)(i)–(ii). Nor is there any evidence that Amazon somehow independently knew that any of the challenged listings allegedly infringed. *Ventura Content*, 885 F.3d at 609 (Under § 512(c)(1)(A)(i), "knowledge" means actual awareness, "not merely a possible inference from ambiguous circumstances.").

There is likewise no evidence that Amazon had pre-suit "red-flag" knowledge—subjective awareness of facts making the specific infringement objectively obvious to a reasonable person.

---

[8] The notices Weekend Warrior did send—that Amazon reasonably treated as fraudulent—did not identify the Unsold Listings. (SPUF ¶¶ 72–73.)

AMAZON MEMO IN SUPPORT
OF MOTION FOR SUMMARY
JUDGMENT

-44-

1:23-cv-00752

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*See UMG Recordings*, 718 F.3d at 1023 ("[defendant's] general knowledge that it hosted copyrightable material and that its services could be used for infringement is insufficient to constitute a red flag"). Hosting user-generated material with general knowledge that infringement might occur is not enough to impute knowledge, and even an assumption that "some of the material on the site must be infringing" does not remove the safe harbor. *Ventura Content*, 885 F.3d at 610–11.

And once Amazon obtained knowledge of specific listings after this action began—through the complaint, its own investigation, or subsequent notices—it removed those listings expeditiously. (SPUF ¶¶ 86–88, 91.) None of the Unsold Listings remained on the website longer than 14 days after Amazon learned of them, further confirming that § 512(c)(1)(A) applies. (SPUF ¶ 93.)

(4) <u>No Right and Ability to Control; No Direct Financial Benefit</u>. The undisputed evidence also satisfies § 512(c)(1)(B), which requires that the service provider lack both the "right and ability to control" the infringing activity and a "financial benefit directly attributable" to it. A service provider has the requisite control only when it "exert[s] substantial influence on the activities of users," not merely the ability to remove or block access to content. *UMG Recordings*, 718 F.3d at 1030 (quoting *Viacom*, 676 F.3d at 38). A provider lacks that control where "nothing in the record suggests that [it] told its users what to upload" or curated content "in any meaningful way." *Ventura Content*, 885 F.3d at 613. The same is true here: Amazon does not review designs before upload or dictate what creators post, aside from automated filters for prohibited or offensive content. (SPUF ¶ 15.) Because Amazon does not exert substantial influence over user activity, it lacks the "right and ability to control" under § 512(c)(1)(B).

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Amazon also received no "financial benefit directly attributable to the infringing activity." 17 U.S.C. § 512(c)(1)(B). The statute's use of "directly" requires revenue "distinctly attributable to the infringing material at issue." *Ventura Content*, 885 F.3d at 613. Here, the challenged listings generated no sales and no advertising revenue. (SPUF ¶ 72.) Accordingly, Amazon obtained no direct financial benefit from any alleged infringement, and § 512(c)(1)(B) presents no bar to safe-harbor protection.

(5) <u>Expeditious Removal Upon Receipt of a DMCA Notice</u>. Section 512(c)(1)(C) requires that, upon receiving a notice of a specific, claimed infringement that contains the information specified in § 512(c)(3)(A), a service provider "respond[] expeditiously to remove, or disable access to, the material." Among other things, § 512(c)(3)(A)(iii) requires "information reasonably sufficient to permit the service provider to locate the material" that is claimed to be infringing. "The DMCA notification procedures place the burden of policing copyright infringement— identifying the potentially infringing material and adequately documenting infringement— squarely on the owners of the copyright." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007).

Weekend Warrior did not send Amazon a notice that identified any of the product listings (ASINs) at issue here, thereby failing to trigger any duty to remove them. (SPUF ¶ 73.) *See Athos Overseas Ltd. Corp. v. YouTube, Inc.*, No. 21-21698-CIV, 2023 WL 5607936, at *9 (S.D. Fla. Aug. 29, 2023), *report and recommendation adopted sub nom. Athos Overseas, Ltd. v. YouTube, Inc.*, No. 1:21-CV-21698, 2023 WL 5607935, at *9 (S.D. Fla. Aug. 29, 2023) ("Plaintiff runs headlong against a brick wall erected by the DMCA" by "charging [defendant] with the affirmative obligation of going beyond the specific URLs identified in Plaintiff's DMCA takedown requests");

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

*Viacom*, 676 F.3d at 32 (defeating DMCA safe harbor "requires specific knowledge of particular infringing activity"); *Capitol Recs., LLC*, 826 F.3d at 89–90 (under DMCA, "[i]nternet service providers [are] [] relieved of liability for user-posted infringements of which they were unaware, as well as of the obligation to scour matter posted on their services to ensure against copyright infringement").

(6) <u>Reasonable Implementation of Repeat-Infringer Policy</u>. Section 512(i)(1)(A) requires that a service provider "reasonably implement" a policy for terminating repeat infringers in appropriate circumstances. Courts hold that this standard is met when the provider maintains "(1) a working notification system; (2) a procedure for responding to DMCA-compliant notifications; and (3) does not actively prevent copyright owners from collecting information needed to issue such notifications," and when it terminates users who repeatedly or blatantly infringe. *Ventura Content, Ltd. v. Motherless, Inc.*, 2013 WL 11237204, at *13 (C.D. Cal. July 3, 2013), *aff'd*, 885 F.3d 597 (9th Cir. 2018) (citing *CCBill LLC*, 488 F.3d at 1109–10).

Amazon satisfies this requirement. It maintains an effective notification system, processes and acts on DMCA notices, and terminates repeat infringers when appropriate—and has done so in practice. (SPUF ¶¶ 27, 29, 32, 38–45, 47, 49.) Amazon also uses automated tools to prevent likely repeat infringers from creating new accounts and notifies users that repeat infringers will be terminated through its Conditions of Use and IP Policy. (SPUF ¶ 27.) And Amazon does nothing to interfere with "standard technical measures." 17 U.S.C. § 512(i)(1)(B). (SPUF ¶ 9.)

The DMCA demands reasonable, not perfect, implementation. *See Ventura Content*, 885 F.3d at 613–19. Because Amazon's system is both active and effective, it satisfies § 512(i)(1)(A)'s repeat-infringer policy requirement.

-47-                                1:23-cv-00752

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

(7) <u>Agent to Receive DMCA Notices</u>. Amazon also satisfies § 512(c)(2), which requires that a service provider designate "an agent to receive notifications of claimed infringement." Amazon publicly identifies its Copyright Agent through multiple channels: its website (1) lists a dedicated email address for DMCA notices, (2) provides an online Report Infringement form prompting senders for the elements of a compliant notice under § 512(c)(3)(A), and (3) publishes a physical mailing address for rights-holder correspondence. (SPUF ¶¶ 38–44.) These publicly accessible channels designate the agent and provide clear notice of how to submit takedown requests, precisely as the statute requires. Courts agree that Amazon's DMCA agent designation and takedown procedures comply with § 512(c)(2). *See Lee v. Amazon.com Inc.*, No. 221CV01090RAJBAT, 2023 WL 6931800, at *8 (W.D. Wash. July 27, 2023), *report and recommendation adopted,* No. 2:21-CV-01090-RAJ, 2023 WL 6896663 (W.D. Wash. Oct. 19, 2023), *aff'd,* No. 23-3132, 2025 WL 1202522 (9th Cir. Apr. 25, 2025) (discussing Amazon's notice-and-takedown system and designated agent); *King v. Amazon Corp.*, No. 3:18-CV-00534-KDB-DSC, 2019 WL 6404882, at *5 (W.D.N.C. Nov. 27, 2019) (similar).

*       *       *

The DMCA's safe harbor applies here exactly as Congress intended. Amazon is a qualifying service provider that hosts user-directed content, lacked knowledge of any alleged infringement, removed the accused listings as soon as it was notified, and enforces a robust repeat-infringer policy. Plaintiff cannot establish control, benefit, or any connection between Amazon's conduct and the alleged infringement. The Unsold Listings generated no sales, no revenue, and no infringing products—only user content that Amazon promptly removed. Because the DMCA protects service providers in precisely these circumstances, partial summary judgment should be

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

entered in Amazon's favor. *See, e.g.*, *Hendrickson*, 298 F. Supp. 2d at 918 (granting summary judgment to Amazon based on "safe harbor affirmative defense of the DMCA"); *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1155 (N.D. Cal. 2008) (same for online video service provider).

## III. <u>Weekend Warrior Cannot Recover Attorney's Fees for 22 Copyrights</u>

Amazon seeks partial summary judgment finding that, even if Weekend Warrior prevails on infringement, Weekend Warrior cannot recover attorney's fees for 22 asserted copyrights. (Doc. 41 (identifying the 22 copyrights).)

The parties have *already* stipulated to the core facts for these 22 copyrights: (1) Amazon's alleged infringement commenced after their first publication and before the effective date of registration; and (2) Weekend Warrior did not register them until more than three months after their first publication. (Doc. 41 at PageID 2061–2063.) And Weekend Warrior has already agreed that it cannot recover statutory damages for these 22 copyrights. (*Id.*)

The only remaining dispute as to these 22 asserted copyrights is whether Weekend Warrior can recover *attorney's fees*. But the law is clear: the same statute that bars Weekend Warrior from recovering statutory damages also bars Weekend Warrior from recovering attorney's fees for the 22 asserted copyrights. 17 U.S.C. § 412.

Section 505 confers discretion to award attorney's fees "[e]xcept as otherwise provided by this title." 17 U.S.C. § 505. Section 412 is that "otherwise provided" limit: "no award . . . of attorney's fees, as provided by section[] . . . 505, shall be made" for "any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

U.S.C. § 412. The Sixth Circuit treats § 412 as mandatory, explaining that it "leaves no room for discretion, mandating that no attorney's fees or statutory damages be awarded so long as the infringement commenced before registration of the copyright." *Johnson*, 149 F.3d at 505.

Courts thus enforce § 412 in cases that include both timely and untimely registered copyrights by awarding fees, if at all, only for the timely claims. Cases have been remanded to "determine what percentage of work … was devoted to" the untimely-registered claim and reduce the award accordingly. *Knitwaves*, 71 F.3d at 1005, 1012; *see also Indep. Living Aids, Inc. v. Maxi-Aids, Inc.*, 25 F. Supp.2d 127, 131 (E.D.N.Y. 1998) (§ 412 "precludes [plaintiff] from obtaining attorneys' fees for its counsels' work on 15 of 17 infringing acts"). Such a reduction "is required because the plaintiffs may only recover attorneys' fees for the infringement of those articles that were registered within three months after publication of the work." *Itar-Tass Russian News Agency v. Kurier*, No. 95 CIV. 2144, 1997 WL 324086, at *3 (S.D.N.Y. June 13, 1997) (awarding "only 50% of the attorneys' fees sought by the plaintiffs").

Nevertheless, Weekend Warrior did not stipulate that it cannot recover attorney's fees for these copyrights, referencing "cases discussing apportionment of fee awards in situations where certain claims or works are eligible for fees while others are not," and citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983), *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531 (6th Cir. 2008), and *Brighton Collectibles, Inc. v. RK Texas Leather Mfg.*, No. 10-CV-419-GPC (WVG), 2014 WL 5438532 (S.D. Cal. Oct. 24, 2014). (SPUF ¶¶ 103−104.)

The three decisions Weekend Warrior cites—*Hensley*, *Imwalle*, and *Brighton Collectibles*—do not apply because they do not authorize fees where Congress has expressly withdrawn it. In *Hensley*, a civil-rights case where the plaintiff prevailed on some but not all

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

claims, the Supreme Court held that when successful and unsuccessful claims share a "common core of facts," a court need not divide hours on a "claim-by-claim basis." 461 U.S. at 435. Similarly, in *Imwalle*, when the plaintiff prevailed on some but not all employment claims, the Sixth Circuit relied on *Hensley* to affirm a fee award covering all claims because they involved "common facts" and "significant overlap in the legal theories." 515 F.3d at 555. Neither *Hensley* nor *Imwalle* addressed copyright, § 412, or any statute that withdraws a court's discretion to award attorney's fees.

While *Brighton Collectibles* awarded fees covering successful and unsuccessful copyright claims because "the factual issues were inextricably combined," it did not address a plaintiff prevailing on both fee-eligible and fee-barred claims or § 412. 2014 WL 5438532, at *10. None of these cases suggests a court may ignore § 412's express prohibition on attorney's fees for pre-registration infringements. Where Congress has removed discretion, equitable fee doctrines yield to the statute.

By contrast, a decision that considered *Hensley* and § 412 found that attorney's fees are not permitted for untimely registered copyrights. *See Del Amo*, 2008 WL 11339619, at *6. The plaintiff prevailed and obtained "excellent results" on copyright and related claims arising from a "common core of facts" and "related theories." *Id.* at *5–6. Even so, *Del Amo* explained that while courts ordinarily have discretion to award attorney's fees, "there are specific circumstances where no discretion exists," including where "[§] 412 mandates that no attorney's fees or statutory damages are to be awarded." *Id.* at *5. The court therefore rejected the argument that *Hensley's* "related claims" analysis could justify attorney's fees, holding that a fee award for untimely registered

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

copyrights, "would not only be inconsistent with the purposes underlying the Copyright Act's registration provisions, it would also be contrary to the plain language of" § 412. *Id.* at *6.

In sum, this Court should follow every other court to consider this attorney's fees issue in the context of copyright law and issue partial summary judgment that Weekend Warrior cannot recover attorney's fees on the 22 asserted copyrights. *See, e.g.*, *Indep. Living*, 25 F. Supp. 2d at 131 ("ILA is not [] entitled to attorneys' fees on 15 of the 17 catalogs at issue, because they were registered more than 3 months after first publication."); *Itar-Tass*, 1997 WL 324086, at *3 ("In this case, only 28 of the 345 works for which the plaintiffs received damages qualify for an award of attorneys' fees. Thus, this Court must determine what percentage of the fees sought by the plaintiffs should be attributed to litigation regarding the eligible 28 works, as opposed to the 317 works for which the plaintiffs are not entitled to receive attorneys' fees.").

## IV.  Weekend Warrior Cannot Recover Enhanced Statutory Damages

Amazon seeks partial summary judgment finding that, even if Weekend Warrior prevails on infringement, Weekend Warrior cannot recover enhanced statutory damages for willful infringement. Enhanced statutory damages under § 504(c) are reserved for cases of willful infringement. Of the 48 asserted copyrights, Weekend Warrior has stipulated that 22 asserted copyrights are ineligible for statutory damages—and therefore also ineligible for enhanced statutory damages. (Doc. 41 at PageID 2061–2063.) For the 26 remaining copyrights,[9] enhanced

---

[9] The 26 other copyrights at issue here are: *Pat McCrotch Irish Pub*, *Griddy Taco*, *Griddy Cerveza*, *Uncle Sam's American Lager*, *USA Drinking Team Mascot*, *Real American - Uncle Sam*, *Ameri-CAN Eagle*, *Meri-CAN Eagle*, *Uncle Sam Griddy*, *USA Jam - Uncle Sam/Merican Eagle*, *USA*

(Continued...)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

statutory damages—while theoretically available—are foreclosed because the undisputed evidence rules out a finding of willful infringement.[10] Willful infringement "requires evidence that a defendant has knowingly or recklessly infringed on the copyright." *UMG Recordings*, 585 F.3d at 278. Amazon received no adequate notice of alleged infringement until after this lawsuit was filed, promptly removed all identified listings once notified, relied on third parties' representations of non-infringement, and applied neutral notice-and-takedown procedures. (SPUF ¶¶ 24, 66–68, 81–84, 87, 91.) Under these facts, summary judgment of no willful infringement—and no enhanced statutory damages—is appropriate. *See Philpot*, 343 F. Supp. 3d at 701 (no willfulness where defendant removed photo upon notice); *SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 882–83 (N.D. Cal. 2022) (granting summary judgment of no willfulness in part because third parties who uploaded alleged infringing music to Apple's platform represented they had the right to do so and because Apple maintained takedown procedures when notified of alleged infringement).

---

*Jam - Washington/Lincoln*, *Ameri-CAN V2*, *Bald Eagle Griddy*, *Ameri-CAW*, *FrankenSTEIN*, *Skeleton Griddy*, *The Grim Rizzer*, *Where the Horrors at?*, *Morning Wood Lumber*, *Papa Woody Plumbing*, *Master Bait*, *Shut-Up Liver*, *Enjoy Beer - Ugly Sweater*, *Camel Tow*, *Merry Rizz-Mas*, and *Santa Griddy*. (Doc. 17 at PageID 123–125.)

[10] Because willfulness raises the statutory damages ceiling from $30,000 to $150,000 per work, a no-willfulness judgment on the remaining 26 copyrights would reduce Weekend Warrior's maximum potential recovery by $120,000 per work—$3,120,000 across these 26 claims—and materially narrow available damages. *See* 17 U.S.C. § 504(c).

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

A.  <u>Weekend Warrior Cannot Obtain Enhanced Damages for the 22 Copyrights Where It Concedes Statutory Damages are Unavailable</u>

For 22 of the asserted copyrights, there is no dispute statutory damages under § 505(c)—whether regular or enhanced—are unavailable because Weekend Warrior commenced this action prior to registration. 17 U.S.C. § 412. Weekend Warrior has so stipulated (*see* Doc. 41 at PageID 2061–2063) and partial summary judgment is therefore appropriate.

B.  <u>Weekend Warrior Cannot Show that Amazon Willfully Infringed the Remaining 26 Copyrights</u>

Even if Weekend Warrior can prove infringement for any of the 26 copyrights, willful infringement—and enhanced damages—requires something more. Weekend Warrior must show that Amazon acted "knowingly or recklessly," and the undisputed facts foreclose such a determination here.

As an initial matter, it is undisputed that Amazon did not knowingly infringe any of the copyrights. Prior to filing this lawsuit, Weekend Warrior did not send a notice identifying 24 of the 26 copyrights, let alone the product listings that allegedly infringed them. (SPUF ¶¶ 70–71.) Nor is there any evidence Amazon was otherwise aware of these copyrights. There is therefore no genuine dispute that Amazon lacked pre-suit actual knowledge of alleged infringement as to these 24 copyrights. *See King Recs., Inc. v. Bennett*, 438 F. Supp. 2d 812, 861–62 (M.D. Tenn. 2006) (finding insufficient notice to support willful infringement where plaintiff's notices of alleged infringement did not specify "which of Plaintiff's [works] [defendant] was allegedly infringing").

For the remaining two copyrights, *Ameri-CAN Eagle* and *Pat McCrotch*, Weekend Warrior alleges it attempted to provide pre-suit notice—but Amazon still lacked actual knowledge, as it did not actually receive or review those notices due to a neutral email filter. (SPUF ¶¶ 49–50, 55,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

80.) Specifically, when Weekend Warrior had sent notices about different copyrights from the email address, twhelan40@gmail.com, ███████████████████████████████

███████████████████████████ (SPUF ¶¶ 74, 76–79.) When Weekend Warrior later sent the notices about *Ameri-CAN Eagle* and *Pat McCrotch* using that same email address, ███████████████████

███████████████████. (SPUF ¶ 80.) Since the undisputed facts show Amazon did not review the notices, it lacked actual pre-suit knowledge. *See Michael Grecco Prods., Inc. v. Fandom, Inc.*, No. 2:24-CV-05963 MWC (BFMX), 2025 WL 1675668, at *4 (C.D. Cal. May 9, 2025), *reconsideration denied*, No. 2:24-CV-05963 MWC (BFMX), 2025 WL 2271482 (C.D. Cal. July 9, 2025), *appeal docketed* No. 25-4948 (9th Cir. Aug. 6, 2025) (granting summary judgment and holding defendant did not have actual knowledge where defendant filtered all 30 pre-suit notices as part of a spam attack prevention effort and therefore did not review notices).

Lacking actual knowledge of infringement, Weekend Warrior would need to establish Amazon acted recklessly or with willful blindness to infringement to establish willful infringement and receive enhanced damages. In these circumstances, recklessness requires a defendant to "know[] of a substantial and unjustified risk of … wrongdoing." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 770 (2011); *see also Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 834 (9th Cir. 2019). Willful blindness is a mental state that "surpasses recklessness," requiring "(1) [t]he defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Far from meeting these standards, the undisputed evidence shows (1) pre-filing, Amazon reasonably relied on third parties' representations of non-infringement, (2) after filing, Amazon diligently and promptly removed the allegedly infringing listings, and (3) at all times, Amazon's

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

policies and procedures demonstrate that Amazon employs good-faith, reasonable, preventive safeguards and neutral notice-and-takedown procedures.

First, Amazon vets third parties before allowing them to add Merch product listings, including the listings alleged to infringe the copyrights at issue. (SPUF ¶ 22.) Applicants must provide detailed information, and must also agree that submissions comply with all laws and do not use intellectual property without authorization. (SPUF ¶¶ 20–24.) The uploading third parties are best positioned to know the origins and rights to their designs, and Amazon reasonably relied on its vetting process and these contractual representations. (SPUF ¶¶ 24–25, 28, 34.) Courts routinely uphold such reliance for other content hosting services, including Zillow and Apple. *SA Music*, 592 F. Supp. 3d at 882; *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 749–50 (9th Cir. 2019) (reversing JMOL denial of no willful infringement in part because Zillow relied on content providers' assurances of rights).

Second, the undisputed facts establish that Amazon promptly took steps to remove the allegedly infringing listings after Weekend Warrior filed suit. (SPUF ¶ 87.) Indeed, Amazon proactively reached out to Weekend Warrior and within a month of filing, Amazon had removed more than 1,000 listings (most of which Weekend Warrior does not currently accuse of infringement). (SPUF ¶¶ 91, 96.) For these 26 copyrights, Amazon removed every single one within 14 days of receiving notice, and usually much faster. (SPUF ¶ 96.) Weekend Warrior cannot create a genuine issue of fact as to whether Amazon's post-suit conduct supports willful infringement because Amazon acted promptly to remove the accused listings. *Philpot*, 343 F. Supp. 3d at 701 (no willful infringement when defendant removed photo upon notice and attempted to cooperate), *rev'd on other grounds*, 776 F. App'x 906 (6th Cir. 2019); *Capitani*, 552

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

F. Supp. 3d at 799 (no willful infringement in part because defendant "did not sell any infringing wall clocks after it learned about this lawsuit and its potential violation of U.S. copyright laws").

Finally, Amazon actively maintains a notice-and-takedown system to address claims of alleged infringement. It provides multiple ways for third parties to report alleged infringement, and it uses ████████ front-line investigators to deal with millions of notices from putative rights owners that it receives each year. (SPUF ¶ 56.) If such a notice is accepted, Amazon uses the reported content to proactively monitor its Merch listings. (SPUF ¶ 60.) Amazon's practice is consistent with the good-faith notice-and-takedown procedures that courts have found to deny willfulness. *See, e.g.*, *SA Music*, 592 F. Supp. 3d. at 882–83.

Lacking a reasonable argument that Amazon's overall policies and actions demonstrate recklessness (or willful blindness to infringement), Weekend Warrior may focus on *Ameri-CAN Eagle* or *Pat McCrotch*. ████████████████████████████████████ ██████████████████████████████████████████████. (SPUF ¶¶ 74–80.) But there is no evidence that Amazon's good-faith effort to prevent fraud was an attempt to avoid knowledge of copyright infringement, so this argument fails too. *Michael Grecco Prods.*, 2025 WL 1675668, at *4 (finding "no evidence that Fandom was willfully blind" when Fandom applied a verification system to filter pre-suit notices). Instead, the undisputed evidence shows that Amazon receives millions of notices annually, many of which are fake or fraudulent; bad-faith submitters often assert non-existent IP to knock out competitors. (SPUF ¶¶ 16, 45–46.) To combat this, Amazon applies standard anti-fraud protocols: ██████████████████████████████████████████████████ ████████████████████████████████. (SPUF ¶ 53.) That is what happened here. ████████ █████████████████████████████████████████████████████████████████████████

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

███████████████████ (SPUF ¶¶ 77–80.) ████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████ (SPUF ¶ 77.) ███████

██████████████████████████████████████—including those

concerning *Ameri-CAN Eagle* and *Pat McCrotch*. (SPUF ¶ 80.) ████████

████████████████████████████████████████████████████

████████████ (SPUF ¶¶ 82–85.) Because there is no evidence Amazon's attempt to

avoid fraud "was a deliberate attempt to avoid acquiring knowledge about copyright

infringement," no reasonable jury could find willful infringement for these two copyrights.

*Michael Grecco Prods.*, 2025 WL 1675668, at *4.

\*       \*       \*

In sum, because Weekend Warrior cannot show actual knowledge, reckless disregard, or

willful blindness, Amazon is entitled to partial summary judgment finding that Weekend Warrior

cannot recover enhanced statutory damages under § 504(c).

## V.     <u>The Court Should Grant Partial Summary Judgment of No Infringement Regarding Five Copyrights</u>

Finally, the Court should grant partial summary judgment of no infringement as to two

categories of asserted copyrights: (1) *King of the Kill*, *Happy St. PatRizz Day*, and *Down Goes

Liver*, which were not pleaded in the operative complaint; and (2) *Ameri-CAN v2* and *Shut-Up

Liver*, for which no allegedly infringing listings have been identified on Amazon.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

A.   Weekend Warrior Did Not Plead Copyright Infringement for the *King of the Kill*, *Happy St. PatRizz Day*, and *Down Goes Liver* Copyrights

A plaintiff's complaint "must state 'which *specific* original work is the subject of the copyright claim, that plaintiff owns the copyright, [and] that the work in question has been registered in compliance with the statute." *Flynn*, 2004 WL 51929, at *12 (emphasis in original) (quoting *Gee v. CBS, Inc.*, 471 F. Supp. 600, 643 (E.D. Pa. 1979)). Therefore, a plaintiff "may not rely on unpleaded" copyrights "to support his copyright infringement claim." *Melk*, 2011 WL 2582105, at *1 n.2.

Here, Weekend Warrior does just that, rely on copyrights that are not pleaded as the basis for its copyright infringement claims:

- *King of the Kill* and *Happy St. PatRizz Day.* Though Weekend Warrior mentioned these copyrights in its operative complaint, it expressly stated that it "*does not assert* direct or indirect copyright infringement claims as to these designs at this time, but reserves the right to amend its Complaint once those registrations are approved." (SPUF ¶ 98 (emphasis added).) Weekend Warrior did not ever seek to amend its complaint to plead infringement for the *King of the Kill* or *Happy St. PatRizz Day* copyrights. (SPUF ¶ 100.) It nevertheless accused product listings of infringing these copyrights in its Court-ordered disclosure of each allegedly infringing design with its ASIN (i.e., unique product identification number). (SPUF ¶ 102.)

- *Down Goes Liver.* The operative complaint does not mention the *Down Goes Liver* copyright. (SPUF ¶ 99; *see generally* Doc. 17 at PageID 118–252.) Nor did Weekend Warrior ever move to amend its complaint to plead infringement for the *Down Goes Liver*

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

copyright. (SPUF ¶ 100.) But it nevertheless accused product listings of infringing these copyrights in its Court-ordered disclosure of each allegedly infringing design with its ASIN (i.e., unique product identification number). (SPUF ¶ 102.)

Accordingly, because the *King of the Kill*, *Happy St. PatRizz Day*, and *Down Goes Liver* copyrights were never pleaded in the operative complaint, the Court should grant partial summary judgment as to Weekend Warrior's infringement claims based on those works. *See, e.g., Melk*, 2011 WL 2582105, at *1–2 & n.2 (granting summary judgment on copyright claim and holding that there is a "single copyrighted work at issue here" because the other works are "unpleaded" and the "Complaint must state which specific works he believes have been infringed").

B.    Weekend Warrior Has Not Identified Any Infringing Works for its *Ameri-CAN v2* and *Shut-Up Liver* Copyrights

Partial summary judgment is likewise warranted for the *Ameri-CAN v2* and *Shut-Up Liver* copyrights because Weekend Warrior has failed to identify any allegedly infringing listings corresponding to those works. A plaintiff must not only identify the copyrights at issue but also specify "by what acts and during what time defendant has infringed the copyright." *Flynn*, 2004 WL 51929, at *12 (quoting *Gee*, 471 F. Supp. at 643); *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (to succeed on copyright claim, must prove defendant "copied" the work). Consistent with that requirement, this Court ordered Weekend Warrior to identify "each allegedly infringing design (with its ASIN) on Amazon, grouped by (and side-by-side with) the work they allegedly infringe." (SPUF ¶ 101.)

Weekend Warrior has never identified any infringing works corresponding to the *Ameri-CAN v2* or *Shut-Up Liver* copyrights in response to the Court's order. (SPUF ¶ 102.) Therefore,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

the Court should grant partial summary judgment of no infringement for the *Ameri-CAN v2* and *Shut-Up Liver* copyrights. *See, e.g.*, *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 512 (6th Cir. 2008) (affirming dismissal of copyright infringement claim where plaintiff failed to "identify any specific works by defendants that infringe on plaintiff's copyright").

## <u>CONCLUSION</u>

Holding Amazon liable for its Merch on Demand service would upend decades of settled law and common sense. Print-on-demand and other service providers deliver enormous value to small businesses, creators, and consumers by enabling affordable, customized products without creative involvement in the content itself. And Amazon works hard (and effectively) to limit and remove infringing third-party content. Treating these services as infringers when they do not have *knowledge* of the infringing third-party designs would not only cripple an entire sector of legitimate commerce, but would also expose traditional brick-and-mortar print shops to the same risk every time a customer walks in with a design. The Copyright Act does not permit, much less compel, that result. Weekend Warrior is not without remedy—it may pursue the parties who actually created the allegedly infringing designs. But the law does not allow shifting that burden to a content-neutral service like Amazon. Summary judgment should be granted.

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

Dated: October 24, 2025

Respectfully submitted,


/s/ Moez M. Kaba

by s/ Klaus H. Hamm per email authorization

Moez M. Kaba (*pro hac vice*)
Jessica N. Trafimow (*pro hac vice*)
HUESTON HENNIGAN LLP
1 Little West 12th Street, 2nd Floor
New York, NY 10014
Telephone: (646) 930-0415
mkaba@hueston.com
jtrafimow@hueston.com

Christine Woodin (*pro hac vice*)
Sourabh Mishra (*pro hac vice*)
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4099
cwoodin@hueston.com
smishra@hueston.com

*Counsel for Defendants*
*Amazon.com Services LLC and*
*Amazon.com, Inc.*

/s/ Klaus H. Hamm

Ryan L. Frei (*pro hac vice*)
Klaus H. Hamm (*pro hac vice*)
Ziyu Ma (*pro hac vice*)
Todd M. Siegel (*pro hac vice*)
KLARQUIST SPARKMAN, LLP
121 SW Salmon Street, Suite 1600
Portland, Oregon 97204
Telephone: (503) 595-5300
Facsimile: (503) 595-5301
ryan.frei@klarquist.com
klaus.hamm@klarquist.com
ziyu.ma@klarquist.com
todd.siegel@klarquist.com

Gregory F. Ahrens
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: (513) 241-2324
gahrens@whe-law.com

*Counsel for Defendants*
*Amazon.com Services LLC and*
*Amazon.com, Inc.*

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**APPENDIX A – Partial Summary Judgment Overview**

This table identifies each Weekend Warrior work challenged in Amazon's motion for partial summary judgment and the grounds for each challenge.

| Work | NO LIABILITY | | | | LIMITED REMEDIES | |
|---|---|---|---|---|---|---|
| | Invalid (§ 103(b)) | Safe Harbor (§ 512(c)) | Not Asserted in Complaint (ECF 17) | No Accused Listings (ECF 33–33-2) | Attorney Fees Ineligible (§ 412) | Enhanced Statutory Damages Ineligible (§ 504(c)(2)) |
| *Ameri-CAN Eagle* | ✓ | | | | | ✓ |
| *Ameri-CAN V2* | ✓ | ✓ | | ✓ | | ✓ |
| *Ameri-CAW* | ✓ | | | | | ✓ |
| *Bad Day to Be a Beer* | | Partial | | | ✓ | ✓ |
| *Bad Day to Be a Beer - *America Edition** | ✓ | Partial | | | ✓ | ✓ |
| *Bad Day to be a Beer – Christmas Edition* | ✓ | ✓ | | | ✓ | ✓ |
| *Bad Day to Be a Bier* | | | | | ✓ | ✓ |
| *Bad Day to Be a Cerveza* | ✓ | Partial | | | ✓ | ✓ |
| *Bad Day to Be a Turkey* | | | | | ✓ | ✓ |
| *Bald Eagle Griddy* | | | | | | ✓ |
| *Boo Bees and Beer* | | | | | ✓ | ✓ |
| *Camel Tow* | | | | | | ✓ |
| *Can't Get Hungover* | ✓ | | | | ✓ | ✓ |
| *Do You Feel Lucky* | ✓ | ✓ | | | ✓ | ✓ |
| *Down Goes Liver* | N/A | N/A | ✓ | N/A | N/A | N/A |
| *Enjoy Beer* | ✓ | | | | ✓ | ✓ |
| *Enjoy Beer – Ugly Sweater* | ✓ | | | | | ✓ |
| *Fantasy Football Legend* | ✓ | | | | ✓ | ✓ |
| *FrankenSTEIN* | | ✓ | | | | ✓ |
| *Get Smashed* | | ✓ | | | ✓ | ✓ |
| *Greened Out* | | | | | ✓ | ✓ |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Work | NO LIABILITY | | | | LIMITED REMEDIES | |
|---|---|---|---|---|---|---|
| | Invalid (§ 103(b)) | Safe Harbor (§ 512(c)) | Not Asserted in Complaint (ECF 17) | No Accused Listings (ECF 33–33-2) | Attorney Fees Ineligible (§ 412) | Enhanced Statutory Damages Ineligible (§ 504(c)(2)) |
| *Griddy Cerveza* | ✓ | Partial | | | | ✓ |
| *Griddy Taco* | | | | | | ✓ |
| *Happy St. PatRizz Day* | N/A | N/A | ✓ | N/A | N/A | N/A |
| *Hope They Serve Beer in Hell* | | | | | ✓ | ✓ |
| *I Want Brew* | ✓ | Partial | | | ✓ | ✓ |
| *King of the Kill* | N/A | N/A | ✓ | N/A | N/A | N/A |
| *Leprechaun Griddy* | | | | | ✓ | ✓ |
| *Make Mullets Great Again* | ✓ | | | | ✓ | ✓ |
| *Master Bait* | | | | | | ✓ |
| *Meri-CAN Eagle* | ✓ | | | | | ✓ |
| *Merry Rizz-Mas* | | | | | | ✓ |
| *Morning Wood Lumber* | | | | | | ✓ |
| *Most Interesting Pumpkin* | | ✓ | | | ✓ | ✓ |
| *Papa Woody Plumbing* | ✓ | Partial | | | | ✓ |
| *Pat McCrotch Irish Pub* | ✓ | Partial | | | | ✓ |
| *Poor Day to Be a Pilsner* | ✓ | | | | ✓ | ✓ |
| *Protect the Charms* | ✓ | ✓ | | | ✓ | ✓ |
| *Real American - Uncle Sam* | ✓ | ✓ | | | | ✓ |
| *Santa Griddy* | | Partial | | | | ✓ |
| *Shut-Up Liver* | | ✓ | | ✓ | | ✓ |
| *Skeleton Griddy* | | | | | | ✓ |
| *The Grim Rizzer* | | | | | | ✓ |
| *Thicc Santa* | | | | | ✓ | ✓ |
| *Tits McGee Irish Pub* | | Partial | | | ✓ | ✓ |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Work | NO LIABILITY | | | | LIMITED REMEDIES | |
|---|---|---|---|---|---|---|
| | Invalid (§ 103(b)) | Safe Harbor (§ 512(c)) | Not Asserted in Complaint (ECF 17) | No Accused Listings (ECF 33–33-2) | Attorney Fees Ineligible (§ 412) | Enhanced Statutory Damages Ineligible (§ 504(c)(2)) |
| *Uncle Sam Griddy* | | Partial | | | | ✓ |
| *Uncle Sam's American Lager* | ✓ | ✓ | | | | ✓ |
| *USA Drinking Team Mascot* | | | | | | ✓ |
| *USA Jam - Uncle Sam/Merican Eagle* | | | | | | ✓ |
| *USA Jam - Washington/Lincoln* | | | | | | ✓ |
| *Where the Horrors At?* | | ✓ | | | | ✓ |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**APPENDIX B – Invalid Works**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Uncle Sam's American Lager* (VA 2-357-232; alleged year of completion: 2023)[1] | Samuel Adams Boston Lager:[2] |
| *I Want Brew* (VA 2-374-121; alleged year of completion: 2021)[3] | Uncle Sam with Beer:[4] |



---

[1] (Amazon's Statement of Proposed Undisputed Facts ("SPUF") ¶¶ 161–62.)

[2] (SPUF ¶ 161.) The "preexisting work on which" *Uncle Sam's American Lager* "is based is a classic bottle of Samuel Adams Boston Lager" and the design "call[s] upon the general structure and certain features of the original beer logo." (SPUF ¶ 160.) *Uncle Sam's American Lager* recasts, adapts, and centers on the Samuel Adams Boston Lager logo, including as described in the unrebutted de Baere Report. (SPUF ¶ 163.) Weekend Warrior admits that *Uncle Sam's American Lager* does not comment on Samuel Adams brand. (SPUF ¶ 164.) Boston Beer Company has authorized t-shirts with a derivative work of the Samuel Adams Boston Lager logo. (SPUF ¶ 165.)

[3] (SPUF ¶¶ 217, 219, 223 ("Registration based on the artwork deposited. Copyright does not protect names, titles, short phrases or slogans.").)

[4] (SPUF ¶ 217.) The image of Uncle Sam with beer was available on the internet at least as early as October 14, 2011. (SPUF ¶ 218.) Weekend Warrior admitted it "might have" used the image of Uncle Sam with beer as a reference image. (SPUF ¶ 220.) *I Want Brew* recasts, adapts, and centers on the image of Uncle Sam with beer. (SPUF ¶ 221.) Weekend Warrior admitted that *I Want Brew* does not comment on the image of Uncle Sam with beer. (SPUF ¶ 222.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Papa Woody Plumbing* (VA 2-375-959; alleged year of completion: 2023)[5]  | Pence Plumbing logo:[6]  |
| *Fantasy Football Legend* (VA 2-373-944; alleged year of completion: 2023)[7]  | *Conan the Barbarian* movie poster:[8]  |

---

[5] (SPUF ¶¶ 224, 226, 230 ("Registration based on deposited pictorial authorship describing, depicting, or embodying character(s)" and "Registration is based on the artwork. Copyright does not protect names, titles, short phrases or slogans.").)

[6] (SPUF ¶ 224.) The Pence Plumbing logo was available on Facebook at least as early as May 29, 2017. (SPUF ¶ 225.) Weekend Warrior admitted that Mr. Whelan "could have" used the Pence Plumbing logo as a basis for *Papa Woody Plumbing* design. (SPUF ¶ 227.) *Papa Woody Plumbing* recasts, adapts, and centers on the Pence Plumbing logo. (SPUF ¶ 228.) Weekend Warrior admitted that *Papa Woody's Plumbing* does not comment on the Pence Plumbing logo. (SPUF ¶ 229.)

[7] (SPUF ¶¶ 179–80, 186 ("Registration based on the artwork deposited. Copyright does not protect names, titles, short phrases or slogans.").)

[8] (SPUF ¶ 179.) Weekend Warrior used a "Conan the Barbarian poster as inspiration" to create *Fantasy Football Legend* and admitted that the design "mimic[s] the original Conan poster." (SPUF ¶ 178.) *Fantasy Football Legend* recasts, adapts, and centers on the *Conan the Barbarian* poster, including as described in the unrebutted de Baere Report. (SPUF ¶ 181.) Plaintiff admitted that *Fantasy Football Legend* does not comment on the *Conan the Barbarian* poster. (SPUF ¶ 182.) Authorized derivative works of the *Conan the Barbarian* poster appear on t-shirts. (SPUF ¶ 183.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Bad Day to Be a Cerveza* (VA 2-352-053 alleged year of completion: 2022)[9]  | Corona Extra bottle design:[10]  |
| *Griddy Cerveza* (VA 2-352-062; alleged year of completion: 2023)[11]  | Corona Extra bottle design:[12]  |

---

[9] (SPUF ¶¶ 126–27, 130 ("Registration based on deposited pictorial authorship describing, depicting, or embodying character(s)" and "Copyright does not protect names, titles, short phrases or slogans.").)

[10] (SPUF ¶ 126.) The "preexisting works on which" *Bad Day to Be a Cerveza* "is based are various Corona commercials and print advertisements," and the design "mimic[s] the general structure and certain features of the Corona bottle." (SPUF ¶ 125.) *Bad Day to Be a Cerveza* recasts, adapts, and centers on the Corona Extra bottle design, including as described in the unrebutted de Baere Report. (SPUF ¶ 128.) Plaintiff admitted that *Bad Day to Be a Cerveza* does not comment on Corona. (SPUF ¶ 129.) Authorized derivatives of the Corona Extra bottle design appear on t-shirts. (SPUF ¶ 137.)

[11] (SPUF ¶¶ 132–33, 136 ("Registration based on deposited pictorial authorship describing, depicting, or embodying character(s).").)

[12] (SPUF ¶ 132.) The "preexisting works on which" *Griddy Cerveza* "is based are various Corona commercials and print advertisements," and the design "mimic[s] the general structure and certain features of the Corona bottle." (SPUF ¶ 131.) *Griddy Cerveza* recasts, adapts, and centers on the Corona Extra bottle design, including as described in the unrebutted de Baere Report. (SPUF ¶ 134.) Plaintiff admitted that *Griddy Cerveza* does not comment on Corona. (SPUF ¶ 135.) Authorized derivatives of the Corona Extra bottle design appear on t-shirts. (SPUF ¶ 137.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Bad Day to Be a Beer - *America Edition** (VA 2-351-900; alleged year of completion: 2022)[13]<br> | Budweiser can design:[14]<br> |
| *Ameri-CAN Eagle* (VA 2-358-838; alleged year of completion: 2023)[15]<br> | Budweiser can design:[16]<br> |

---

[13] (SPUF ¶¶ 111–12, 118 ("Registration based on deposited pictorial authorship describing, depicting, or embodying character(s)" and "Copyright does not protect names, titles, short phrases or slogans.").)

[14] (SPUF ¶ 111.) The "preexisting works on which" *Bad Day to Be a Beer - *America Edition** "is based are various Budweiser commercials and print advertisements" and the design "mimic[s] the general structure and certain features of the Budweiser America can." (SPUF ¶ 110.) *Bad Day to Be a Beer - *America Edition** recasts, adapts, and centers on the Budweiser can design, including as described in the unrebutted de Baere Report. (SPUF ¶ 113.) Weekend Warrior admitted that *Bad Day to Be a Beer - *America Edition** does not comment on Budweiser. (SPUF ¶ 114.) In response to a cease-and-desist from Anheuser-Busch Company, Weekend Warrior agreed to modify *Bad Day to Be a Beer – *America Edition** to remove Budweiser trademarks and trade dress, and to remove the design and other derivations of Budweiser from its website. (SPUF ¶¶ 115–17.) Authorized derivative works of the Budweiser label appear on t-shirts. (SPUF ¶ 124.)

[15] (SPUF ¶¶ 120–21.)

[16] (SPUF ¶ 120.) The "preexisting work on which" *Ameri-CAN Eagle* "is based is the Budweiser America can" and the design "mimic[s] the general structure and certain features of the can." (SPUF ¶ 119.) *Ameri-CAN Eagle* recasts, adapts, and centers on the Budweiser can design, including as described in the unrebutted de Baere Report. (SPUF ¶ 122.) Weekend Warrior

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Meri-CAN Eagle* (VA 2-358-949; alleged year of completion: 2023)[17] | Pabst Blue Ribbon can design:[18] |
| *Ameri-CAN V2* (VA 2-360-244; alleged year of completion: 2023)[19] | Pabst Blue Ribbon can design:[20] |



admitted that *Ameri-CAN Eagle* does not comment on Budweiser. (SPUF ¶ 123.) Authorized derivative works of the Budweiser label appear on t-shirts. (SPUF ¶ 124.)

[17] (SPUF ¶¶ 150–51.)

[18] (SPUF ¶ 150.) The "preexisting work on which" *Meri-CAN Eagle* "is based is the PBR [Pabst Blue Ribbon] can" and it "mimic[s] the general structure and certain features of the can." (SPUF ¶ 149.) *Meri-CAN Eagle* recasts, adapts, and centers on the Pabst Blue Ribbon can design, including as described in the unrebutted de Baere Report. (SPUF ¶ 152.) Plaintiff admitted that *Meri-CAN Eagle* does not comment on Pabst Blue Ribbon. (SPUF ¶ 153.) Authorized derivative works of the Pabst Blue Ribbon can and the can's design appear on t-shirts and sweatshirts. (SPUF ¶ 159.)

[19] (SPUF ¶¶ 155–56.)

[20] (SPUF ¶ 155.) The "preexisting work on which" *Ameri-CAN V2* "is based is the PBR can" and it "mimic[s] the general structure and certain features of the can." (SPUF ¶ 154.) *Ameri-CAN V2* recasts, adapts, and centers on the Pabst Blue Ribbon can design, including as described in the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Poor Day to be a Pilsner* (VA 2-373-977; alleged year of completion: 2022)[21]  | Miller Lite beer can design:[22]  |
| *Real American – Uncle Sam* (VA 2-358-836; alleged year of completion: 2023)[23]  | Image of Hulk Hogan ripping shirt:[24]  |

unrebutted de Baere Report. (SPUF ¶ 157.) Plaintiff admitted that *Ameri-CAN V2* does not comment on Pabst Blue Ribbon. (SPUF ¶ 158.) Authorized derivative works of the Pabst Blue Ribbon can and the can's design appear on t-shirts and sweatshirts. (SPUF ¶ 159.)

[21] (SPUF ¶¶ 139–40.)

[22] (SPUF ¶ 139.) The "preexisting work on which" *Poor Day to Be a Pilsner* "is based are various Miller Light [sic] commercials and print advertisements" and the design "mimic[s] the general structure and certain features of the Miller Light [sic] can." (SPUF ¶ 138.) *Poor Day to Be a Pilsner* recasts, adapts, and centers on the Miller Lite can design, including as described in the unrebutted de Baere Report. (SPUF ¶ 141.) Plaintiff admitted that *Poor Day to Be a Pilsner* does not comment on Miller Lite. (SPUF ¶ 142.) Authorized derivative works of the Miller Lite design appear on t-shirts. (SPUF ¶ 143.)

[23] (SPUF ¶¶ 199–200.)

[24] (SPUF ¶ 199.) The "preexisting work on which" *Real American – Uncle Sam* is based "are various images [Mr. Whelan] found on Google of Hulk Hogan ripping his shirt off, as well as Google Images of Hulk Hogan posters and action figures using the phrase 'Real American' in connection with Hulk Hogan" and the design "mimic[s] the general structure of the original Hulk Hogan imagery." (SPUF ¶ 198.) *Real American - Uncle Sam* recasts, adapts, and centers on the

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Ameri-CAW* (VA 2-360-415; alleged year of completion: 2023)[25]  | Freedom t-shirt:[26]  |
| *Bad Day to be a Beer – Christmas Edition* (VA 2-373-658; alleged year of completion: 2022)[27]  | Dr. Seuss' *How the Grinch Stole Christmas!*:[28]  |

---

image of Hulk Hogan, including as described in the unrebutted de Baere Report. (SPUF ¶ 201.) Weekend Warrior admitted that *Real American - Uncle Sam* does not comment on Hulk Hogan. (SPUF ¶ 202.) Authorized derivative works of image of Hulk Hogan ripping his shirt off appear on t-shirts and other apparel. (SPUF ¶ 203.)

[25] (SPUF ¶¶ 237, 239.)

[26] (SPUF ¶ 237.) The Freedom t-shirt was available on amazon.com at least as early as June 22, 2022. (SPUF ¶ 238.) *Ameri-Caw* recasts, adapts, and centers on the Freedom t-shirt. (SPUF ¶ 240.) Weekend Warrior has not identified any commentary that *Ameri-Caw* makes about the Freedom t-shirt. (SPUF ¶ 241.)

[27] (SPUF ¶¶ 145–46.)

[28] (SPUF ¶ 145.) "[T]he middle portion of the face of various representations of the Grinch … in preexisting works" is "an element" of *Bad Day to Be a Beer Christmas Edition*. (SPUF ¶ 144.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Can't Get Hungover* (VA 2-373-946; alleged year of completion: 2022)[29]  | Retro Beer Poster:[30]  |
| *Do You Feel Lucky* (VA 2-373-368; alleged year of completion: 2023)[31]  | *Dirty Harry* images:[32]  |

---

*Bad Day to Be a Beer Christmas Edition* recasts, adapts, and centers on the Grinch, including as described in the unrebutted de Baere Report. (SPUF ¶ 147.) Weekend Warrior admitted that *Bad Day to Be a Beer Christmas Edition* does not comment on the Grinch. (SPUF ¶ 148.)

[29] (SPUF ¶¶ 210, 212, 216 ("Registration based on the artwork depicted. Registration does not protect names, titles, short phrases or slogans.").)

[30] (SPUF ¶ 210.) The retro beer poster was available on the internet at least as early as December 7, 2019. (SPUF ¶ 211.) Mr. Whelan researched reference images of retro beer advertisements when creating *Can't Get Hungover*. (SPUF ¶ 213.) *Can't Get Hungover* is based on, recasts, adapts, and centers on the retro beer poster. (SPUF ¶ 214.) Weekend Warrior has not identified any commentary *Can't Get Hungover* makes about the retro beer poster. (SPUF ¶ 215.)

[31] (SPUF ¶¶ 194–95.)

[32] (SPUF ¶ 194.) Mr. Whelan drew inspiration from "a variety of images of Dirty Harry and revolvers" to create *Do You Feel Lucky* and the design "resemble[s] Dirty Harry and his

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Pat McCrotch Irish Pub* (VA 2-352-055 alleged year of completion: 2023)[33] | Third-party Pat McCrotch Irish Pub shirt:[34] |
| *Enjoy Beer* (VA 2-374-114; alleged year of completion: 2021)[35] | Coca-Cola Santa:[36] |



---

revolver." (SPUF ¶ 193.) *Do You Feel Lucky* recasts, adapts, and centers on images of Client Eastwood in *Dirty Harry* movies. (SPUF ¶ 196.) Weekend Warrior admitted that *Do You Feel Lucky* does not comment on the *Dirty Harry* movies. (SPUF ¶ 197.)

[33] (SPUF ¶¶ 231, 233, 236 ("Registration based on deposited pictorial authorship describing, depicting, or embodying character(s)" and "Copyright does not protect names, titles, short phrases or slogans.").)

[34] (SPUF ¶ 231.) The third-party Pat McCrotch Irish Pub t-shirt was available on the internet at least as early as December 10, 2022. (SPUF ¶ 232.) *Pat McCrotch Irish Pub* recasts, adapts, and centers on the Freedom t-shirt. (SPUF ¶ 234.) Weekend Warrior has not identified any commentary that *Pat McCrotch Irish Pub* makes about the third-party Pat McCrotch Irish Pub t-shirt. (SPUF ¶ 235.)

[35] (SPUF ¶¶ 167–68, 171 ("Registration based on the artwork depicted. Registration does not protect names, titles, short phrases or slogans.").)

[36] (SPUF ¶ 167.) "Mr. Whelan transformed a full-color image he found of Coca-Cola's still ad campaign that shows a smiling Santa holding a Coke" to create *Enjoy Beer* and the design "call[s] to mind Coke ads featuring Santa selling Coke." (SPUF ¶ 166.) *Enjoy Beer* recasts,

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Enjoy Beer – Ugly Sweater* (VA 2-378-403; alleged year of completion: 2022)[37]<br> | Preexisting Coca-Cola Santa:[38]<br> |

---

adapts, and centers on the Coca-Cola Santa. (SPUF ¶ 169.) Weekend Warrior admitted that *Enjoy Beer* does not comment on the Coca-Cola Santa. (SPUF ¶ 170.) Authorized derivative works of Coca-Cola branded works appear on t-shirts. (SPUF ¶ 177.)

[37] (SPUF ¶¶ 173–74.)

[38] (SPUF ¶ 173.) "Mr. Whelan transformed a full-color image he found of Coca-Cola's still ad campaign that shows a smiling Santa holding a Coke" to create *Enjoy Beer-Ugly Sweater* and the design "call[s] to mind Coke ads featuring Santa selling Coke." (SPUF ¶ 172.) *Enjoy Beer-Ugly Sweater* recasts, adapts, and centers on the Coca-Cola Santa. (SPUF ¶ 175.) Weekend Warrior admitted that *Enjoy Beer-Ugly Sweater* does not comment on the Coca-Cola Santa. (SPUF ¶ 176.) Authorized derivative works of Coca-Cola branding appear on t-shirts. (SPUF ¶ 177.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Make Mullets Great Again* (VA 2-374-116; alleged year of completion: 2020)[39] | *Eastbound and Down* DVD box:[40] |



*Eastbound and Down* promotion:[41]

---

[39] (SPUF ¶¶ 205–06, 209 (Registration certificate: "Registration based on the artwork deposited. Copyright does not protect names, titles, short phrases or slogans.").)

[40] (SPUF ¶ 205.) To create *Make Mullets Great Again*, Mr. Whelan "found a picture of Kenny Powers" from the show *Eastbound and Down* "then ran a filter over the face so he was left with just a silhouette of a guy with a mullet. He then halved that image, flipped it, and added a handlebar mustache." (SPUF ¶ 204.) *Make Mullets Great Again* recasts, adapts, and centers on the Kenny Powers mullet, including as described in the unrebutted de Baere Report. (SPUF ¶ 207.) Weekend Warrior did not identify any commentary *Make Mullets Great Again* makes about *Eastbound and Down*. (SPUF ¶ 208.)

[41] (SPUF ¶ 205.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

| Weekend Warrior Copyright | Preexisting Work |
|---|---|
| *Protect the Charms* (VA 2-373-955; alleged year of completion: 2023)[42] | University of Notre Dame mascot:[43] Lucky Charms Cereal box:[44] |



---

[42] (SPUF ¶¶ 188–89.)

[43] (SPUF ¶ 188.) *Protect the Charms* "mimic[s] the original [Notre Dame] Fighting Irish [mascot], Lucky, and Lucky Charms" and "mimic[s] the general structure and certain features of Fighting Irish, Lucky, and his charms." (SPUF ¶ 187.) *Protect the Charms* recasts, adapts, and centers on the widely familiar Notre Dame mascot and Lucky Charms cereal designs, including as described in the unrebutted de Baere expert report. (SPUF ¶ 190.) Weekend Warrior admitted that *Protect the Charms* does not comment on the Notre Dame mascot or the Lucky Charms cereal designs. (SPUF ¶ 191.) Authorized derivative works of the Notre Dame mascot appear on t-shirts and sweatshirts. (SPUF ¶ 192.)

[44] (SPUF ¶ 188.)

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

**APPENDIX C – Unsold Listings**

| No. (as listed on Doc. 33–33-2) | ASIN | Asserted Copyright (as listed on Doc. 33–33-2) |
|---|---|---|
| 5 | B09VCFWBN8 | Bad Day to be a Beer |
| 141 | B0C8946STP | Uncle Sam's American Lager |
| 142 | B0C8916SC2 | Uncle Sam's American Lager |
| 143 | B0C8912F2Z | Uncle Sam's American Lager |
| 144 | B0CM49T1VJ | Real American - Uncle Sam |
| 145 | B0CM46LG2Y | Real American - Uncle Sam |
| 146 | B0D9WYGH6W | Real American - Uncle Sam |
| 147 | B0BXJQP3KQ | Bad Day to be a Beer - Christmas Edition |
| 148 | B0BXJQD387 | Bad Day to be a Beer - Christmas Edition |
| 149 | B0BXS9CRFF | Do you feel lucky |
| 150 | B0BXS8W5BB | Do you feel lucky |
| 151 | B0CJBZ6QRF | FrankenSTEIN |
| 152 | B0CJBYJ14P | FrankenSTEIN |
| 153 | B0CJBX1XX4 | FrankenSTEIN |
| 154 | B0CJBWG5QJ | FrankenSTEIN |
| 155 | B0CJBW9R1W | FrankenSTEIN |
| 156 | B0CJBW8PHY | FrankenSTEIN |
| 157 | B0CJBVWXGM | FrankenSTEIN |
| 158 | B0CJBVNMD5 | FrankenSTEIN |
| 159 | B0CJBVNHHX | FrankenSTEIN |
| 160 | B0CJBTR72L | FrankenSTEIN |
| 161 | B0CJBTLTBM | FrankenSTEIN |
| 162 | B0CJBTBCF4 | FrankenSTEIN |
| 163 | B0CJBT7D72 | FrankenSTEIN |
| 164 | B0CJBT1ZDF | FrankenSTEIN |
| 165 | B0CJBSWRCV | FrankenSTEIN |
| 166 | B0CJBS82SS | FrankenSTEIN |
| 167 | B0CJBR6MF8 | FrankenSTEIN |
| 168 | B0CJBQWM3J | FrankenSTEIN |
| 169 | B0CJBNNGZR | FrankenSTEIN |
| 170 | B0CJCFCNBL | FrankenSTEIN |
| 171 | B0CHW1M4MY | Get Smashed |
| 172 | B0BH2PCY8T | Get Smashed |
| 173 | B0CJBS55NJ | Get Smashed |
| 174 | B0CJBQQH6T | Get Smashed |
| 175 | B0CHW8P245 | Most Interesting Pumpkin |
| 176 | B0CJCFMLBW | Most Interesting Pumpkin |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| No. (as listed on Doc. 33–33-2) | ASIN | Asserted Copyright (as listed on Doc. 33–33-2) |
|---|---|---|
| 177 | B0BXS8K9WR | Protect the Charms |
| 178 | B0BXS7FQYY | Protect the Charms |
| 179 | B0BXS7CDVH | Protect the Charms |
| 180 | B0BW4PTWQX | Protect the Charms |
| 181 | B0CTCVV3TQ | Protect the Charms |
| 182 | B0CTCYMBQZ | Protect the Charms |
| 183 | B0CKG8HJG5 | Where the Horrors at? |
| 184 | B0CKG48SX4 | Where the Horrors at? |
| 185 | B0CKDWP7H5 | Where the Horrors at? |
| 186 | B0CKDTDF58 | Where the Horrors at? |
| 187 | B0CKDQD8K8 | Where the Horrors at? |
| 188 | B0CKDPC1YD | Where the Horrors at? |
| 189 | B0CKDMSYPD | Where the Horrors at? |
| 190 | B0CKDMDBSP | Where the Horrors at? |
| 191 | B0CKDM9D8F | Where the Horrors at? |
| 192 | B0CKDM83DC | Where the Horrors at? |
| 215 | B0C59QDSJ | Bad Day to be a Beer - *America Edition* |
| 394 | B0C8TM9LZ8 | Bad Day to be a Beer - *America Edition* |
| 505 | B0F7LC7D1M | Bad Day to be a Beer |
| 506 | B0F7LBKNK4 | Bad Day to be a Beer |
| 507 | B0F7L94BD5 | Bad Day to be a Beer |
| 508 | B0F7LC6QX9 | Bad Day to be a Beer |
| 509 | B0F7LCVBR9 | Bad Day to be a Beer |
| 510 | B0F7LBHHKK | Bad Day to be a Beer |
| 511 | B0F7LFNBJ1 | Bad Day to be a Beer |
| 512 | B0CM3Y78SV | Papa Woody Plumbing |
| 513 | B0CP9TCTB3 | I Want Brew |
| 514 | B0CP9XY5C5 | I Want Brew |
| 515 | B0C2JYG23D | Bad Day to be a Cerveza |
| 516 | B0C22XF2D | Griddy Cerveza |
| 517 | B0CQ53LFKQ | Santa Griddy |
| 518 | B0CXS3HF37 | Pat McCrotch Irish Pub |
| 519 | B0CXRKJV33 | Pat McCrotch Irish Pub |
| 520 | B0CXRGBZ8B | Pat McCrotch Irish Pub |
| 521 | B0CXR8ZX89 | Pat McCrotch Irish Pub |
| 522 | B0CXS4DPQP | Pat McCrotch Irish Pub |
| 523 | B0CXRWGSNF | Pat McCrotch Irish Pub |
| 524 | B0CXRX16VX | Pat McCrotch Irish Pub |
| 525 | B0CXRL3W7F | Pat McCrotch Irish Pub |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

| No. (as listed on Doc. 33–33-2) | ASIN | Asserted Copyright (as listed on Doc. 33–33-2) |
|---|---|---|
| 526 | B0CXRXFLLY | Pat McCrotch Irish Pub |
| 527 | B0CXRW52WQ | Pat McCrotch Irish Pub |
| 528 | B0CXRR2DFF | Pat McCrotch Irish Pub |
| 529 | B0XCS326XH | Pat McCrotch Irish Pub |
| 530 | B0CXFQHFP5 | Pat McCrotch Irish Pub |
| 531 | B0CXRN4DJV | Pat McCrotch Irish Pub |
| 532 | B0CXRW4F3T | Pat McCrotch Irish Pub |
| 533 | B0CXRSX4WX | Pat McCrotch Irish Pub |
| 534 | B0CXRX1TYR | Pat McCrotch Irish Pub |
| 535 | B0CXRW3NS7 | Pat McCrotch Irish Pub |
| 536 | B0CXRMVFHY | Pat McCrotch Irish Pub |
| 537 | B0CXR8WD95 | Pat McCrotch Irish Pub |
| 538 | B0CXRLRNP4 | Pat McCrotch Irish Pub |
| 539 | B0CXRRT6JG | Pat McCrotch Irish Pub |
| 540 | B0CXRPV9SY | Pat McCrotch Irish Pub |
| 541 | B0CXRTB5M1 | Pat McCrotch Irish Pub |
| 542 | B0CY9K4NW5 | Tits McGee Irish Pub |
| 543 | B0CY9L87P3 | Tits McGee Irish Pub |
| 544 | B0CY9M2HMV | Tits McGee Irish Pub |
| 545 | B0CY9LDVFC | Tits McGee Irish Pub |
| 547 | B0CY214KZ2 | Tits McGee Irish Pub |
| 548 | B0CY2BMBCQ | Tits McGee Irish Pub |
| 549 | B0CY2BF3JV | Tits McGee Irish Pub |
| 550 | B0CY29SQQ4 | Tits McGee Irish Pub |
| 551 | B09ZCQB991 | Bad Day to be a Beer |
| 552 | B0DSBYTWDM | Bad Day to be a Beer |
| 553 | B0DP1Z36Q3 | Bad Day to be a Beer |
| 554 | B0DNM31VTK | Bad Day to be a Beer - *America Edition* |
| 555 | B0DNM3HQH2 | Bad Day to be a Beer - *America Edition* |
| 556 | B0DNM48ZLW | Bad Day to be a Beer - *America Edition* |
| 557 | B0D7NP79W3 | Uncle Sam Griddy |

**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 24, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel or record registered with the Court's CM/ECF system as follows:

| | |
|---|---|
| Gary F. Franke | Keith J. Wesley |
| gff@garyfrankelaw.com | kwesley@ellisgeorge.com |
| Gary F. Franke Co., LPA | Matthew L. Venezia |
| 201 E. Fifth Street, Suite 910 | mvenezia@ellisgeorge.com |
| Cincinnati, OH 45202 | George B. A. Laiolo |
| | glaiolo@ellisgeorge.com |
| | Elizabeth Carpenter |
| | ecarpenter@ellisgeorge.com |
| | Amanda Mannshahia |
| | amannshahia@ellisgeorge.com |
| | Diane Torosyan |
| | dtorosyan@ellisgeorge.com |
| | Ellis George LLP |
| | 2121 Avenue of the Stars, 30th Floor |
| | Los Angeles, CA 90067 |

*/s/ Klaus H. Hamm*
Klaus H. Hamm