UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| WEEKEND WARRIOR CLOTHING, LLC, | Case No.: 1:23-CV-00752 |
| *Plaintiff*, | Judge: Douglas R. Cole |
| | Magistrate Judge Stephanie K. Bowman |
| v. | |
| | **ORAL ARGUMENT REQUESTED** |
| AMAZON.COM SERVICES, LLC; AMAZON.COM, INC., | |
| *Defendants*. | |

## PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................6

II.   SUMMARY OF ARGUMENT ..........................................................................10

III.  ARGUMENT .......................................................................................................12

    A.  WW did not waive summary judgment. ..............................................12

    B.  WW's copyrights are valid. ................................................................14

        1.  Dan Whelan did not lazily copy any preexisting works; he always added sufficient creativity and style. ......................................15

        2.  Caroline de Baere's opinions are unhelpful and flawed. .........................17

            a.  Ms. de Baere's filtration analysis is unhelpful because it is unnecessary under this Circuit's stringent standard.....................17

            b.  Inexperienced, Ms. de Baere filtered improperly. .........................19

        3.  WW made no knowing misrepresentations to the Copyright Office that would have caused the Office to refuse registration. .........................25

            a.  WW's decision not to exclude other material from its registrations is not a knowing inaccuracy that would have caused refusal to register. ...............................................26

            b.  The incorrect publication dates resulted from a reasonable mistake, WW corrected them promptly upon discovery, and the Copyright Office accepted corrected dates without issue. ....................................................................................29

    C.  Amazon directly infringed WW's copyrights by copying their protectable expression. .......................................................................30

    D.  Alternatively, Amazon indirectly infringed WW's copyrights............................32

    E.  Amazon's DMCA defense fails. .........................................................32

    F.  Amazon is not entitled to summary judgment on the five copyrights it specifically addresses. ......................................................................32

    G.  The evidence establishes Amazon's willful infringement as a matter of law. ....................................................................................33

IV.   CONCLUSION....................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Am. Fam. Mut. Ins. Co. v. Hollander*,
  705 F.3d 339 (8th Cir. 2013) .................................................................12

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021) ...............................................................7, 15

*Art of Design, Inc. v. Pontoon Boat, LLC*,
  2019 WL 3749990 (N.D. Ind. Aug. 8, 2019)...........................................29

*Atari Interactive, Inc. v. Redbubble, Inc.*,
  515 F. Supp. 3d 1089 (N.D. Cal.) ....................................................11, 32

*ATC Distrib. Grp. v. Whatever It Takes Transmissions & Parts, Inc.*,
  402 F.3d 700 (6th Cir. 2005) .................................................................21

*Average Joe's Ent. Grp., LLC v. SoundCloud LTD*,
  2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018) .........................................7

*Broad. Music, Inc. v. Meadowlake, Ltd.*,
  754 F.3d 353 (6th Cir. 2014) .................................................................11

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)................................................................................7

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*,
  606 F.3d 612 (9th Cir. 2010), *abrogated on other grounds*, *Fourth Estate Pub.*
  *Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019)...................7, 28

*Costello v. Loew's Inc.*,
  159 F. Supp. 782 (D.D.C. 1958) ............................................................18

*Curcio Webb LLC v. National Ben. Programs Agency, Inc.*,
  2006 WL 47506 (S.D. Ohio Jan. 9, 2006) ...............................................14

*Daedalus Blue, LLC v. Microstrategy Inc.*,
  2023 WL 6221774 (E.D. Va. Sept. 25, 2023).........................................17

*Design Basics, L.L.C. v. Deshano Cos.*,
  2012 WL 4340784 (E.D. Mich. Sept. 21, 2012)......................................25

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).........................................................................7, 10

*Flowers, Inc. v. Springhill Floral & Gift Supply Co.*,
2025 WL 3003931 (N.D. Ohio Oct. 27, 2025) ................................................................6, 11

*Gates Rubber Co. v. Bando Chem. Indus., Ltd.*,
9 F.3d 823 (10th Cir. 1993) ...............................................................................18

*Hayden v. 2K Games, Inc.*,
629 F. Supp. 3d 736 (N.D. Ohio 2022).............................................................21, 31

*Heritage Homes, LLC v. Benjamin Custom Homes, LLC*,
2020 WL 12441962 (D.N.D. May 27, 2020)....................................................29

*Kindergartners Count, Inc. v. Demoulin*,
249 F. Supp. 2d 1214 (D. Kan. 2003) .................................................................18

*Kohus v. Mariol*,
328 F.3d 848 (6th Cir. 2003) ...............................................................8, 10, 18

*Lieb v. Korangy Publ'g, Inc.*,
2022 WL 1124850 (E.D.N.Y. Apr. 14, 2022) ........................................................29

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
922 F.3d 946 (9th Cir. 2019) ...............................................................................30

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*,
361 F.2d 312 (6th Cir. 2004) ...............................................................................18

*Navarro v. Procter & Gamble Co.*,
515 F. Supp. 3d 718 (2021) ...............................................................................13

*NCR Corp. v. Korala Assocs., Ltd.*,
512 F.3d 807 (6th Cir. 2008) ...............................................................................11

*Nichols v. Universal Pics. Corp.*,
45 F.2d 119 (1930) (Hand, J.).............................................................................18

*Philpot v. L.M. Comms'ns II of S.C., Inc.*,
343 F. Supp. 3d 694 (E.D. Ky. 2018) .................................................................36

*Rare Blue Music, Inc. v. Guttadauro*,
616 F. Supp. 1528 (D. Mass. 1985) .....................................................................34

*Ronald Mayotte & Assocs. v. MGC Bldg. Co.*,
885 F. Supp. 148 (E.D. Mich. 1994)....................................................................28

*Rottlund Co., Inc. v. Pinnacle Corp.*,
2004 WL 1879983 (D. Minn. Aug. 20, 2004) ................................................10, 25

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...........................................................................31

*Steinberg v. Columbia Pics. Industries, Inc.*,
    663 F. Supp. 706 (S.D.N.Y. 1987) .....................................................................13

*Stromback v. New Line Cinema*,
    384 F.3d 282 (6th Cir. 2004) .............................................................10, 17, 18, 19

*Swallow Turn Music v. Wilson*,
    831 F. Supp. 575 (E.D. Tex. 1993) ................................................................33, 34

*The Bandana Co. v. TJX Cos., Inc.*,
    2005 WL 1201176 (W.D. Ky. May 19, 2005)................................13, 19, 30, 31

*U.S. v. Cunningham*,
    679 F.3d 355 (6th Cir. 2012) ..............................................................................25

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
    595 U.S. 178 (2022)..........................................................................10, 25, 28

*United States v. Star Graphics, Inc.*,
    2007 WL 9724924 (N.D. Ga. Jan. 22, 2007) ......................................................19

*Wickham v. Knoxville Int'l Energy Exposition, Inc.*,
    739 F.2d 1094 (6th Cir. 1984) ............................................................................10

*Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*,
    18 F.3d 502 (7th Cir. 1994) ................................................................................34

*Willis v. Barry Graham Oil Serv. LLC*,
    636 F. Supp. 3d 684 (W.D. La. Oct. 20, 2022)...................................................17

## STATUTES

17 U.S.C. § 411(b).................................................................................................25

17 U.S.C. § 411(b)(1)(B) .......................................................................................15

17 U.S.C. § 512(i)(1)(A).........................................................................................11

DMCA.........................................................................................................11, 32, 35

Nevertheless, the Copyright Act ............................................................................25

## RULES

Rule 15(b)(2)...........................................................................................................12

## I.   **INTRODUCTION**

When you copy every element of someone else's copyrighted art, how do you avoid liability for copyright infringement? And when you systematically ignore the artist's notices of infringement, and continue to display, manufacture, and distribute his art after he sues, how do you paint yourself innocent? If you're Amazon, you try three primary strategies.

**First, you blame your users**. You claim that you can't be held responsible for blatantly-infringing designs that users you vet upload to your website, because you supposedly don't take any action to support that infringement. The problem with your argument is that the evidence contradicts it; you're *crucial* to the infringement. You (1) select and monitor your users, and control the amount of designs they can upload to your website; (2) ███████████████████████ ██████████████████████████████████████████████████████████████ ███████████████████████████████████████████████; (3) choose and provide the goods—t-shirts, tote bags, etc.—onto which the designs can be affixed; (4) create and display on your website pictures of the designs affixed to those goods you choose; (5) manufacture, ship, and handle all customer service and returns for any sales of the infringing goods purchased by your customers (who buy the products by clicking on and examining the pictures you create and publish); (6) control the price and any royalties for those sales; (7) accept money to advertise designs on your website, and ██████████████████████; (8) publish a list of "best-selling" designs; and (9) admit to being the "seller of record" while calling your users "████████."

You hope that the Court will believe any of this conduct—let alone all of it together—couldn't possibly be "reasonably described as the direct cause of infringement." *Flowers, Inc. v. Springhill Floral & Gift Supply Co.*, 2025 WL 3003931, at *4 (N.D. Ohio Oct. 27, 2025) (citing

*Average Joe's Ent. Grp., LLC v. SoundCloud LTD*, 2018 WL 6582829, at *2 (M.D. Tenn. Oct. 17, 2018)). You cross your fingers.

Just in case the first strategy doesn't work, you fall back on the **second**: **Argue the art you copied shouldn't receive any kind of legal protection**; that anyone in the world should be able to copy every feature of it freely. You claim this is the case by arguing the artist you ripped off—Dan Whelan—ripped off others. You look for pictures on the internet that cover similar subject matter as Dan's. You subpoena companies whose works Dan's art pokes fun at or otherwise transforms or recontextualizes, hoping those companies would sue Dan's company. You claim that if Dan drew any kind of inspiration for his designs from any picture on the web, TV show, movie, or advertisement, when registering the design with the Copyright Office, he was required to explicitly limit his copyright to state the obvious: "I don't own leprechauns." "I don't own Hulk Hogan." "I didn't create *Dirty Harry*."

But you still have a major problem. Whatever you find, you know that Dan can protect *his unique, creative expression* of broad, unprotectable ideas and subjects, and that Dan can even take protectable aspects of other works to use as "raw material" (*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 38 (2d Cir. 2021)) so long as he "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). And you know that Dan can earn protection so long as his designs "possess at least some minimal degree of creativity . . . no matter how crude, humble, or obvious." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345–46 (1991). Your solution to the problem is to characterize Dan's expression so broadly that it seems the same as the *ideas* he expresses. You hire a shoe designer to help.

Even though she's never testified in a copyright case before, she dons Your Honor's robe

to perform the Court's role of deciding what is and isn't protectable. She learns from you that a key step in the analysis is to "identify and eliminate those elements that are unoriginal [or not copyrightable] and therefore unprotected." ECF No. 57-4 ("de Baere Rep.") at PageID 4292 (citing *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003) ("*Kohus*")). But unlike Your Honor, she doesn't know how to do it *right*. She's never done it before. She's never read an example of how a different, qualified expert did it. She doesn't know how to distinguish the protectable expression of an unprotectable idea from the idea itself.

Inexperienced, she errs. She ends up "eliminating" as "unoriginal" Dan's original, protectable expression, leaving behind a hypothetical mystery image she doesn't save, which the Court and counsel can only guess what it looks like. To boot, she doesn't eliminate things she should, like colors and generic layouts. Her rogue elimination prevents her from ever assessing Dan's designs as whole designs; *i.e.*, **what they actually look like**.

Harnessing your shoe designer's inexperience and botched method, you argue that a reasonable jury could believe you didn't copy anything Dan drew that you deem worth protecting (essentially nothing). For this to work, the Court has to agree that as a matter of law, the picture in the middle (Dan's WW Design) is completely unoriginal because it ripped off the pictures on the left (the pictures you found). Only then can you escape liability for the picture on the right, which you displayed, and for which you performed any number of the nine actions enumerated above.

| **Pictures** [1] **Amazon Found** (ECF No. 86-1 ¶ 66, ¶ 28 resp.) | **WW Design** (ECF No. 17 at PageID 184–85, 232–233 resp.) | **Accused ASIN** (ECF No. 33 at PageID 1497, 1513, resp.) |
|---|---|---|

---

[1] A table comparing Amazon's pictures, WW's Designs, and accused ASINs for other at-issue designs is filed as Appendix A to this Reply.



Your **final strategy: Paint yourself as at most an inadvertent infringer**. Claim that declaring Tim Whelan (Dan's brother and WW co-founder who submitted WW's infringement notices) ████████████████████████████████████ was totally reasonable, because ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████. Obfuscate

two crucial facts: (A) While you were ████████████████████████████

████████████████████████████████████████████████ (B) even after

Tim's company sues, continue to create derivative works of ██████████████ even though

you could prevent all your copies from ever reaching the public's eyes.

The Court should use its own, experienced eyes to see through Amazon's ploy. Amazon

has spilled barrels of ink on summary judgment, but that ink cannot blacken the truth: "To succeed

in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted

creation, and that the defendant copied it." *Kohus* at 853 (citing *Wickham v. Knoxville Int'l Energy

Exposition, Inc.*, 739 F.2d 1094, 1097 (6th Cir. 1984)). WW owns its designs; Amazon copied

them completely despite valid notices and a lawsuit. WW is entitled to judgment as a matter of

law for Amazon's willful infringement.

## II.    **SUMMARY OF ARGUMENT**

Pursuant to Local 7.2(a)(3), WW provides the following summary of argument.

WW did not waive summary judgment because it set out the elements of its claims and the

evidence supporting those claims.

WW's copyrights are valid because they were duly registered and contain original, creative

expression under *Feist* and its progeny. Additionally, the Court should not rely on the testimony

of Caroline de Baere because it is unhelpful and applies a flawed filtration analysis under

*Stromback v. New Line Cinema*, 384 F.3d 282, 294 (6th Cir. 2004) and *Rottlund Co., Inc. v.

Pinnacle Corp.*, 2004 WL 1879983, at *26–27 (D. Minn. Aug. 20, 2004) (disregarding expert's

opinion on originality as unhelpful because the expert "relies on his own standard for originality").

Last on validity, WW made no knowing, material representations to the Copyright Office under

*Unicolors* because any errors in the registration were the result of inadvertence and in any event

would not have caused the Copyright Office to refuse registration.

Amazon is liable for direct copyright infringement. The Court need not apply the volitional-conduct doctrine because no statute or binding authority requires it. Even if the Court applies the volitional-conduct doctrine, Amazon's conduct here satisfies it because it remains strictly liable for copyright infringement it commits. *See*, *e.g.*, *Flowers, Inc. v. Springhill Floral & Gift Supply Co.*, 2025 WL 3003931, at *4 (N.D. Ohio Oct. 27, 2025) ("The volitional conduct requirement does not change that copyright infringement is a strict liability claim.") Courts have applied the volitional-conduct doctrine to print-on-demand companies whose conduct is less culpable than Amazon's here. *See*, *e.g.*, *Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 1111–12 (N.D. Cal.).

Alternatively, Amazon could be liable for contributory infringement, which requires (1) direct copyright infringement; (2) knowledge by the defendant (or reason to know) that the third-party was directly infringing; and (3) the defendant's material contribution to the infringement." *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008). All elements are present here because Amazon knew or had reason to know of direct copyright infringement against WW committed by Amazon content creators through numerous valid, but rejected notices.

Alternatively, Amazon could be liable for vicarious infringement. A defendant is liable for vicarious infringement if the defendant "profit[ed] from [the] infringement while declining to exercise a right to stop or limit it." *Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 354 (6th Cir. 2014). Amazon controls who can post on Merch, and what they can post, and, despite numerous valid notices of claimed infringement by WW, declined to stop or limit it, reaping a profit.

Amazon is not entitled to DMCA immunity in this action because it has not adopted and reasonably implemented a policy against repeat infringers. 17 U.S.C. § 512(i)(1)(A). Even if the

Court determines otherwise, Amazon cannot establish as a matter of law entitlement to safe harbor under Section 512(c) because the images on Merch are not stored at the direction of the user, Amazon had red-flag knowledge of infringement of the Unsold Listings and did not expeditiously remove them, and amazon had the right and ability to control the infringement on Merch and benefitted from the infringement of the Unsold Listings.

Amazon had fair notice of WW's infringement claims against King of the Kill and St. PatRizz Day, and Rule 15(b)(2) permits and encourages their inclusion in this action. Amazon has had actual notice of the claims since the filing of the First Amended Complaint, and any 12 prejudice it claims is of its own making. *Am. Fam. Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013). Amazon also had fair notice of WW's claims as to Shut Up Liver, and WW discusses clear infringement of that work herein of which Amazon has been on notice since early in the case. Down Goes Liver was never pleaded in this case—though Amazon did pilfer the design beyond doubt—and its inclusion in WW's list of accused infringements resulted from a simple mistake. WW requests Ameri-CAN V2 remain in the case despite no located infringements, but would be willing to drop the claim upon sufficient guarantees from Amazon that it would continue to monitor for future infringements of the work.

Finally, Amazon is liable for willful infringement as a matter of law because it ████████████████████ WW's valid notices of claimed infringement, as set out in WW's opening brief and opposition to Amazon's motion.

## III.   ARGUMENT

### A.   WW did not waive summary judgment.

Amazon takes the extraordinary position that WW waived summary judgment because its argument was "skeletal." It makes this argument despite admitting that WW owns the copyright

registrations in all of the WW Designs (ECF No. 86-1 ("Amazon UF Opp.") ¶¶ 35–37), the mountain of exact or near-exact copies Amazon displayed and/or sold through its website (ECF No. 33–33-2), and its own witnesses admitting the accused Amazon works look *at least* "similar" to the WW Designs (ECF No. 66-1 ("UF") ¶¶ 112–13). The main support for the waiver argument is that WW did not insert into its motion a treatise explaining the discrete aspects of its designs that are *un*copyrightable. No decision supports this argument. *R.C. Olmstead v. CU Interface*, Amazon's lead case on the issue, involved complex computer software where defendant "maintained throughout the litigation that any alleged similarities arose from the fact that both software programs were designed to serve the functions of credit unions, yet Olmstead has not attempted to identify any original elements of its software that CUI copied." 606 F.3d 262, 274–75 (6th Cir. 2010). The WW Designs are nothing like the functional software in *Olmstead*. Leprechaun Griddy is a simple picture; not a program.[2]

Amazon is flipping the issue; the claimant must show what is original, not *un*original. And WW proffered ample evidence of originality. WW showed that copyright protects Dan Whelan's "choices about style and setting," "decisions about what materials to include and how to organize them," "inventiveness and imagination," and "creative spark." ECF No. 66 ("WW MSJ") § IV.B.2. It also protects Dan's distinct "style." *See The Bandana Co. v. TJX Cos., Inc.*, 2005 WL 1201176, at *2 (W.D. Ky. May 19, 2005) (citing *Steinberg v. Columbia Pics. Industries, Inc.*, 663 F. Supp. 706 (S.D.N.Y. 1987). Besides copyright registrations, WW explained that artist Dan Whelan "created all of the WW Designs . . . with a combination of hand drawing and software . . . he taught

---

[2] Nor is *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718 (2021) on point, because there, plaintiff moved for summary judgment on a failure-to-mitigate affirmative defense simply because plaintiff sought damages, showing nothing more. At 777–78. WW, on the other hand, explained the elements of copyright infringement, described its supporting evidence, and argued why Amazon's actions satisfy the elements.

himself to use . . . draw[ing] inspiration from various ideas, memes, movies, games, products, characters, themes, and events."UF ¶¶ 32–33 (materially admitted by Amazon). Dan also explained his creative process for each of the designs in a detailed interrogatory response, much of which centers on what Amazon claims is missing—what WW did not create, such as the designs' inspirations, broad ideas, or the works they parody. *See generally* ECF No. 59-1.

WW also produced ample evidence of Amazon's exact or near-exact copying of each of the accused ASINs. *See* ECF Nos. 33–33-2. This Court granted summary judgment on copyright infringement *for* a plaintiff with much less evidence and argument than WW has presented here. *See Curcio Webb LLC v. National Ben. Programs Agency, Inc.*, 2006 WL 47506, at *3–5 (S.D. Ohio Jan. 9, 2006) ("Plaintiff argues that it satisfies both elements of a copyright infringement claim. Plaintiff asserts it has a registered copyright on plaintiff's RFP, establishing the first prong . . . As for the second prong, plaintiff claims that Defendant admitted to copying text from plaintiff's RFP. Having established both prongs of a copyright infringement claim, plaintiff argues that it should be awarded summary judgment").

### B.    **WW's copyrights are valid.**

Amazon marshals three arguments to cast doubt on the validity of WW's copyrights. Each lacks merit. *First,* Amazon conflates Dan Whelan taking inspiration from or parodying preexisting works with rote, "sweat of the brow" copying. What Dan did is simply not what Amazon claims, and Amazon's legal analysis is wanting. *Second*, Amazon construes the fundamentally flawed analysis of retained witness Caroline de Baere as "unrebutted," as if WW was required to spend many thousands of dollars on a hired gun to explain her clear errors. Her own report and deposition testimony explain them just fine. *Third*, Amazon accuses WW of knowingly lying to the Copyright Office by not limiting its registrations to exclude any aspect of any work that in any way inspired

Dan in creating the WW Designs, or that Dan used as "raw materials" to create something new (quote from *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 38 (2d Cir. 2021)). It further claims that simple, inadvertent mistakes about dates of first publication jeopardize the registrations. Both arguments fail to raise a material dispute over whether "the [alleged] inaccuracy of the [registration] information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1)(B). Specifically, the Copyright Office asked Tim Whelan to limit the claims of only two of the works, Meri-CAN Eagle and King of the Kill, despite reviewing all of them prior to approving registrations. Tim limited the claims accordingly with no issue. Similarly, as soon as Tim discovered the mistaken dates of first publication, he corrected them with the Copyright Office, which approved the corrections without controversy.

### 1. Dan Whelan did not lazily copy any preexisting works; he always added sufficient creativity and style.

Amazon cannot point to a single preexisting work that Dan Whelan simply lifted and called his own. That's not how Dan Whelan works. WW has been perfectly clear: Dan "draws inspiration for the WW Designs from various ideas, memes, movies, games, products, characters, themes, and events. He channels that inspiration to create [WW's] distinct designs centered around holidays, American drinking culture, and patriotism, using outlandish and crude humor." UF (ECF No. 66-1) ¶¶ 33–34. Amazon's arguments forced WW to respond, in thousands of words, explaining why copyright law protects all of Dan's designs; because they show *Feist*'s modicum of creativity, because they are not unauthorized derivative works, and because they fairly use any preexisting protectable expression.

Rather than walk those well-tread grounds again, WW incorporates by reference its arguments from Section IV.A. of its Opposition to Amazon's MSJ (ECF No. 84), its Response to

Amazon's Appendix B, and its Response to Amazon's Statement of Undisputed Facts (ECF No. 84-2). To the extent Amazon makes additional arguments alleging unoriginality in the WW Designs besides the 21 for which it moved for partial summary judgment, WW responds to those assertions in its Response to Amazon's Disputed Issues of Material Fact, filed concurrently with this Reply.

A picture is worth a thousand words. The only designs in the record that really look like the WW Designs are Amazon's knockoffs. WW therefore incorporates Appendix A to this Reply, which sets out, side-by-side, the preexisting works Amazon accuses WW of appropriating, the WW Designs, and allegedly infringing ASINs. WW will let Dan's creativity and Amazon's theft thereof speak for themselves. A brief excerpt is included below:

| Pictures Amazon Found | WW Design | Accused ASIN |
|---|---|---|
|  |  |  |

---

[3] Defendants' Opposition to Plaintiff's Statement of Proposed Undisputed Facts, Doc. 86-1 at PageID# 10957.

[6] *Tits McGee Irish Pub*, Copyright Registration No. VA 2-351-548, Doc. 17 at PageID# 140-2.

[7] WW Second Corrected Accused ASINs for Court's Inspection, Doc. 33 at PageID# 1515, Row 70, ASIN No. B0BV77PRCF.

| Pictures Amazon Found | WW Design | Accused ASIN |
|---|---|---|
|  [4] <br>  [5] | | |

### 2. Caroline de Baere's opinions are unhelpful and flawed.

Amazon's retained witness Caroline de Baere has no place in this case. Generations of precedent show that she is precisely the kind of witness neither the Court nor the jury needs. Even if the Court considered her opinions, which it need not and should not do, they are improper.

#### a. Ms. de Baere's filtration analysis is unhelpful because it is unnecessary under this Circuit's stringent standard.

Amazon cites two non-copyright cases for the proposition that expert testimony can theoretically create factual disputes. ECF No. 86 at PageID 10872 (citing *Daedalus Blue, LLC v. Microstrategy Inc.*, 2023 WL 6221774, at *14 (E.D. Va. Sept. 25, 2023) & *Willis v. Barry Graham Oil Serv. LLC*, 636 F. Supp. 3d 684, 697 (W.D. La. Oct. 20, 2022)). But Amazon omits cases rejecting the specific type of expert testimony it offers in this exact kind of case. In *Stromback v. New Line Cinema*, 384 F.3d 282, 294 (6th Cir. 2004) ("*Stromback*"), the Sixth Circuit emphasized

---

[4] *Id.*

[5] *Id.*

that its courts apply a "stringent standard regarding when to allow expert testimony on [the step of the copyright-infringement analysis where the Court 'filter[s] out the unoriginal, unprotectible elements']." *Id.* at 294–96 (citing *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 318 (6th Cir. 2004)). Such expert testimony is necessary in cases like *Kohus* "because the copyright involved a latch for a portable children's play yard [raising technical issues of functionality]," or like *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 834–35 (10th Cir. 1993) ("noting that in most cases involving computer programs expert testimony will be helpful to the court in [filtering]"). *Stromback*, 384 F.3d at 294–96.

But these tricky, technical copyrights differ from those at issue here—for expressive works. "**[W]here**, as here, **the subject matter is not complex or technical** . . . but instead involves a literary work aimed at a general audience, **expert testimony will seldom be necessary to determine substantial similarity**. This is long-established law. *See Stromback* at 295 (emphasis added) (citing *Nichols v. Universal Pics. Corp.*, 45 F.2d 119, 123 (1930) (Hand, J.) ("[Expert testimony] ought not to be allowed at all; and while its admission is not a ground for reversal, it cumbers the case and tends to confusion, for the more the court is led into the intricacies of dramatic craftsmanship, the less likely it is to stand upon the firmer, if more naive, ground of its considered impressions upon its own perusal"); *Costello v. Loew's Inc.*, 159 F. Supp. 782, 789 (D.D.C. 1958) ("**Nor could expert testimony affect the spontaneous and immediate impression of the plaintiff's and defendant's literary works upon the mind of the ordinary observer**"); *see also Kindergartners Count, Inc. v. Demoulin*, 249 F. Supp. 2d 1214, 1232 (D. Kan. 2003) ("Unlike technical computer programs, the trier of fact does not need an expert to compare two literary works that are expressed in simple English").

Lest the Court or Amazon react that this stringent standard only applies to *literary*

expressive works, it does not; it applies to visual art like the WW Designs as well. *See The Bandana Co. v. TJX Cos., Inc.*, 2005 WL 1201176, at *1 (W.D. Ky. May 19, 2005) ("*Bandana Co.*") ("[i]n cases such as this one, involving works of art aimed at a general audience, the court can discern protectible elements and substantial similarity without expert testimony") (citing *Stromback* as meaning "expert testimony unnecessary unless subject matter is complex and technical"); *United States v. Star Graphics, Inc.*, 2007 WL 9724924, at *4 (N.D. Ga. Jan. 22, 2007) ("**Because the subject matter of this case, *i.e.*, logos and *designs on apparel, are not technical or complex*, the testimony . . . may not be helpful . . .** ).

*Strombeck* shows why the Court need not consider de Baere's opinion. There, plaintiff appealed defeat on summary judgment of his claims that a film infringed the copyright in his screenplay, arguing that the district court erred in refusing to allow an expert to opine on filtration. *Strombeck*, 384 F.3d at 294–96. The Sixth Circuit affirmed, finding expert testimony unnecessary given the relative simplicity of the works at issue, even though plaintiff argued the case involved "complex copyright subject matter." *Id.* at 294. This Court is capable of discerning whether WW is over its skis in construing its protectable expression, and whether Amazon infringed it. It does not need de Baere's report to conclude the obvious: that WW owns only Dan Whelan's creative expression of preexisting ideas, his parodies and transformations of the many images, films, shows, ads, and pieces thereof that inspired the WW Designs.

### b.    Inexperienced, Ms. de Baere filtered improperly.

Indeed, the Court should not consider Ms. de Baere's work because she bungled her job. Before demonstrating why, it's important to clarify what that job was:

> "I have therefore approached this engagement by first analyzing the originality of the elements of Plaintiff's works to eliminate unoriginal elements and then assessed the originality of Plaintiff's works in their entirety. I then compared similarities between Plaintiff and Amazon's works."

ECF No. 57-4 ("de Baere Rep.") at PageID 4292. Her opinion's propriety and usefulness, then, depend on how she understands originality in the copyright context, and how she determines which aspects of a design are unprotectable by copyright. She made clear that she did not apply copyright's particular legal definition of originality:

> **Q.** And you tried your best to apply this legal standard to Weekend Warrior's designs to determine whether they were original, correct?
>
> **A.** No. That is not correct.
>
> **Q.** So you weren't relying on this legal standard when you conducted your analysis?
>
> **A.** I was asked to assess originality. I was asked to assess similarities. I was not asked to use or apply legal standards . . .

ECF No. 57-3 ("de Baere Dep.") at PageID 3873:4–20 (objections omitted). Instead, she applied her own understanding. The problem is that Ms. de Baere has never testified in a copyright case before. *Id.* at PageID 4187:10–4188:8. She has never opined on graphical works appearing on t-shirts. *Id*. at PageID 3921:4–11. She has never read any scholarship on how to distinguish original versus unoriginal creative expression, and noted that trying to do so was "subjective." *Id.* at PageID 3965:16–3966:1.

Given her lack of training or knowledge on what should and should not be filtered out, it was only natural that she would incorrectly filter out protectable expression of unprotectable ideas. She eliminated, as definitionally unoriginal, *all* of Dan Whelan's "cartoon beer cans (and steins) with faces/feet (and hands)" (de Baere Rep. at PageID 4320, 4325, 4330); de Baere Dep. at 3993:17–3995:4), "founding father figures" (de Baere Rep. at PageID 4322), "parody beer logos" (de Baere Dep. at 4048:5–4049:12), "preexisting commercial identities," (de Baere Rep. at PageID 4372; de Baere Dep. at 4091:1–4093:16), and what she believes to be "stock illustrations, common

slogans, public domain images, widely used and commonly popular **themes** such as holidays, professions, beer, pop culture references, and standard design layouts." de Baere Rep. at 4319; de Baere Dep. at 3882:4–20. No matter how Dan might have *expressed* these ideas in his own way, she eliminated them as unoriginal.

Ms. de Baere's lack of training and precision dovetails with a legal reality Amazon cannot escape; designs can still be original even when they contain **exact copies of previous works**, including those works' protectable expression. *See Hayden v. 2K Games, Inc.*, 629 F. Supp. 3d 736 (N.D. Ohio 2022). Amazon attempts to dodge *Hayden*'s holding by claiming that it "does not address the Sixth Circuit holding in *ATC*, 402 F.3d at 712, that copying does not satisfy the originality requirement." ECF No. 86 at PageID 10871. But *ATC* does not concern creative works; it involves illustrations of car parts that "were intended to be as accurate as possible in reproducing the parts shown in the photographs on which they were based, a form of slavish copying that is the antithesis of originality." *ATC Distrib. Grp. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir. 2005). Like the tattoo artist in *Hayden*, Dan Whelan was not trying to robotically draw exact copies of any reference images from which he took inspiration; he "referenced" them to make something his own. Ms. de Baere, having no knowledge or experience dealing with these kinds of nuances, simply threw out anything she thought looked like something else. This is not how filtration works.

Ms. de Baere also failed to eliminate things that are *un*protectable, in which WW would never claim a broad copyright monopoly.

> **Q**. Your analysis is two parts, right? It's analyzing elements that you think are unoriginal and eliminating them, right? That's the first part.
>
> **A**. Okay.
>
> **Q**. . . . What is the second part, as you understand it?

**A**. The second part is, you know, once the elements are removed, what remains? And **what remains could be a generic layout. What remains could be nothing.** What remains could be **color that is basic to the holiday**. What remains are—you know, I just gave a few examples so . . .

De Baere Dep. at PageID 3987:1–17. It is difficult (in fact, impossible) to conceptualize what the

WW Designs look like after Ms. de Baere performs her analysis.

**Q**. So the second part of your process, after you determine what individual elements are original or unoriginal, after you eliminate the elements you think are unoriginal, you analyze **what was left of the designs as a whole**, right?

**A**. Yes.

. . .

**Q**. So by eliminating something and then assessing what remains, did you, like, keep a picture of what remained after elimination?

**A**. You mean an actual photo?

**Q**. Yeah.

**A**. . . . I don't need to, I don't think. I mean, I'm providing my opinion on these and reviewed them. And my analysis, I think, speaks to what I did. So, I mean, that's kind of it. I don't know that I need to take a photo.

**Q**. So if I wanted to look at a design after you had performed the elimination, how would I know what it looks like?

**A**. Well, the image, you know, I—if I take everything away, in my opinion on these, I—you know, the 48 I was left with, you know, something that I found common or not original, and, you know, I mean, I'd have to go through one by one and take out the elements and, you know, show my analysis again. I don't know.

**Q**. Okay. There's no physical manifestation that I can look at that shows what the work looks like after your elimination?

**A**. As a designer, I have—I had a systematic and reliable way of assessing the designs, and I used it repeatedly as—as an approach that I believe and know from, you know, four decades is something that we can do.

de Baere Dep. at 3882:21–3883:3; 3987:18–3988:17.

Ms. de Baere's method was the opposite of "systematic and reliable." As merely one example in a sea of others, Ms. de Baere offered the dumbfounding opinion about the inspiration for the WW Design Where the Horrors At?, a filthy, obvious pun depicting Dan's drawings of Halloween monsters as sultry strippers.



She wrote, "**the phrase 'Where the Horrors At?' is a play on the 2003 DMX rap song 'Where the Hood At?'**" de Baere Rep. (ECF No. 57-4) at Page ID 4381. Her citation for the claim is simply the IMDB page for the music video to DMX's smash hit.[8] WW encourages the Court to read her deposition transcript explaining why she believed WW's design was in any way inspired by this song, found at ECF No. 57-3 Page ID 4106–4113. All of it is baffling, but this particular exchange is worth bringing to the Court's attention:

> **Q.** Why do you think that this design was inspired by DMX's "Where the Hood

---

[8] Plaintiff requests the Court take judicial notice of the "Where the Hood At?" music video, which can be found at https://www.youtube.com/watch?v=6CqXgs-7ico (last accessed December 11, 2025). Note that the song and video are rather explicit.

At?"

**A.** Well, I'd like to look—just let me see. It's what I found, just sort of the spooky talk. You know, so you look at that.

**Q.** Let me break that down, though. What do you mean, it's what you found? How did you find this in relation to Where the Horrors At?

**A.** It's what I considered to be combining them.

**Q.** Why?

**A.** Can we look at, you know, I wrote this two months ago. I want to double-check all my—what I looked at, which was Appendix C, Part 2. I just want to make sure I'm looking at the right thing here.

**Q.** I believe that cite is just the IMDB page for the music video . . .

**A.** Oh, is it? Okay.

**Q.** Why—**why do you think it was inspired by "Where the Hood At?"** instead of another song formatted similarly in title?

**A.** I found similarities between them. **And, you know, as a design professional, it's an extension of something I considered to be a theme** . . .

**Q.** Why is "hood" similar to "horror"?

**A. The Hs, the Os**.

**Q.** Okay.

**A.** Seemed more similar to me, in my professional opinion as a designer, I saw a connection.

**Q.** Is it possible that the design is a—is a pun?

**A.** I don't know.

*Id.* at PageID 4107:23–4109:22.

Ms. de Baere's opinions on what is required for a work to be "original," and whether WW's works are original, are premised on beliefs incompatible with what copyright originality means. These opinions do not create any reasonable dispute of material fact, and the Court should discount

her testimony and report in its entirety. *See, e.g.*, *Rottlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1879983, at *26–27 (D. Minn. Aug. 20, 2004) (disregarding expert's opinion on originality as unhelpful because the expert "relies on his own standard for originality"); *U.S. v. Cunningham*, 679 F.3d 355, 380–382 (6th Cir. 2012) (affirming exclusion of expert opinions that "contained numerous misstatements of law"); *Design Basics, L.L.C. v. Deshano Cos.*, 2012 WL 4340784, at *3–4 (E.D. Mich. Sept. 21, 2012) (excluding expert who "based his opinions on the incorrect legal framework" regarding copyrightability).

### 3.    WW made no knowing misrepresentations to the Copyright Office that would have caused the Office to refuse registration.

To set the table, Amazon undersells the key issue, which the Supreme Court describes as the "important point" for registration challenges like Amazon's:

> "Naturally, the information provided on the application for the registration should be accurate. Nevertheless, the Copyright Act provides a safe harbor. It says that a certificate of registration is valid
>
> > 'regardless of whether the certificate contains any inaccurate information, unless—
> > '(A) the inaccurate information was included on the application for copyright registration *with knowledge that it was inaccurate*; and
> > '(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. § 411(b)(1) (emphasis added).
>
> The **important point** for our purposes is that **a certificate of registration is valid even though it contains inaccurate information**, as long as the copyright holder lacked 'knowledge that it was inaccurate.'"

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181–82 (2022) ("*Unicolors*") (citing 17 U.S.C. § 411(b) (emphasis added)). Emphasizing the point, the Supreme Court held, "it would make no sense if § 411(b) left copyright registrations exposed to invalidation based on applicants' good-faith misunderstandings of the details of copyright law." *Id.* at 187.

Amazon seeks to spin a conspiratorial web of WW's fraud on the Copyright Office. It bases its story on two supposed issues with the registrations—(a) failure to disclose the preexisting material that Amazon baselessly claims Dan Whelan ripped off, and (b) incidental, inconsequential errors with the dates of first publication. The evidence shows that neither of these issues raise questions of fact on the registrations' validity.

> ### a. WW's decision not to exclude other material from its registrations is not a knowing inaccuracy that would have caused refusal to register.

What matters here is WW's knowledge and whether the lack of the limitations of claim for any WW Design would have caused the Copyright Office to refuse registration for that design. As to knowledge, WW has never submitted a registration with knowingly-inaccurate information. When registering the designs, Tim Whelan read the instruction on the application form that stated, "If the work contains an appreciable amount of (i) previously published material, (ii) material owned by another party, (iii) material that is in the public domain, or (iv) material generated by artificial intelligence, briefly identify that material in the 'Material Excluded' Section." ECF No. 61-8 at Page ID 6632–6633. Tim Whelan reasoned that "based on the amount of any preexisting works used, and on the transformations and recontextualizations that Plaintiff made to any existing works when incorporating any aspects thereof into its own designs, Plaintiff does not believe any of its works "contain[] an appreciable amount of preexisting material such that Plaintiff needed to complete a limitation of claim." *Id.* This is a good-faith belief that no prior material needed to be excluded from the registrations, not a knowing attempt to deceive the Copyright Office.

Amazon proffers that the Copyright Office's request to Tim to submit a limitation on *one* of WW's Designs put Tim on notice that *all* were suspect. But Amazon does not mention that the

design the Office flagged was ***an updated version of WW's own design***. The Specialist simply asked Tim to submit a limitation of claim clarifying that Meri-CAN Eagle contained some artwork from Ameri-CAN Eagle, while also containing new artwork. ECF No. 77-1. This makes sense, as the two WW Designs look similar to each other despite, as the Specialist notes, containing new artwork:

| Ameri-CAN Eagle (ECF No. 17 at PageID 165) | Meri-CAN Eagle (*id.* at PageID 175) |
|---|---|
|  | |

Amazon also omits what Tim asks the Specialist: "Just to make sure I understand correctly, **this is a formality** to point out that some of the artwork (beak, hair, etc) may be the same in both designs, while also having different elements (different can, background, etc)? ECF No. 77-1 at PageID 9605 (emphasis added). The Specialist replies, "**Yes**, it's to make the clearest record for two separate published works that contain some of the same material and also some different material." *Id.* at PageID 9606 (emphasis added).

In other words, Amazon is extrapolating what Tim understood as a "formality" about two of *WW's own, highly-similar designs* into an alleged obligation for WW to disclose every picture

27

on the internet that Dan Whelan may have used for inspiration, even if his ultimate design looked nothing like or substantially transformed that picture. This does not rise to the level of the knowing misrepresentation required to cast doubt on the registrations' validity.

As to materiality of WW's decision not to disclaim its own prior Ww Designs, there is none. *See Ronald Mayotte & Assocs. v. MGC Bldg. Co.*, 885 F. Supp. 148, 152 (E.D. Mich. 1994) (rejecting challenge to validity based on failure to disclose preexisting works when copyright applicant owned those preexisting works).

As to materiality of the alleged omissions to the registrations for WW Designs that are not similar to one another, Amazon's argument contradicts itself. Simultaneously, Amazon (1) states that "[m]any of these source works are easily identifiable, such as well-known beer labels, the Coca-Cola Santa, *Conan the Barbarian* posters, *Dirty Harry* imagery, Lucky Charms characters, the NBA Jam figures" (ECF No. 86 at PageID 10888), and (2) expects Copyright Office Registration *Specialists* to be oblivious to these "obvious" preexisting works. It paints a picture of Tim Whelan sneaking under the Specialists' noses, registering ripoffs believing that the Specialist will rubber-stamp the applications. That's not what happens; Specialists are not rubber-stampers. "Unlike the 1976 [Copyright] Act's registration procedures, registration under the 1909 Act did not allow for any **discretionary determination** by the Register of Copyrights. Rather, if the proper steps had been taken—publication, notice, deposit, and payment . . . it was the duty of the Register of Copyrights to issue a certificate." *Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 618 (9th Cir. 2010) (emphasis added), *abrogated on other grounds*, *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019). *Unicolors* alludes to the Specialists' copyrightability discretion as well: "**If the Register determines that the work is copyrightable and** meets other statutory requirements, she will issue a certificate of registration. *Unicolors*, 595

U.S. at 181 (emphasis added).

The record here demonstrates that when a Specialist believes a limitation of claim is material to registration, the Specialist will reach out, as happened with Meri-Can Eagle. Amazon obscures a key piece of evidence that undermines its position. The Copyright Office also asked WW to submit a limitation of claim for one other WW Design: King of the Kill. For that work— and no other WW Designs besides Meri-CAN Eagle, a CO Specialist requested Tim submit a limitation of claim. *See* ECF No. 55-17 at PageID 3259:21–3261:3. He did, and the registration was approved without further issue. ECF No. 64 ¶ 8, ECF No. 64-B-3.The Specialists had the opportunity to request similarly on all of the other WW Designs, but never felt the need.[9] Based on these facts, as well as on the obvious at-least-minimal creativity of the WW Designs, there is no evidence that the lack of limitations of claim would have caused registration refusal.[10]

> **b.    The incorrect publication dates resulted from a reasonable mistake, WW corrected them promptly upon discovery, and the**

---

[9] The Compendium also backs this up, emphasizing that **applicants do not need to disclaim things** like attributions or direct quotations because "it is **obvious that this material was not created by the author of the work and is not owned by the copyright claimant**." *See* Copyright Office Compendium § 621.2 (emphasis added) (found at https://www.copyright.gov/comp3/chap600/ch600-examination-practices.pdf#page=195&zoom=100,129,650) (last accessed December 11, 2025).

[10] Amazon's authorities do not militate otherwise. The lack of a claim limitation in *Heritage Homes* made it "impossible to know whether the Register of Copyrights would have refused registration" and to "determine whether there was sufficient original authorship." *Heritage Homes, LLC v. Benjamin Custom Homes, LLC*, 2020 WL 12441962, at *3 (D.N.D. May 27, 2020). Here, we know the decision had no impact, and that all of WW's works show sufficient original authorship. Same goes for *Art of Design, Inc. v. Pontoon Boat, LLC*, 2019 WL 3749990, at *3 (N.D. Ind. Aug. 8, 2019), where "originality [was] questioned." It is not reasonably questionable in this case, based on the Court's ability to compare the WW Designs to Amazon's asserted preexisting works. Finally, *Lieb v. Korangy Publ'g, Inc.*, 2022 WL 1124850, at *13 (E.D.N.Y. Apr. 14, 2022) is distinguishable because the registrant failed to disclose *a verbatim copy* of a previously-published journal article—not at all similar to the WW Designs.

**Copyright Office accepted corrected dates without issue.**

Amazon's publication-date argument makes a mountain out of a molehill. In support of WW's MSJ, Tim Whelan explained in detail the simple mistake he made on nine WW Design copyrights' publication dates—relying on dates of initial marketing emails sent to customers (accurate except for nine copyrights). *See* ECF No. 64 ¶¶ 10–15, ECF No. 64-5. The mistake had absolutely no impact; WW corrected the mistake as soon as it discovered it, and the Copyright Office approved all of WW's registration supplements correcting the dates without issue. *Id.* Nothing about the supplements alters in any way the protectable expression of the copyrights. The only thing the understandable date flubs change is WW's eligibility for statutory damages for certain WW Designs, about which WW has already stipulated in any event. None of this raises a question of fact on validity.

**C.    Amazon directly infringed WW's copyrights by copying their protectable expression.**

If the Court finds that the WW Designs bear any protectable creativity whatsoever, summary judgment on copying is proper for WW, because Amazon copied the designs wholesale. Try as Amazon might to limit the protectability of Dan's designs, a bevy of cases firmly establish the protectability of WW's expression, and the unlawfulness of Amazon's conduct. *See*, *e.g.* *Bandana Co.*, 2005 WL 1201176, at *2 ("However, an artist may vary the pose, attitude, gesture, muscle structure, facial expression, coat, or texture of animal, and such variation is protectible . . . Thus, Bandana may prevent others from copying the original features it contributed, but it may not prevent others from copying elements of expression that nature displays for all observers, or that the metal medium suggests to all sculptors.") (cleaned up); *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 953 (9th Cir. 2019) (although copyright law does not protect the natural

appearance of a Bengal Clockvine flower . . . it does protect the original selection, coordination, and arrangement of floral elements in a lace pattern . . . The Subject Work's copyright protection is broad—not thin—because there is 'a wide range of expression' for selecting, coordinating, and arranging floral elements in stylized fabric designs . . . After all, "there are gazillions of ways to combine petals, buds, stems, leaves, and colors in floral designs on fabric.") (cleaned up).

Specifically, besides *Hayden v. 2K Games* (discussed elsewhere here and in WW's MSJ), *Avanti Press, Inc. v. Quackenbush*, is on point. 2014 WL 12657264, at *8 (E.D. Mich. Feb. 11, 2014). There,

> "a set of images from a greeting card line [was] alleged to copy another set of images from a pre-existing greeting card line. Although common themes for greeting cards may be animals and people in various humorous scenarios, the fact that these two sets of images made by different companies employ selections, arrangements, and combinations of elements in ways that are alike creates an issue of substantial similarity" (at *8)
> . . .
> "Image Set Four is comprised of two images that both show dogs that appear to be bulldogs flying in the air on brooms, wearing witches' hats, with the night sky and full moon behind them. Quackenbush argues that Avanti's image is entitled to no protection because it involves the scenes a faire for witches. These images, nevertheless, feature not the iconic Halloween imagery of a witch in a dark, pointed hat flying a broom over the night sky, but rather convey a much more out-of-the-ordinary and specific concept of a bulldog taking on this role" (at *9).

Despite the defendant mining for minute differences, the court found a question of material fact remained, precluding summary judgment. *Id.* at *9–10. The difference here is that for all of the at-issue WW Designs, there simply are no differences—minute or major—between the ASINs and the WW Designs. Amazon's own witnesses agree. ECF No. 66-1 ¶¶ 112–13. *See also Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020) (finding of substantial similarity may be based on the overlap of unprotectable as well as protectable elements).

Amazon's escape hatch—the volitional-conduct doctrine—remains sealed. WW

incorporates by reference its argument explaining why the volitional-conduct (if the Court elects to apply the non-binding doctrine in the first place) does not save Amazon as a matter of law. *See* ECF No. 84 § III.A.

**D. Alternatively, Amazon indirectly infringed WW's copyrights**

Similarly here, WW incorporates by reference the argument and evidence cited in its Opposition on why, as an alternative to direct infringement, the Court could also find Amazon liable for indirect infringement as a matter of law. *See* ECF No. 84 §§ III.B–C.

**E. Amazon's DMCA defense fails.**

The word "affirmative" means something. Here, it means that Amazon has the burden of proving entitlement to its DMCA affirmative defense. Specifically, Amazon "must establish beyond controversy *every* essential element or lose the protection," *See Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089, 113 (N.D. Cal. 2021). Flummoxing, then, is Amazon's argument that WW automatically loses on summary judgment because it did not affirmatively move for summary judgment on *Amazon's defenses*. ECF No. 86 at PageID 10883. By that logic, WW must also lose summary judgment for not moving on Amazon's First Amendment defense. *See* ECF No. 19 at PageID 265. Though WW is curious what that defense would look like, it is not required to affirmatively disprove it—or any other Amazon affirmative defense—to prevail on summary judgment.

Regarding the DMCA, WW incorporates by reference its argument and evidence for why Amazon cannot invoke the defense in this case, and that even if it could, it fails to satisfy all of the elements beyond controversy. *See* ECF No. 84 § IV.B.

**F. Amazon is not entitled to summary judgment on the five copyrights it**

specifically addresses.

WW also incorporates by reference its Opposition arguments and evidence regarding the five copyrights on which Amazon moves for summary judgment. *See* ECF No. 84 § IV.D.

**G.** **The evidence establishes Amazon's willful infringement as a matter of law.**

WW incorporates by reference its argument and evidence opposing Amazon's affirmative motion on willfulness. *See* ECF No. 84 § IV.E.

But Amazon raises an argument in its Opposition that it did not raise in its opening brief. It argues that WW's motion must fail because WW did not analyze willfulness on a work-by-work basis. The Court should parse Amazon's mental state across 50 different designs, Amazon insists. The Defendant weaves a complex web proffering the minute differences in the days it took to— only after WW sued it—remove knockoffs of Leprechaun Griddy, of Papa Woody Plumbing, of Thicc Santa, of all of the many WW Designs.

The law does not demand such granularity:

> "It can be said that there are two kinds of willfulness: (1) knowing that a particular performance is copyright infringement, and (2) **knowing that the normal course of business involves a pattern of repeated copyright infringements. Should the latter situation occur, then <u>'willfulness' proven as to the course of business will suffice for 'willfulness'</u> <u>*for any particular occurrence of copyright infringement*</u>**. A proprietor who has been repeatedly warned that a course of conduct violates the law should take responsibility in seeing that it does not happen again."

*Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 580 (E.D. Tex. 1993) ("*Swallow*") (emphasis added). *Swallow* is evocative. There, ASCAP warned a bar owner repeatedly that he was regularly violating the public-performance rights of various artists, *in general*, *including but not limited to the plaintiffs'*. *Id* at 576. ASCAP sent defendant numerous letters and tried to convince him to buy a license, but he never did; he just kept playing all sorts of licensed music without permission despite warnings—though not warnings about the plaintiffs' songs *in particular*. *Id.* Defendant

pushed back; he parried that "he did not know that the band was unlicensed and that he had a contract with the band requiring them to not play unauthorized songs." *Id.* at 580. The court countered, deeming defendant a willful copyright infringer as a matter of law, reasoning as follows:

> "He cannot shield himself by a willing veil of ignorance woven by a series of contracts and agreements between himself and his employees, servants, and independent contractors. Mr. Wilson was warned that his usual business practices violated the copyright laws . . . He received numerous telephone calls and letters warning him that his usual business practices violated the copyright laws. After so much notice over so much time, Mr. Wilson cannot claim that he did not 'know' that the particular . . . performances were not copyright infringements. Mr. Wilson will be charged with constructive knowledge of the infringing performances. Therefore, the court finds that Mr. Wilson's mental state was knowing and willful as to all seven of the infringing performances."

*Id.* at 580. *See also Rare Blue Music, Inc. v. Guttadauro*, 616 F. Supp. 1528, 1531 (D. Mass. 1985) (similar to *Swallow*, finding willful infringement for repeated public performances of copyrighted music without permission after numerous notices despite defendant's reliance on representation from the company with whom he had a service contract for his jukebox, which owned all the records in the jukebox and paid a licensing fee for the records played at defendant's establishment). *See also Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 512 (7th Cir. 1994) ("A letter informing defendant of possible infringement clearly provides notice" . . . "defendant's failure . . . to inquire after other [plaintiff] copyrights that might cover [other plaintiff IP] was reckless indifference").

This principle—that Amazon's "normal course of business" naturally caused infringement, undercuts Amazon's claim that it lacked sufficient information to stop infringement just because Tim Whelan didn't submit tens of thousands of notices. *See* ECF No. 86 at PageID 108859 n.5. For instance, Amazon claims "Weekend Warrior also never submitted notices that identified the specific ASINs (product listings) for the vast majority of designs it now asserts—the very

information required to enable Amazon to locate and remove allegedly infringing material." *Id.* The Defendant attempts to make it seem as though Tim Whelan did not include links to infringing materials in notices he submitted via Amazon's public notice form. Not so; for each notice he submitted through the public notice form, he entered the requested information into all required fields. UF ¶ 64.

Amazon's sole example in dispute of this fact is that a notice from May 16, 2022 included "a general URL . . . rather than adhering to Amazon's requirement to 'ensure the URL links directly to the copyrighted work you believe is being infringed, for example, a specific product image.'" ECF No. 86-1 ¶ 65.[11] This assertion contradicts Amazon's own document. The spreadsheet summarizing WW's notices, ECF No. 53 Ex. 224b (LaMagna 53), shows that for the May 16, 2022 notice, WW ███████████████████████████████████████████ ████████████████████████████████████████████████████████ This is the same ASIN where WW provided Amazon a link to its entire t-shirt catalogue *because it wanted notify Amazon of its designs*. When providing the link to its catalogue, WW wrote, "This is a pop-up seller using **our copyrighted material** to poach customers from our thousands of dollars of daily ad spend on digital marketing. If this is not taken down as part of DMCA policy, we will be forced to escalate." ECF No. 53 Ex. 24b (emphasis added). Amazon admits it "██████████████████ ███████████████████████" this notice, ECF No. 72-1 ¶ 80, even though it told WW, "**[w]e reviewed your notices** of infringement and determined that the notices you have submitted to Amazon are invalid or inaccurate" *for this very notice*. *Compare* ECF No. 64-14 at PageID 6797 (CaseID ending in 1071) *with* ECF No. 53 Ex. 24b (same CaseID).

---

[11] In its Statement of Undisputed Material Facts, WW mistakenly listed the date of this notice as April 4, 2022. That date is a typo, but the CaseID ending in 1071 reflects the correct, May 16, 2022 notice.

Case: 1:23-cv-00752-DRC Doc #: 90 Filed: 12/12/25 Page: 36 of 40 PAGEID #: 11060


The Court should reject Amazon's wanting explanation that its decision to block all correspondence from Tim's email was reasonable. The Defendant claims There was no publicly available information that connected officialusadrinkingteam.com or Tim Whelan to USA Drinking Team. ECF No. 86 at PageID 10858. On the contrary, Tim Whelan submitted numerous notices of infringement that identified him as the owner of USA Drinking Team and WW, and which included his home address and phone number. *See* ECF No. 66-1 ("UF") ¶¶ 41–43,[12] 45–46, 49–50, 53–56, 60–65. Googling "Tim Whelan Cincinnati" returns Tim's LinkedIn page, which identifies him as the co-owner of an Ecommerce business and graduate of Xavier University, as well as webpages matching his home addresses and referring to his basketball career at Xavier. *Id.* ¶¶ 89–92. USA Drinking Team also had over 400,000 followers when Tim first submitted notices in 2001. *Id.* ¶¶ 30–31. Even a cursory ▮▮▮▮▮▮ into Tim's identity, including a simple phone call to the number he swore multiple times was his, could have confirmed this.

While Amazon's failure to "ameliorate the infringing acts prior to litigation" can support willfulness on summary judgment, *see Philpot v. L.M. Comms'ns II of S.C., Inc.*, 343 F. Supp. 3d 694, 701 (E.D. Ky. 2018), the evidence also establishes that Amazon's "normal course of business"—both before and *during* litigation—supports willfulness as well. Amazon had the capability to prevent *any* WW infringements from appearing on its site from the moment Tim provided his first notice, but even assuming it was justified in ignoring all pre-suit notices, Amazon has no justification for post-suit infringements. The company could ▮▮▮▮▮▮▮▮▮

---

[12] Amazon objects to some of Tim's initial email notices—as well as a confirmation of receipt of one of Tim's notices it sent to Tim—concerning the Libeerty jersey as irrelevant and produced beyond the close of discovery. This argument is meritless. The emails are relevant to Amazon's knowledge of Tim's identity and his connection to WW, and its ▮▮▮▮▮▮▮▮▮ goes directly to willfulness/recklessness. The emails have also been in Amazon's possession since Tim first sent them, and though they were requested, Amazon never produced them. *See* Laiolo Reply Decl. ¶¶ 2–5, Exs. F-1 & F-2.

█████████████████████████████████████████████████████████████████████

████████████████████████████████████. ECF No. 84-2 at WW's Disputed Material Facts

¶¶ 12–16. Every time an infringement appears on Amazon's website, Amazon takes action to

display it by rendering it on articles it selects. *Id.*; ECF No. 66-1 ¶¶ 9,

Amazon's normal course of business allows this to happen. Like the purveyor in *Swallow*,

Amazon is on ample notice that its business is a at risk of infringement. ████████████

████████████████████████████████████████████████████████ *Cf.* ECF No. 72-1 ¶ 46; ECF

No. 66-1 ¶ 85. Even when it takes those notices seriously, infringements that Amazon could block

still appear. For WW, infringements of its designs appeared on Amazon both before and after this

lawsuit. Permitting them is Amazon's willful decision.

## IV. **CONCLUSION**

WW respectfully requests the Court grant WW's motion and order a trial on damages.

Dated: December 12, 2025        Respectfully submitted,

*s/George B. A. Laiolo*
George B. A. Laiolo, *pro hac vice*
California Bar No. 329850
Keith J. Wesley, *pro hac vice*
California Bar No. 229276
Matthew Venezia, *pro hac vice*
California Bar No. 313812
Elizabeth Carpenter, *pro hac vice*
California Bar No. 315674
Amanda Mannshahia, *pro hac vice*
California Bar No. 340619
Ellis George LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, California 90067
Telephone: (310) 274-7100
Email: glaiolo@ellisgeorge.com
Email: kwesley@ellisgeorge.com

Email:  mvenezia@ellisgeorge.com
Email:  ecarpenter@ellisgeorge.com
Email:  amannshahia@ellisgeorge.com

Gary F. Franke, Trial Attorney
Ohio Bar No. 0029793
GARY F. FRANKE CO., LPA
201 E. Fifth Street, Suite 910
Cincinnati, Ohio 45202
Telephone: (513) 564-9222
Email:  gff@garyfrankelaw.com

*Attorneys for Plaintiff Weekend Warrior Clothing,
LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 12, 2025, a true and correct copy of the foregoing **PLAINTIFF WEEKEND WARRIOR CLOTHING, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** was served via the United States District Court CM/ECF system on all parties or persons requiring notice as follows:

| | |
|---|---|
| Gregory F. Ahrens<br>Wood Herron & Evans LLP<br>600 Vine Street, Suite 2800<br>Cincinnati, OH 45202<br>Telephone:  (513) 241-2324<br>Email: gahrens@whe-law.com<br>Email: tyoung@whe-law.com (paralegal)<br><br>Todd M. Siegel<br>Ziyu Ma<br>Ryan L. Frei<br>Klaus H. Hamm<br>Klarquist Sparkman, LLP<br>121 SW Salmon Street, Suite 1600<br>Portland, Oregon 97204<br>Telephone:  (503) 595-5300<br>Facsimile:  (503) 595-5301<br>Email: todd.siegel@klarquist.com<br>Email: ziyu.ma@klarquist.com<br>Email: ryan.frei@klarquist.com<br>Email: klaus.hamm@klarquist.com<br>Email: amy.kendig@klarquist.com<br><br>Moez M. Kaba<br>Jessica N. Trafimow<br>Hueston Hennigan LLP<br>1 Little West 12th Street, 2nd Floor<br>New York, NY 10014<br>Telephone: (646) 930-0415 (Kaba)<br>Telephone: (212) 715-1123 (Trafimow)<br>Email: mkaba@hueston.com<br>Email: jtrafimow@hueston.com<br><br>Christine Woodin<br>Hueston Hennigan LLP<br>523 West 6th Street, Suite 400 | Counsel for Defendants<br>AMAZON.COM SERVICES, LLC; and AMAZON.COM INC. |

| | |
|---|---|
| Los Angeles, CA 90014<br>Telephone: (213) 788-4099<br>Facsimile: (888) 866-4825<br>Email: cwoodin@hueston.com<br><br>Sourabh Mishra<br>Hueston Hennigan LLP<br>620 Newport Beach, CA 92660<br>Telephone: (949) 356-5536<br>Facsimile: (888) 866-4825<br>Email: smishra@hueston.com | |

*s/George B. A. Laiolo*
George B. A. Laiolo