IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |
|---|---|
| Weekend Warrior Clothing, LLC,<br><br>                     *Plaintiff,*<br><br>    v.<br><br>Amazon.com Services, LLC;<br>Amazon.com, Inc.,<br><br>                    *Defendants.* | Case No. 1:23-cv-00752<br>Judge Douglas R. Cole<br>Magistrate Judge Stephanie K. Bowman<br><br>**CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER**<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANTS AMAZON.COM SERVICES LLC
AND AMAZON.COM, INC.'S MOTION FOR SUMMARY JUDGMENT**

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. SUMMARY JUDGMENT IS WARRANTED ON ALL CLAIMS ...................................4

    A. Weekend Warrior's Direct Infringement Claim Cannot Survive Summary Judgment ...................................................................................................4

    B. Weekend Warrior's Contributory Infringement Claim Cannot Survive Summary Judgment ...............................................................................12

    C. Weekend Warrior's Vicarious Infringement Claim Cannot Survive Summary Judgment ...............................................................................18

III. PARTIAL SUMMARY JUDGMENT IS WARRANTED ON NUMEROUS ISSUES ....21

    A. Weekend Warrior's Copyright Invalidity Opposition Rests on Legal Errors and Fails to Salvage the Unlawful Use of Preexisting Works .....................................21

        1. Weekend Warrior Identifies No Genuine Disputes of Material Fact .........21

        2. Weekend Warrior Misstates the Copyright Validity Burden.....................22

        3. There Is No Genuine Dispute Over the Copyright Protection of the Preexisting Works .......................................................................23

        4. Weekend Warrior's Designs Are Derivative as a Matter of Law Despite Their Alterations ................................................................23

        5. Weekend Warrior Misapplies the "Pervades" Concept, But Its Designs Fail Even Under That Test....................................................................24

        6. Weekend Warrior's Fair Use Arguments Misapprehend the Governing Standards and Fail to Show Fair Use ........................................................25

    B. The DMCA Safe Harbor Protects Amazon From Liability For The Unsold Listings....................................................................................33

        1. Amazon Reasonably Implements Its Repeat-Infringer Policy Under § 512(i)................................................................................33

        2. The Unsold Listings Were Stored at the Direction of Users Under § 512(c)(1) ...............................................................................35

        3. Amazon Lacked Red-Flag Knowledge of the Unsold Listings ................36

        4. Amazon Acted Expeditiously Upon Obtaining Knowledge ....................37

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

5.  Amazon Lacks the Right and Ability to Control and Received No Direct Financial Benefit ....................................................................................38

C.  Weekend Warrior Provides No Substantive Opposition to Amazon's Attorney Fee Ineligibility Argument ............................................................................40

D.  Weekend Warrior's Claims of Infringement for Five Unasserted Copyrights Cannot Survive Summary Judgment ....................................................41

E.  Weekend Warrior Cannot Obtain Enhanced Statutory Damages for Willful Infringement ............................................................................................43

1.  It is Undisputed That the 22 Stipulated Works Are Not Eligible for Statutory Damages ....................................................................................43

2.  Weekend Warrior Identifies No Evidence Supporting Enhanced Damages for the 26 Copyrights Eligible for Statutory Damages ...........................44

IV.  CONCLUSION ....................................................................................50

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                     <u>Page(s)</u>

*Adams v. Antonelli Coll.*,
   304 F. Supp. 3d 656 (S.D. Ohio 2018) ................................................................. 21

*Allen Trench Safety Corp. v. Ozark Laser Sys.*,
   No. 1:15-CV-255, 2015 WL 4475645 (W.D. Mich. July 21, 2015) ......................... 40

*Am. Broad. Cos., Inc. v. Aereo, Inc.*,
   573 U.S. 431 (2014) ................................................................................................ 5

*American Family Mutual Insurance Co. v. Hollander*,
   705 F.3d 339 (8th Cir. 2013) .............................................................................. 41, 42

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .............................................................................................. 20

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   598 U.S. 508 (2023) ......................................................................................... Passim

*Atari Interactive, Inc. v. Redbubble, Inc.*,
   515 F. Supp. 3d 1089 (N.D. Cal. 2021) ...................................................... 11, 36, 46

*ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
   402 F.3d 700 (6th Cir. 2005) ................................................................................. 24

*Avdeef v. Google, Inc.*,
   No. 4:14-CV-788-A, 2015 WL 5076877 (N.D. Tex. Aug. 26, 2015) ....................... 38

*Average Joe's Ent. Grp., LLC v. SoundCloud, Ltd.*,
   No. 3:16-cv-3294-JPM-JB, 2018 WL 6582829 (M.D. Tenn. Oct. 17, 2018) .................... Passim

*Barnes v. McDonough*,
   No. 1:21-CV-578, 2024 WL 2832649 (S.D. Ohio June 4, 2024) ............................. 20

*Bridgeport Music, Inc., v. UMG Recordings, Inc.*,
   585 F.3d 267 (6th Cir. 2009) ....................................................................... 24, 44, 47

*BWP Media USA, Inc. v. T&S Software Assocs., Inc.*,
   852 F.3d 436 (5th Cir. 2017) ................................................................................... 5

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994) ................................................................................... 25, 26, 31

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Capak v. Epps*,
  662 F. Supp. 3d 463 (S.D.N.Y. 2023) ................................................................ 19

*Capitani v. World of Miniature Bears, Inc.*,
  552 F. Supp. 3d 781 (M.D. Tenn. 2021) ............................................................ 45

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998) ............................................................................... 32

*Columbia Pictures Indus., Inc. v. Fung*,
  710 F.3d 1020 (9th Cir. 2013) ....................................................................... 38, 39

*Compass Homes, Inc. v. Trinity Health Grp., Ltd.*,
  No. 2:13-CV-647, 2016 WL 3406054 (S.D. Ohio June 21, 2016) ..................... 40

*Concord Music Grp., Inc. v. X Corp.*,
  No. 3:23-cv-00606, 2024 WL 945325 (M.D. Tenn. Mar. 5, 2024) ................... 3, 20

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) ....................................................................... Passim

*Davis v. Pinterest, Inc.*,
  601 F. Supp. 3d 514 (N.D. Cal. 2022) ............................................................... 43

*Davis v. Pinterest, Inc.*,
  No. 22-15804, 2023 WL 5695992 (9th Cir. Sept. 5, 2023) ............................... 35

*Ducks Unlimited, Inc. v. Boondux LLC*,
  2017 WL 3579215 (W.D. Tenn. Aug. 18, 2017) ................................................ 48

*Dunham v. Lei*,
  No. CV 20-3716-DMG, 2021 WL 4595808 (C.D. Cal. June 7, 2021) ............... 10

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ........................................................................... 34

*Eur. Pensions Mgmt. Ltd. v. Columbus Life Ins. Co.*,
  No. 1:16-CV-542, 2017 WL 4540233 (S.D. Ohio Oct. 11, 2017) ..................... 20

*Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991) ........................................................................................... 22

*Flowers, Inc. v. Springhill Floral & Gift Supply Co.*,
  No. 5:24-cv-590, 2025 WL 3003931 (N.D. Ohio Oct. 27, 2025) ................... 10, 11

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*H-D U.S.A., LLC v. SunFrog, LLC,*
   311 F. Supp. 3d 1000 (E.D. Wis. 2018) .................................................................. 9, 48

*Hiller, LLC v. Success Grp. Int'l Learning All., LLC,*
   976 F.3d 620 (6th Cir. 2020) ............................................................................. 24, 25

*Io Grp., Inc. v. Veoh Networks, Inc.,*
   586 F. Supp. 2d 1132 (N.D. Cal. 2008) ................................................................. 36

*Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.,*
   796 F.3d 576 (6th Cir. 2015) ................................................................................. 41

*King Recs., Inc. v. Bennett,*
   438 F. Supp. 2d 812 (M.D. Tenn. 2006) ..................................................... 46, 48, 49

*King v. Amazon Corp.,*
   2019 WL 6404882 (W.D.N.C. Nov. 27, 2019) .................................................... 18

*Lee v. Amazon.com Inc.,*
   2023 WL 6931800 (W.D. Wash. July 27, 2023) ................................................. 18

*Lee v. Amazon.com Inc.,*
   2023 WL 6896663 (W.D. Wash. Oct. 19, 2023) ................................................. 18

*Luvdarts, LLC v. AT&T Mobility, LLC,*
   710 F.3d 1068 (9th Cir. 2013) ....................................................................... 3, 13, 15

*Matthew Bender & Co., Inc. v. West Pub. Co.,*
   158 F.3d 693 (2d Cir. 1998) .................................................................................. 13

*Mavrix Photographs, LLC v. LiveJournal, Inc.,*
   873 F.3d 1045 (9th Cir. 2017) .............................................................................. 35

*McGucken v. Shutterstock, Inc.,*
   No. 22 CIV. 00905 (JHR), 2023 WL 6390530 (S.D.N.Y. Oct. 2, 2023) ................ 38

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,*
   545 U.S. 913 (2005) ...................................................................................... Passim

*Michael Grecco Prods., Inc. v. Fandom, Inc.,*
   No. 2:24-CV-05963 MWC (BFMX), 2025 WL 1675668 (C.D. Cal. May 9, 2025) ................ 47

*Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.,*
   361 F.3d 312 (6th Cir. 2004) ............................................................................. 24, 42

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*,
   299 F. App'x 509 (6th Cir. 2008)..................................................................... 42

*Navarro v. Procter & Gamble Co.*,
   515 F. Supp. 3d 718 (S.D. Ohio 2021) ............................................................ 20

*NCR Corp. v. Korala Assocs., Ltd.*,
   512 F.3d 807 (6th Cir. 2008)........................................................................... 12

*Palma v. Johns*,
   27 F.4th 419 (6th Cir. 2022)...................................................................... 3, 19

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007)......................................................................... 33

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007)........................................................................... 20

*Philpot v. L.M. Commc'ns II of S.C., Inc.*,
   343 F. Supp. 3d 694 (E.D. Ky. 2018) .............................................................. 47

*Pickett v. Prince*,
   207 F.3d 402 (7th Cir. 2000)........................................................................... 24

*Remark Home Designs, LLC v. Oak St. Condo Projects, LLC*,
   No. 16-CV-14305, 2017 WL 5714489 (E.D. Mich. Aug. 1, 2017) ......................... 40

*RJ Control Consultants, Inc. v. Multiject, LLC*,
   100 F.4th 659 (6th Cir. 2024)......................................................................... 22

*Russell v. Walmart, Inc.*,
   No. CV 19-5495-MWF, 2023 WL 5506705 (C.D. Cal. Aug. 17, 2023) ................... 10

*SA Music LLC v. Apple, Inc.*,
   592 F. Supp. 3d 869 (N.D. Cal. 2022) ......................................................... 45, 48

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................................. 2, 13, 14

*Stross v. Zillow Inc.*,
   No. 2:21-cv-01489-RAJ-BAT, 2022 WL 3357847 (W.D. Wash. June 21, 2022)............... 11, 12

*Stross v. Zillow Inc.*,
   2022 WL 16574717 (W.D. Wash. Oct. 31, 2022)................................................... 12

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010) ............................................................................. 16

*Tomelleri v. SunFrog, LLC*,
   721 F. Supp. 3d 566 (E.D. Mich. 2024) .............................................. Passim

*Tomelleri v. SunFrog, LLC*,
   No. 1:23-cv-10370, 2023 WL 10676154 (E.D. Mich. Oct. 30, 2023) ..................... 19

*UMG Recordings, Inc. v. Shelter Cap. Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) ....................................................... 36, 37, 39

*UMG Recordings, Inc. v. Veoh Networks Inc.*,
   665 F.Supp.2d 1099 (C.D. Cal. 2009) ................................................... 37

*Varsity Brands, Inc. v. Star Athletica, LLC*,
   799 F.3d 468 (6th Cir. 2015) ............................................................ 22

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018) ................................................ 34, 35, 36, 39

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ........................................................ 2, 6, 8, 48

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   676 F.3d 19 (2d Cir. 2012) ............................................................ 35, 37

*Video Views, Inc. v. Studio 21, Ltd.*,
   925 F.2d 1010 (7th Cir. 1991) .......................................................... 46

*Wallster, Inc. v. Redbubble, Inc.*,
   2024 WL 3313746 (C.D. Cal. May 31, 2024) ............................................ 36

*White v. DistroKid, LLC*,
   766 F. Supp. 3d 451 (S.D.N.Y. 2025) ................................................. 7, 10

*Wildlife Express Corp. v. Carol Wright Sales, Inc.*,
   18 F.3d 502 (7th Cir. 1994) ............................................................ 46

*Wolk v. Kodak Imaging Network, Inc.*,
   840 F. Supp. 2d 724 (S.D.N.Y. 2012) ................................................... 2

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) ............................................... 15, 16

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

<u>Statutes</u>

17 U.S.C. § 101 ................................................................................................... 23

17 U.S.C. § 102 ................................................................................................... 24

17 U.S.C. § 102(a) .............................................................................................. 23

17 U.S.C. § 103(a) ......................................................................................... 23, 24

17 U.S.C. § 107(1) .............................................................................................. 25

17 U.S.C. § 107(2) .............................................................................................. 30

17 U.S.C. § 107(3) .............................................................................................. 31

17 U.S.C. § 107(4) ......................................................................................... 32, 33

17 U.S.C. § 408(a) .............................................................................................. 23

17 U.S.C. § 412 ................................................................................................... 40

17 U.S.C. § 512(c)(1)(A)(iii) .............................................................................. 37

17 U.S.C. § 512(c)(1)(B) ................................................................................ 38, 39

17 U.S.C. § 512(c)(1)(B)(i) ................................................................................. 37

17 U.S.C. § 512(m) ............................................................................................. 37

<u>Rules</u>

Fed. R. Evid. 301 ............................................................................................... 22

<u>Other Authorities</u>

Transcript of Oral Argument, *Cox Commc'ns, Inc. v. Sony Music Ent.*,
    No. 24-171 (U.S. Dec. 1, 2025), available at
    https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-171_ap6c.pdf

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## I. __INTRODUCTION__

Weekend Warrior admits that its grievance in this case is that someone copied its designs without authorization. But on that point, the record is undisputed: Amazon did not. Weekend Warrior offers no evidence that Amazon created the images, selected the images, directed anyone to upload them, or instructed anyone to use one design rather than another. In that way, Amazon operates much like the old brick-and-mortar print shop, providing content-neutral services to small businesses and creators to print the designs *they* select.

Faced with these undisputed facts, Weekend Warrior asks this Court to impose copyright liability merely because Amazon provides content-neutral, automated services that others use to upload their own designs. Accepting that theory would jeopardize the continued operation of *all* online print-on-demand services by requiring them to know of every copyrighted work in existence that a user may copy—an impossible task—or to remove listings upon any allegation, no matter how suspect. Copyright law does not impose such an unworkable regime. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005) (instructing courts to be "mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential" and noting that the law should "do[] nothing to compromise legitimate commerce or discourage innovation having a lawful promise").

Under well-established doctrines of direct, contributory, and vicarious infringement, Weekend Warrior's theories fail as a matter of law.

*First*, Weekend Warrior's failure to show volitional conduct by Amazon—"*conduct* by a person who *causes* in some meaningful way an infringement," not merely the operation of a service—is fatal for its direct copyright infringement claim. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004) (emphasis added) (holding that a service provider is not a direct infringer absent volitional copying). Weekend Warrior argues that this Court should disregard the

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

volitional conduct requirement—but it cannot point to *a single case* in which a court has done so. Nor does it persuasively explain why this Court should ignore other cases that dismiss direct infringement claims against print-on-demand services for lack of volitional conduct. *Tomelleri v. SunFrog, LLC*, 721 F. Supp. 3d 566, 573 (E.D. Mich. 2024) (dismissing direct infringement claim against print-on-demand service for lack of volitional conduct). And on the facts, Weekend Warrior likewise comes up empty: it identifies no evidence that Amazon created the accused designs, chose them, directed their upload, or otherwise acted as the volitional actor. *See VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (finding no volitional conduct where "content of the Listing Platform is populated with data submitted by third-party sources that attested to the permissible use of that data, and Zillow's system for managing photos on the Listing Platform was constructed in a copyright-protective way"). Summary judgment on direct infringement is therefore warranted. *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742–43 (S.D.N.Y. 2012), *aff'd, Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (granting summary judgment on direct infringement claim where "[t]he fact that Wolk's images are copied into product simulations in addition to being transmitted to fulfillment vendors does not constitute a volitional act where the copying is automated").

*Second*, Weekend Warrior's opposition likewise fails to meaningfully respond to the dispositive defects in its contributory copyright infringement claim. It *concedes* that Merch on Demand is "capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984). That means, to prevail, Weekend Warrior must show Amazon's specific *knowledge* of particular infringements and "purposeful, culpable expression and conduct." *Grokster*, 545 U.S. at 937. Weekend Warrior identifies neither. Its pre-suit communications offered no listing-specific, work-specific notice for 43 of its 48 asserted

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

copyrights, and nothing approaching legally sufficient notice for the remainder; and its catalog-wide link is exactly the sort of "generalized notification[]" courts find inadequate. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) (rejecting contributory liability where notice was "indistinguishable from a generalized notification that infringement is occurring"). It also points to no "clear expression or other affirmative steps" encouraging infringement or any engineered feature designed to promote infringement. *Average Joe's Ent. Grp., LLC v. SoundCloud, Ltd.*, No. 3:16-cv-3294-JPM-JB, 2018 WL 6582829, at *5–6 (M.D. Tenn. Oct. 17, 2018) (granting summary judgment). With no evidence of knowledge *or* inducement, the contributory infringement claim fails. *Id.*

*Third*, Weekend Warrior's vicarious infringement theory fails for the reasons Amazon identified in its opening brief: (1) there is no respondeat superior relationship between Amazon and the independent creators who uploaded the accused designs; and (2) it is undisputed that Amazon did not decline to limit infringement. (Doc. 72 at PageID 6991–96.) Weekend Warrior's opposition does not *address* the second requirement—summary judgment can be granted on vicarious liability for that reason alone. *See Palma v. Johns*, 27 F.4th 419, 430 n.1 (6th Cir. 2022) (holding that failure to respond to an argument at summary judgment constitutes forfeiture). On the first requirement, Weekend Warrior asserts only that Amazon has a "business relationship" with Merch creators through the services it provides. But a business relationship is not a principal-agent relationship and cannot satisfy the respondeat superior foundation of vicarious liability. *Concord Music Grp., Inc. v. X Corp.*, No. 3:23-cv-00606, 2024 WL 945325, at *10 (M.D. Tenn. Mar. 5, 2024) (holding that company's "power over" platform users does not make them "agents or subordinates"). Therefore, Weekend Warrior's vicarious infringement claim fails as a matter of law.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Finally*, while the Court need not reach Amazon's alternative partial summary judgment grounds if it grants full summary judgment, Weekend Warrior's opposition fails to raise any genuine dispute as to those arguments. Its validity arguments rest on legal errors and disregard § 103(a)'s bar on unlawful derivative works. Its DMCA arguments misstate the statute and do not dispute the facts showing Amazon qualifies for safe harbor protection. Its attorney-fee opposition offers no substantive response to Amazon's § 412 argument. Its five unpleaded or unsupported copyrights fail as a matter of law. And its willfulness theory does not meaningfully engage with the requirement of actual knowledge or reckless disregard. Therefore, as discussed further below, partial summary judgment is warranted on each of these issues.

## II.    SUMMARY JUDGMENT IS WARRANTED ON ALL CLAIMS

Weekend Warrior does not identify any law or facts to avoid summary judgment on all three of its claims: direct copyright infringement; contributory copyright infringement; and vicarious copyright infringement.

### A.    Weekend Warrior's Direct Infringement Claim Cannot Survive Summary Judgment

Weekend Warrior does not identify any factual disputes precluding summary judgment on its direct infringement claim. Rather, it advances purely legal arguments that: (1) the volitional conduct rule should not be applied, (2) Amazon mischaracterizes the rule, and (3) Amazon's conduct is sufficient to warrant liability under the rule. None of these arguments have merit.

As Amazon detailed in its opening motion, Weekend Warrior "seeks to hold a defendant service provider responsible for copyright infringement by third parties who designed and selected the offending pieces." (Doc. 72 at PageID 6985–86.) The volitional conduct rule bars liability under these circumstances, entitling Amazon to summary judgment on Weekend Warrior's direct infringement claim.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*First,* Weekend Warrior urges this Court to reject the volitional conduct requirement.[1] But it *fails to cite even a single case where a court has done so*. The Court should reject Weekend Warrior's argument for this reason alone.

Indeed, "[e]very Court of Appeals to have considered an automated-service provider's direct liability for copyright infringement has adopted [the volitional-act] rule." *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 573 U.S. 431, 453 (2014) (Scalia, J., dissenting). And "several district courts within the Sixth Circuit have adopted the volitional conduct requirement," with "[n]o Sixth Circuit" case having "rejected the volitional conduct requirement." *Tomelleri*, 721 F. Supp. 3d at 576 & n.6. Furthermore, courts adopted the requirement as an "interpretation of § 106 of the Copyright Act" itself. *BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, 852 F.3d 436, 440 (5th Cir. 2017) (adopting volitional conduct requirement and describing other courts' persuasive reasoning for adopting the requirement); *see also CoStar Grp., Inc.*, 373 F.3d at 550 (analyzing text of Copyright Act and concluding "construing the Copyright Act to require some aspect of volition and meaningful causation—as distinct from passive ownership and management of an electronic Internet facility—receives additional support from the Act's concept of 'copying'").

Weekend Warrior puts forth no argument as to why this Court should reject the volitional conduct requirement. It provides no competing textual analysis of the Copyright Act, advances no pragmatic concerns with applying the doctrine to the facts of this case, and, as mentioned above, fails to cite any cases where a court rejected the requirement. Instead, Weekend Warrior's argument

---

[1] Weekend Warrior also emphasizes that "copyright infringement is a strict-liability offense." (Weekend Warrior's Opp'n to Defs.' Mot. for Summ. J. ("Opp.") at 12.) The volitional conduct requirement analyzes a defendant's actions, not their state of mind. *See CoStar Grp., Inc.*, 373 F.3d at 549 ("While the Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights, it nonetheless requires *conduct* by a person who causes in some meaningful way an infringement."). Thus, Weekend Warrior's strict liability emphasis is irrelevant.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

amounts to an invitation to reject the requirement simply because the Court "is not bound to apply it." (Opp. at 12.) Such an invitation—without substantial reason and contrary to all other courts who have considered the issue—should be rejected.

*Second,* Weekend Warrior claims that Amazon's "framing of the volitional-conduct doctrine is far afield from almost every courts' . . . view of the rule" and "would insulate every 'system owner' from almost any claim of direct infringement." (Opp. at 13.) Neither is accurate.

Amazon's articulation of the standard, that the volitional conduct requirement requires "a relationship between the system owner and the copyrighted work that will permit the owner to prevent infringement of the work without the necessity of monitoring the behavior of third parties," (Doc. 72 at PageID 6984 (quoting *Tomelleri*, 721 F. Supp. 3d at 576)), directly follows from the caselaw on direct infringement. Direct infringement requires "*conduct* by a person who causes in some meaningful way an infringement." *CoStar Grp., Inc.*, 373 F.3d at 549. The inquiry focuses on the actions of the defendant—whether there is "actual infringing conduct with a nexus sufficiently close and causal to the illegal copying that one could conclude that the [defendant] himself trespassed on the exclusive domain of the copyright owner." *Id.* at 550.

When applied to system providers, such conduct leads to direct liability only when providers "are *actively involved* in the infringement," which may be evidenced by "exercis[ing] control [over the infringer] (other than by general operation of [its website])." *VHT, Inc.*, 918 F.3d at 732. At bottom, if a plaintiff seeks to hold a system or service provider liable for direct copyright infringement, they must establish that the provider played an active role in the infringement—that it was a partner in the third party's infringement, a decisionmaker, instead of a passive participant or infringement monitor. *See id.* at 738 (holding defendant not liable for direct infringement where

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

"Zillow's conduct . . . amounts to, at most, passive participation in the alleged infringement of reproduction and adaption rights and is not sufficient to cross the volitional-conduct line").

Absent such volitional conduct, direct copyright infringement claims fail as a matter of law. *See Average Joe's*, 2018 WL 6582829, at *2 ("Courts widely recognize that direct infringement requires 'volitional conduct' by the alleged infringer."); *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 462 (S.D.N.Y. 2025) (concluding plaintiff failed to show that defendant "engaged in volitional conduct and thus [defendant] cannot be liable for direct copyright infringement").

Furthermore, contrary to Weekend Warrior's claims, this requirement does not "insulate" system and service providers from liability. Rather, it helps courts "properly categorize claims against *infringers* as *direct* copyright claims while categorizing claims against *providers* as *secondary* claims." *Tomelleri*, 721 F. Supp. 3d at 575; *see also Grokster*, 545 U.S. at 930 (noting "[w]hen a widely shared service or product is used to commit infringement," plaintiffs can either "enforce rights in the protected work . . . against all direct infringers" or "go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement"). System providers may be *indirectly* liable for lesser conduct, but those "extensions of liability would require a showing of additional elements such as knowledge coupled with inducement or supervision coupled with a financial interest in the illegal copying." *CoStar Grp., Inc.*, 373 F.3d at 549. Thus, the volitional conduct requirement clarifies copyright liability, matching claims with the intended levels of culpable conduct and knowledge.

*Third*, Weekend Warrior argues that Amazon should still be found liable under the volitional conduct rule because "Amazon is no mere passive 'system owner;' it is an active, essential participant in the infringement of the WW Designs." (Opp. at 16.) But what evidence Weekend Warrior *fails* to identify is telling.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Weekend Warrior cites evidence that focuses on Amazon's management and oversight of its Merch on Demand system. Weekend Warrior also claims that Amazon "plays an active role in determining who can become and remain" a content creator for Merch on Demand. (*Id.*) But Weekend Warrior identifies no facts showing that Amazon itself *created* or *selected* any of the allegedly infringing designs. *See VHT, Inc.*, 918 F.3d at 734 (noting direct infringement requires control by defendant "other than by general operation of [its website]"). In other words, Weekend Warrior asserts that Amazon is involved in various *content-neutral* services, but does not cite evidence showing active or volitional involvement in *content* creation or selection.

Weekend Warrior argues that Amazon's "screen[ing]" procedures for violations of its content policies gives it an "active" role in "the designs themselves." (Opp. at 16.) This exact argument was rejected by the Fourth Circuit in *CoStar*. The *CoStar* court held that an internet service provider's "simple gatekeeping function" to address "complaints about copyright violations"—which included requiring users to agree to Terms and Conditions, employee reviews for "obvious signs" of copyright infringement, and blocking irrelevant and infringing content— was insufficient to establish direct liability. *CoStar Grp., Inc.*, 373 F.3d at 556. The Court noted that plaintiff, CoStar, could "hardly request [that the defendant] prevent its users from infringing upon particular [content] and then subsequently seek to hold [defendant] liable as a direct infringer when [defendant] complies with CoStar's request." *Id.*

That is exactly what Weekend Warrior seeks to do here. It urges Amazon to have better screening policies (Opp. at 42–47) but simultaneously tries to use the existing policies to substantiate its direct infringement claims. As in *CoStar*, Amazon's "perfunctory gatekeeping process, which furthers the goals of the Copyright Act," cannot "create liability . . . as a direct

infringer when its conduct otherwise does not amount to direct infringement." *CoStar Grp., Inc.*, 373 F.3d at 556.

Weekend Warrior also claims that Amazon "manufactured, shipped, and sold infringements of the WW Designs." (Opp. at 17.) But that is also insufficient to meet the volitional conduct requirement as a matter of law. In *Tomelleri*, the court dismissed copyright infringement claims against a defendant who was "in the business of marketing, promoting, advertising, and selling apparel" and "displayed" some of plaintiff's copyrighted designs, which were "uploaded by third party sellers, not by SunFrog." 721 F. Supp. 3d at 569, 571, 573.

Weekend Warrior attempts to distinguish *Tomelleri*, arguing that the complaint was "light on detail" and WW's evidence "directly links Amazon to all of the infringing conduct at issue in this case." (Opp. at 14–15.) But again, Weekend Warrior misses the mark. The problem is not a lack of detail; it is a lack of evidence of volitional conduct. Even after full discovery, Weekend Warrior still cannot point to any evidence showing that Amazon did more than operate a service that displays, manufactures, and advertises products bearing designs that third parties created and selected. (*See* Weekend Warrior's Response to Amazon's SPUF ("Resp. to SPUF"), Doc. 84-2 (redacted version) ¶¶ 2–3, 5, 20, 23, 30, 33.) *Tomelleri* and other courts have consistently held that such conduct is insufficient to establish direct copyright liability.[2] *See, e.g.*, *Average Joe's*, 2018 WL 6582829, at *4 (dismissing direct infringement claim because defendant "does not exercise

---

[2] Weekend Warrior also attempts to undercut *Tomelleri* by claiming "[o]n a full record in another case, the same defendant, SunFrog, was deemed a willful trademark infringer." (Opp. at 15 (citing *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1039–41 (E.D. Wis. 2018)).) That other case did not analyze plaintiff's copyright claims, much less the volitional conduct doctrine's application to those claims. *See H-D U.S.A.*, 311 F. Supp. 3d at 1026 (observing neither "judgment or damages" were sought with respect to plaintiff's "claim of copyright infringement"). That case, which analyzed a different claim and conduct from a different defendant, has no bearing on the copyright issues here as applied to Amazon's conduct.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

control of the selection of any material for upload, download, transmission, or storage; users exercise that control"); *White*, 766 F. Supp. 3d at 462 (dismissing direct infringement claim because though "DistroKid operates the system that takes the necessary steps to transmit the songs in the proper format to the platforms chosen by the user," the existence of that system does not show that the defendant "played some deliberate role in the alleged infringement, such that the platform morphed from a passive provider of a space in which infringing activities happened to occur to an active participant in the process of copyright infringement") (cleaned up).

The cases Weekend Warrior cites do not hold otherwise. In most of Weekend Warrior's cases, the defendant had an active role in designing and selecting the images at issue. *See Russell v. Walmart, Inc.*, No. CV 19-5495-MWF, 2023 WL 5506705, at *5–6 (C.D. Cal. Aug. 17, 2023) (noting that Walmart's sales from the listings at issue were "considered first-party sales" and that Walmart had "final say when it comes to the content" and "can essentially override the decisions in the content uploaded by the suppliers" (internal quotation marks omitted)); *Dunham v. Lei*, No. CV 20-3716-DMG, 2021 WL 4595808, at *1–2 (C.D. Cal. June 7, 2021) (noting that only "some of the designs on [defendant's] websites are designed and uploaded by third parties" and one of defendant's websites "has an entire section of the site specifically marketing [plaintiff's] products under a header displaying his name and depicting him sitting on a couch with his characters" and listing the products "as being 'From [Plaintiff]'").

Another of Weekend Warrior's cited cases, *Flowers, Inc. v. Springhill Floral & Gift Supply Co.*, No. 5:24-cv-590, 2025 WL 3003931 (N.D. Ohio Oct. 27, 2025), is illustrative. In *Flowers*, two defendants that "manufacture, import, and sell goods to florists," sought summary judgment for plaintiff's direct infringement claim based on the volitional conduct doctrine. *Id.* at *1, *4. The defendants purchased items featuring copyrighted designs from a third party and then "received

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

them, marketed them, and distributed them"—essentially reselling the copyrighted designs as their own. *Id.* at *2. The Court held that this conduct "directly caused the alleged infringement" and thus satisfied the volitional conduct requirement. *Id.* at *5. In its analysis, the Court explicitly distinguished defendants' actions from cases where "a third party used a product or service provided by the defendant to copy and/or distribute copyrighted material." *Id.* The Court concluded that in those cases the "defendant's involvement in the alleged infringement was passive and largely automated" but the undisputed facts showed "non-passive and non-automatic involvement" by defendants who not only "market[ed]" and "distribut[ed]" the infringing designs but also "purchas[ed]" and "receiv[ed]" them. *Id.* Thus, *Flowers* supports Amazon's position that mere third-party use of a defendant's "product or service . . . to copy and/or distribute copyrighted material" is insufficient to meet the volitional conduct requirement. *Id.*

The same is true for yet another case Weekend Warrior cites—*Atari Interactive, Inc. v. Redbubble, Inc.*, 515 F. Supp. 3d 1089 (N.D. Cal. 2021). Weekend Warrior claims that *Atari* found a "question of material fact over whether Redbubble acts with volitional conduct." (Opp. at 18.) Not so. The Court in *Atari* stated "Redbubble's only 'act'—providing a system where artists can upload their designs for display on a picture of a product—does not subject it to direct liability because Redbubble does not select the content, exercise control beyond the general operation of its website, or instigate the display." *Atari*, 515 F. Supp. 3d at 1112; *see also Stross v. Zillow Inc.*, No. 2:21-cv-01489-RAJ-BAT, 2022 WL 3357847, at *6 (W.D. Wash. June 21, 2022) ("However, in *Atari*, the Northern District of California found, just like in *VHT*, that the defendant was not the volitional cause of the automated reproduction and display on its website of images that users uploaded to be printed on physical goods. It held that a fact question existed about whether the website operator later instigated the manufacturing and sale of goods bearing those images with

no involvement from the artists who uploaded the designs."[3] (internal quotation marks and citations omitted)), *report and recommendation adopted*, 2022 WL 16574717 (W.D. Wash. Oct. 31, 2022).

Overall, Weekend Warrior has failed to establish a material dispute of fact sufficient to save its direct infringement claim. On the undisputed record, Amazon neither creates nor selects the designs Weekend Warrior accuses of infringement. Accordingly, Amazon lacks the volitional conduct required for direct liability as a matter of law.

### B. Weekend Warrior's Contributory Infringement Claim Cannot Survive Summary Judgment

Contributory infringement requires both (1) "purposeful, culpable expression and conduct" that induces, causes, or materially contributes to them and (2) knowledge of specific infringing acts. *Grokster*, 545 U.S. at 915; *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008). (*See* Mot. 21–22). Weekend Warrior establishes neither. Its opposition seeks to impose liability on Amazon for its neutral, largely automated operation of Merch—a service it concedes has substantial, noninfringing uses—based on assertions of a generalized awareness that undefined "Merch creators" were "uploading infringements of the WW Designs to Merch." (Opp. at 19.) That is not enough to create a triable issue on either element, and its contributory infringement claim cannot survive summary judgment.

*First*, Amazon explained in its opening brief, *Sony* held that merely providing "copying equipment" or other "articles of commerce" does not give rise to contributory infringement

---

[3] Weekend Warrior does not argue that Amazon "instigated" any manufacturing and sale of its goods, much less that Amazon did so "with no involvement from the artists who uploaded the designs." *Id.* Thus, Weekend Warrior has waived argument on this ground.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

liability where the product is "capable of substantial noninfringing uses." (Doc. 72 at PageID 6987–89, citing *Sony*, 464 U.S. at 442, and collecting other cases).

Weekend Warrior concedes this point. It admits "[p]otential non-infringing uses of Merch" (Opp. at 19) and does not dispute that Merch contains vast amounts of original, licensed, public-domain, and transformative content, including a licensed Merch Collab channel, and that Amazon devotes significant resources to screening and removing materials that violates Amazon's policies, including the alleged infringing content at issue. (Resp. to SPUF ¶¶ 7–8, 21–22, 24–26, 30–36.) That alone forecloses its contributory liability theory. (Doc. 72 at PageID 6987–89, citing *Sony*, 464 U.S. at 442; *Matthew Bender & Co., Inc. v. West Pub. Co.*, 158 F.3d 693, 706–07 (2d Cir. 1998) (affirming summary judgment of contributory copyright infringement claim where product had "substantial, predominant and noninfringing uses"); *Average Joe's*, 2018 WL 6582829, at *5–6 (granting summary judgment where defendant had substantial non-infringing uses and "numerous tools to help prevent and stop copyright infringement and has actively addressed issues of infringement"); *Luvdarts*, 710 F.3d at 1072 (no contributory liability where carrier "engage[d] in the equivocal conduct of selling an item with substantial lawful as well as unlawful uses")).

Unable to escape *Sony*, Weekend Warrior simply re-labels neutral platform mechanics as "material contribution," and claims Amazon miscasts its theory of liability as based on the "mere creation of Merch" (Opp. at 19.) But its arguments in opposition rest on precisely that premise. Weekend Warrior contends Amazon "materially contributed" by (1) "choosing" the "articles" on which creators' designs appear and "displaying them accordingly," and (2) "handling every step in the process besides creating the designs themselves." (*Id*.) Even taken at face value, these assertions describe nothing more than automated templating, rendering, printing, and fulfillment—

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

neutral operations of a legitimate service that do not approach the "purposeful, culpable" assistance *Grokster* requires. 545 U.S. at 937.

Courts have consistently rejected attempts to transform such neutral functions into contributory infringement. *See Average Joe's*, 2018 WL 6582829, at *3–6 (no contributory liability where platform provided tools for users but plaintiff failed to show "clear expression or other affirmative steps" to foster infringement); *Tomelleri*, 721 F. Supp. 3d at 573 (dismissing contributory copyright claim against print-on-demand service where plaintiff "did not show how [defendant] might have induced or encouraged another to infringe"); *Grokster*, 545 U.S. at 939 n.12 ("mere[] . . . failure to take affirmative steps to prevent infringement" is insufficient); *id.* at 937 (liability is premised on "purposeful, culpable expression and conduct").[4] Weekend Warrior cites no contrary authority, and makes no effort to distinguish Amazon's cases. Put simply, because Weekend Warrior identifies no feature of Merch designed to promote infringement, no "clear expression" encouraging it, and no post-notice conduct facilitating it, its "material contribution" theory fails as a matter of law. *Average Joe's*, 2018 WL 6582829, at *6.

*Second*, even setting material contribution aside, Weekend Warrior independently fails to satisfy the knowledge factor. Weekend Warrior asserts that Amazon "knew or had reason to know" that Merch creators were uploading infringing versions of "the WW Designs." (Opp. at 19.) Weekend Warrior relies on three facts to salvage its failure to provide adequate notice (*Id.*, citing ECF No. 66-1 ¶¶ 41–66), but none comes close to what the law requires.

---

[4] *See also* Transcript of Oral Argument, *Cox Commc'ns, Inc. v. Sony Music Ent.*, No. 24-171 (U.S. Dec. 1, 2025), available at https://www.supremecourt.gov/oral_arguments/argument_transcripts/2025/24-171_ap6c.pdf (Gorsuch J. at 16:16-21: "And we've said that many times, knowledge isn't enough. There are various ways one can infer purpose, such as through inducement or --or the fact that the thing you're selling doesn't have any other lawful use."; *see also* Kagan, J. at 68:14-17, emphasizing that the "real distinction between non-feasance and misfeasance" is a "big principle[]" of contributory liability).

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

First, it cites a 2021 complaint sent from Tim Whelan's personal Gmail address about its *Statue of Libeerty* design – a work not asserted in this case. (Opp. at 19; Doc. 66-1 ¶¶ 41–57, 60.) A notice concerning an entirely different work cannot establish knowledge of infringement of the 48 copyrights asserted here. *See, e.g.*, *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 764 (N.D. Cal. 2021) (dismissing contributory copyright claim where there was no allegation that plaintiff notified defendant of "specific infringing products" infringing on copyrights-at-issue).

Second, it points to a March 2022 notice (Opp. at 19; Doc. 66-1 ¶¶ 61–62), which identified only *one* asserted work (*Bad Day to Be a Beer*) and one allegedly infringing ASIN, and which failed to comply with Amazon's requirement at least because the email account failed to complete the verification process. (*See* Doc. 72 at PageID 6990.) Even if this notice had all information required by Amazon and complied with DMCA requirements, this notice cannot establish actual or constructive knowledge of the dozens of remaining asserted works or hundreds of listings Plaintiff now challenges. *See, e.g., Luvdarts*, 710 F.3d at 1073 (no knowledge where pre-suit notices did not identify which specific works were infringed, the alleged infringe, or when infringement occurred).

Third, Weekend Warrior relies on its May 2022 notice, which identified *no* specific asserted work or listing and instead linked to its "entire t-shirt catalogue." (Opp. at 9, 20, 50; Resp. to SPUF ¶¶ 67–71, 73.) But a catalog-wide link is the opposite of the specificity the law requires; it highlights, rather than cures, the absence of any work- or listing-specific notice. Courts reject generalized alerts as insufficient to confer knowledge. *See Luvdarts*, 710 F.3d at 1073 (holding that notices containing "lists of titles" without identifying "which of these titles were infringed, who infringed them, or when" were insufficient and "indistinguishable from a generalized notification that infringement is occurring"); *YZ Prods., Inc.*, 545 F. Supp. 3d at 764 (dismissing

contributory claim where plaintiff "never alleges notice of specific infringing products"); *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 108–09 (2d Cir. 2010) (trademark case analogizing to copyright law to affirm judgment for defendant because plaintiff failed to identify "particular sellers" engaging in infringement).

Weekend Warrior does not confront any of the authority Amazon cited in its opening brief (Doc. 72 at PageID 6989–91), nor does it explain how its undifferentiated, catalog-wide notice could satisfy the settled requirement of work- and listing-specific notice. And it nowhere disputes the critical fact that once Amazon received information sufficient to verify Weekend Warrior's identity and to tie its claims to specific listings, Amazon promptly removed those listings—often before any sales occurred—and, acting in good faith, terminated approximately ███ third-party creator accounts. (Resp. to SPUF ¶¶ 86–97.)

The gaps in its theory are fatal. Weekend Warrior effectively asks the Court to treat all 48 asserted copyrights as a single undifferentiated mass of "WW Designs," and to infer that Amazon knew about all of them despite receiving no pre-suit notice for 43 of them. But there is no genuine dispute that: (1) before 2022, Weekend Warrior provided Amazon no notice identifying any asserted work or any accused listing (Resp. to SPUF ¶¶ 65–66); (2) on March 28, 2022, after Amazon conducted a review given red flags associated with Mr. Whelan's notices, ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ (*id.* ¶¶ 77–80); and (3) even if Amazon had reviewed those submissions which ████████████████████, Weekend

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Warrior only specifically identified 5 of the 48 asserted copyrights and 21 of the 560 accused infringing listings in any pre-suit notices (*id.* ¶¶ 67–69).

Because Weekend Warrior cannot identify sufficiently specific notices conferring knowledge of any specific infringement for the vast majority of the asserted copyrights and accused listings, the knowledge element fails as a matter of law—warranting summary judgment for Amazon as to all. *Grokster*, 545 U.S. at 937 ("mere knowledge of infringing potential or of actual infringing uses" is insufficient).

At a minimum, Amazon is entitled to summary judgment on all asserted claims tied to listings for which Weekend Warrior provided no pre-suit notice. Contributory liability requires notice of *specific infringing listings, see supra* at 16–17, and Weekend Warrior identifies no evidence that it ever provided Amazon with listing-level information for any asserted copyright. Weekend Warrior concedes it provided Amazon with notices relating only to five specific asserted copyrights, but does not establish that any of these notices supplied the requisite listing-specific details the law requires. (Resp. to SPUF ¶ 67; AMZ-WWC_00030592, Doc. 74-24 at PageID 8390 (*Bad Day to Be a Beer*, *Bad Day to Be a Beer—America Edition*, *Leprechaun Griddy*, *Pat McCrotch*, and *Ameri-CAN Eagle*).) As to every other work—and every other listing—Weekend Warrior furnished no pre-suit identification at all, leaving Amazon without the listing-level knowledge necessary to investigate or remove anything.

Even assuming that Weekend Warrior *had* provided the requisite work-and-listing specific information required for any copyright-at-issue, any notice could affect only sales occurring *after* Amazon received it. Weekend Warrior advances no theory, and cites no authority, that would

permit liability for pre-notice sales. Summary judgment is therefore warranted for all un-noticed listings across all asserted copyrights—and, as to the five works with any arguable notice, for all sales from those listings prior to notice.

***

In the end, Weekend Warrior fails to raise a triable issue for contributory infringement. It concedes Merch's overwhelmingly lawful use; it points only to neutral, largely automated functions; it does not deny that 43 of the 48 copyrights-at-issue and the vast majority of allegedly infringing listings were never identified in any pre-suit notice; and it cannot dispute that Amazon acted swiftly once it had adequate notice. On this record, no reasonable jury could impose contributory liability. *See Grokster*, 545 U.S. at 937.[5]

### C. Weekend Warrior's Vicarious Infringement Claim Cannot Survive Summary Judgment

Weekend Warrior's vicarious infringement theory fails for the same fundamental reasons stated in Amazon's opening brief: (1) it is undisputed that Amazon did not decline to limit infringement, and (2) there is no respondeat superior relationship between Amazon and the

---

[5] Courts have previously applied *Grokster* to reject similar contributory liability theories against Amazon. *See, e.g., Lee v. Amazon.com Inc.*, 2023 WL 6931800, at *9 (W.D. Wash. July 27, 2023), *report & recommendation adopted*, 2023 WL 6896663 (W.D. Wash. Oct. 19, 2023) (granting summary judgment on contributory infringement where plaintiff's five takedown notices were insufficient to establish knowledge and plaintiff "identified no affirmative steps taken by Amazon to foster infringement"; holding that "Amazon's passive role in enabling the sale of a product that bears no indication it contains allegedly infringing content is far from intentional inducement."); *King v. Amazon Corp.*, 2019 WL 6404882, at *5 (W.D.N.C. Nov. 27, 2019) (granting summary judgment; Amazon's "passive role" in providing a self-publishing service that requires users to confirm they are not infringing "does not translate" to inducement, and Amazon lacks the "practical ability to supervise the millions of" third-party sellers who use its services).

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

independent creators who uploaded the accused designs. (Doc. 72 at PageID 6991–96.) Both elements are required; Weekend Warrior cannot establish either.

*First*, Amazon did not "decline" to limit infringement on Merch on Demand. *Grokster*, 545 U.S. at 914. Far from being indifferent to potential infringement on Merch, Amazon maintains and enforces robust anti-infringement policies, employs automated and manual screening tools, and terminates repeat violators. (*See* Resp. to SPUF ¶¶ 21–36.)

In Opposition, Weekend Warrior *does not address this argument at all.* Nor does it dispute the vast majority of the underlying facts. (*See* Resp. to SPUF ¶¶ 21–36.) That means that Weekend Warrior has forfeited any opposition to this point as a matter of law. *See Palma*, 27 F.4th at 430 n.1 ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments." (emphasis omitted)); *Capak v. Epps*, 662 F. Supp. 3d 463, 465 (S.D.N.Y. 2023) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks omitted)). Accordingly, the Court must dismiss Weekend Warrior's vicarious copyright infringement claim. *See Tomelleri v. SunFrog, LLC*, No. 1:23-cv-10370, 2023 WL 10676154, at *7 (E.D. Mich. Oct. 30, 2023) (no vicarious liability where service provider did not decline to limit infringement), *report and recommendation adopted*, 721 F. Supp. 3d 566 (E.D. Mich. 2024).

*Second*, even if it had not forfeited argument on a required element, Weekend Warrior does not dispute with caselaw Amazon's argument that vicarious liability requires a principal-agent or respondeat superior relationship. Instead, Weekend Warrior argues that a mere business relationship between Amazon and Merch creators—arising from Amazon's provision of platform services and enforcement of general policies—is enough to satisfy the control element. (Opp. at

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

20.) That is not the law. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) ("Defendants could likely take certain steps that may have the indirect effect of reducing infringing activity" but they do not have "any ability to directly control that activity, and the mere ability to withdraw a financial 'carrot' does not create the 'stick' of 'right and ability to control' that vicarious infringement requires.").

Instead, courts are clear that vicarious infringement is an "outgrowth . . . of respondeat superior," imposed only where "the offending party's actions were in some sense an extension of the defendant's own conduct." *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718, 752–53 (S.D. Ohio 2021). Contrary to Weekend Warrior's argument, commercial relationship or platform-level "power over" users does not transform them into agents or subordinates. *Concord Music Grp.*, 2024 WL 945325, at *10 (no vicarious liability because some degree of company "power over" customers "does not turn customers into even loose equivalents of agents or subordinates").

Therefore, because the only control Weekend Warrior alleges is Amazon's ordinary, platform-level oversight and services,[6] its agency—and thus vicarious liability—theory is foreclosed as a matter of law. Summary judgment must be granted.

---

[6] As Weekend Warrior itself admits, "All designs sold on Amazon Merch on Demand are created by Content Creators." (Resp. to SPUF ¶ 5.) Weekend Warrior's failure to respond to Amazon's Proposed Undisputed Fact is deemed an admission. *See, e.g., Eur. Pensions Mgmt. Ltd. v. Columbus Life Ins. Co.*, No. 1:16-CV-542, 2017 WL 4540233, at *1 (S.D. Ohio Oct. 11, 2017) ("proposed factual statements properly supported with record evidence and not specifically denied by the opposing party are deemed admitted"); *Barnes v. McDonough*, No. 1:21-CV-578, 2024 WL 2832649, at *1 (S.D. Ohio June 4, 2024) (deeming defendants' proposed undisputed facts admitted when plaintiff did not provide response), *aff'd sub nom. Barnes v. Sec'y of Veterans Affs.*, No. 24-3576, 2025 WL 1993601, *1 n.1 (6th Cir. July 17, 2025). The failure is also a violation of this Court's Standing Order on Civil Procedures and a failure to meet Weekend Warrior's burden to provide specific admissible evidence precluding summary judgment. *See* Standing Order on Civil Procedures, I(F)(2)(b); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (non-moving party "must set forth specific facts showing there is a genuine issue for trial"). While Amazon points to Weekend Warrior's lack of response to Proposed Undisputed Fact No. 5 in particular

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

### III. PARTIAL SUMMARY JUDGMENT IS WARRANTED ON NUMEROUS ISSUES

#### A. Weekend Warrior's Copyright Invalidity Opposition Rests on Legal Errors and Fails to Salvage the Unlawful Use of Preexisting Works

Weekend Warrior's opposition to Amazon's § 103(a) validity challenge rests on legal errors—misstating the burden of proof, misunderstanding originality doctrine, and misapplying fair use—while failing to identify any factual dispute. Under a proper reading of the law, Amazon is entitled to partial summary judgment for copyright infringement claims regarding the 21 unlawful derivative works.

##### 1. Weekend Warrior Identifies No Genuine Disputes of Material Fact

Weekend Warrior does not dispute that Daniel Whelan used preexisting works to create the asserted works without authorization, or the identity of both sets of works for comparison purposes. (Resp. to SPUF ¶¶ 106, 107, 110, 111, 132, 145, 150, 152, 161, 167, 173, 179, 188, 194, 199, 205, 210, 217, 224, 231, 237.[7]) For 16 of the 21 works, the source material and creator are well-known, e.g., Budweiser, Corona, and Coca-Cola. For four works, Weekend Warrior suggests—without clarity—that it may not have copied the identified preexisting work despite the clear resemblance. (Resp. to SPUF ¶¶ 214 (*Can't Get Hungover*), 228 (*Papa Woody Plumbing*), 234 (*Pat McCrotch Irish Pub*), 240 (*Ameri-Caw*). But it never affirmatively denies copying, likely because it failed to preserve the preexisting works, as discussed in Amazon' Opposition to

---

here, the same law applies to the other proposed undisputed facts Weekend Warrior fails to properly address.

[7] For three side-by-side comparisons, Weekend Warrior's Response states "Disputed" but with no explanation or citation to the record. (Resp. to SPUF ¶¶ 120, 126, 139.) As a result, Amazon's proposed facts are admitted. *See supra* note 6; *Adams v. Antonelli Coll.*, 304 F. Supp. 3d 656, 659 n.2, 650 n.4 (S.D. Ohio 2018) (treating proposed undisputed fact as undisputed when non-movant disputed but did not cite evidence). It appears the "Disputes" may be an inadvertent editing error because the three preexisting works are well known—the Budweiser, Corona, and Lite designs—and Weekend Warrior admits to all other side-by-comparisons, including others that contain the same Budweiser and Corona designs.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

Weekend Warrior's Motion for Summary Judgment. (Doc. 86 at PageID 10870.) Weekend Warrior's Response to Amazon's Statement of Proposed Undisputed Facts claims disputes yet often identifies no contrary evidence demonstrating a genuine dispute of material *fact*. (Resp. to SPUF ¶¶ 114, 119–21, 125–27.)[8] These facts are thus effectively admitted. *See supra* note 6.

## 2. <u>Weekend Warrior Misstates the Copyright Validity Burden</u>

Weekend Warrior incorrectly flips the burden on Amazon "to prove that WW's copyrights are invalid." (Opp. at 23; *see also id.* at 25 ("Amazon cannot meet its burden to invalidate the WW Designs").) But a copyright claimant bears the burden to prove "ownership of a valid copyright." *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 667 (6th Cir. 2024) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). Weekend Warrior's burden arguments—that Amazon must prove infringement of the preexisting works, that the preexisting works pervade, and lack of fair use (Opp. at 23, 25–26)—simply repackage issues that go to the validity of its own copyrights under § 103(a), on which it bears the burden.[9]

---

[8] In response to many Amazon statements or proposed undisputed facts, Weekend Warrior vaguely responds, "Disputed; see full response regarding this design," but the "full response" offers legal argument (such as reciting the § 107 fair-use factors) rather than factual rebuttal. (Resp. to SPUF ¶¶ 119–121, 125–127, 129–131, 135, 138–140, 144, 148–149, 151, 153–154, 158, 160, 164, 166, 170, 176, 178, 182, 191, 197, 202, 215, 222.)

[9] The presumption of validity that stems from a copyright registration certificate shifts only the burden of production, not persuasion. Fed. R. Evid. 301. Once a plaintiff relies on a registration certificate as prima facie evidence of validity under § 410(c), the defendant need only "present evidence that the plaintiff's copyrights are invalid." *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015), *aff'd*, 580 U.S. 405 (2017). Amazon has done so by showing that Mr. Whelan unlawfully incorporated preexisting copyrighted material into the asserted designs; the burden of persuasion to prove valid copyrights in light of that evidence does not shift away from Weekend Warrior. Fed. R. Evid. 301.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

### 3. There Is No Genuine Dispute Over the Copyright Protection of the Preexisting Works

The Copyright Act denies protection for work that unlawfully incorporates "preexisting material in which copyright subsists." 17 U.S.C. § 103(a). Copyright "subsists" automatically upon fixation, 17 U.S.C. § 102(a), and "registration is not a condition of copyright protection," 17 U.S.C. § 408(a).[10] Amazon has supplied undisputed evidence of preexisting material in which copyright subsists, namely, the preexisting works themselves. (Resp. to SPUF ¶¶ 106–107, 110–111, 120, 126, 132, 139, 145, 150, 152, 161, 167, 173, 179, 188, 194, 199, 205, 210, 217, 224, 231, 237.) Weekend Warrior has come forward with no evidence that copyright does not subsist in any of these works—and even admits that the preexisting material it used "may, to some extent, be protected by some form of intellectual property law." (*Id.* ¶ 107.)

### 4. Weekend Warrior's Designs Are Derivative as a Matter of Law Despite Their Alterations

Weekend Warrior does not deny that its works satisfies the § 101 definition of derivative work as one that is "based upon" and "recast[s]" a preexisting work. 17 U.S.C. § 101. Instead, Weekend Warrior argues that its works are not substantially similar to the preexisting works. But Weekend Warrior's copying is instantly recognizable. (Doc. 72, Appendix B at PageID 7031–42.) For many designs, it even admits its own designs "mimic" the preexisting ones. (Resp. to SPUF ¶¶ 110, 115, 119, 131, 138, 149, 154, 178, 187, 198.) Weekend Warrior focuses on details, such as changes to colors or the addition of background stars, while ignoring that Mr. Whelan copied the core expression of the preexisting works. (Opp. at 24–25, 39–40.) But the "substantial similarity"

---

[10] In its response to Amazon's Appendix B, Weekend Warrior argues that Amazon's § 103(a) challenge fails because Amazon "has not furnished a Copyright registration certificate" for the preexisting work that Weekend Warrior copied. (*See* Doc. 84-1 at 1, 4, 7, 9, 13, 16, 19, 21, 25, 27, 30, 31, 37, 39, 42, 44, 47, 49, 53, 56, 59.) But § 103(a) imposes no such requirement and Weekend Warrior cites no caselaw supporting its claim.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

inquiry considers work broadly, for example, by asking "whether a lay observer would consider the works *as a whole* substantially similar to one another." *Bridgeport Music, Inc., v. UMG Recordings, Inc.*, 585 F.3d 267, 275 (6th Cir. 2009) (emphasis added) (quoting *Murray Hill Publ'ns, Inc. v. Twentieth Century Fox Film Corp.,* 361 F.3d 312, 320 (6th Cir. 2004)). Furthermore, the Sixth Circuit recognizes that "trivial variation" from an underlying work is insufficient to render a derivative copyrightable. *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 712 (6th Cir. 2005).

Weekend Warrior also argues that because its works contain original elements, they cannot be derivatives. (Opp. at 22, 24.) But § 102's originality requirement and § 103(a)'s exclusion for unlawful derivative works are separate validity inquiries. Under § 106(2), copyright protection includes the exclusive right "to prepare derivative works based upon the copyrighted work," and, under § 103(a), copyright protection extends to lawful original derivative works. Thus, a work may satisfy § 102's originality requirement and still be invalid under § 103(a) because it unlawfully incorporates preexisting material. *See, e.g., Pickett v. Prince*, 207 F.3d 402, 405–06 (7th Cir. 2000) ("Pickett could not make a derivative work based on the Prince symbol without Prince's authorization even if Pickett's guitar had a smidgeon of originality.").[11]

### 5.     <u>Weekend Warrior Misapplies the "Pervades" Concept, But Its Designs Fail Even Under That Test</u>

"In most cases regarding derivative works, . . . the determination that a work is derivative would necessarily imply that the preexisting work 'pervades' the derivative." *Hiller, LLC v.*

---

[11] Even though originality is not relevant to whether the asserted designs are valid under § 103(a), in any case the designs do not satisfy § 102's originality requirement, as set out in Amazon's Opposition to Weekend Warrior's Motion for Summary Judgment. *See* Doc. 86 at PageID 10868–10875 ("Mere 'sweat of the brow,'" reproductions are "insufficient to render a copy eligible for copyright protection," even if the copies reflect "physical skill or special training.") (quoting *ATC Distrib. Grp.*, 402 F.3d at 712).

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

*Success Grp. Int'l Learning All., LLC*, 976 F.3d 620, 629 (6th Cir. 2020). The current case is one of those "most cases." The asserted works are single, unified images—not multi-section, multi-topic manuals as in *Hiller*. *Id.* at 623–25. These single images were created by copying the core expression of a preexisting copyrighted image. The presence of unauthorized material "necessarily" pervades the work under *Hiller* as they are the topic and essence of the work itself. A side-by-side comparison confirms as much. (Doc. 72, Appendix B at PageID at 7031–42.)

      **6.**      **Weekend Warrior's Fair Use Arguments Misapprehend the Governing Standards and Fail to Show Fair Use**

While the fair use statute identifies four nonexclusive factors, disputes involving copied visual artworks often turn on the first—"the purpose and character of the use." 17 U.S.C. § 107(1). Weekend Warrior's arguments misapprehend how that factor operates and, in turn, misapply the remaining factors as well.

      **a)**      **The First Factor Does Not Turn on Whether the Derivative Adds New Meaning**

Weekend Warrior's legal theory for the first fair use factor was rejected in *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023). Weekend Warrior argues fair use turns on whether the new work adds a new aesthetic, meaning, or message to a preexisting work, relying on a quotation from *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994). (Opp. at 27.) *Warhol* expressly cautioned against this reading: "*Campbell* cannot be read to mean that § 107(1) weighs in favor of any use that adds some new expression, meaning, or message." 598 U.S. at 541*; id.* at 543 ("'new expression, meaning, or message' was not the test"). Instead, the first factor requires considering the *specific* "meaning of a secondary work, as reasonably can be perceived . . . to determine whether the purpose of the use is distinct from the original, for instance, because the use comments on, criticizes, or provides otherwise unavailable information about the original." *Id.* at 544–45.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

The Supreme Court has made clear that fair-use parody must comment on the original to apply. As *Campbell* explained, "the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, comments on that author's works," that when "commentary has no critical bearing on the substance or style of the original composition, . . . the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish)," and that copying "merely . . . to get attention" does not count. 510 U.S. at 580. Because Weekend Warrior defends much of its copying as parody, it must identify the reasonably discernible specific messages in its new works that have a critical bearing on the originals. *Warhol*, 598 U.S. at 544–45. Weekend Warrior has made no such showing. Its deposition testimony confirms that several designs do not comment on the originals at all, and every design is marketed and sold as commercial merchandise—the precise commercial context *Warhol* held weighs against fair use. 598 U.S. at 538.

The first factor disfavors fair use for these individual works because none contain the critical commentary *Warhol* and *Campbell* require:

- *Protect the Charms* does not parody the Notre Dame mascot or the Lucky Charms images it copies. Weekend Warrior argues the "parodic character" is "*obvious*." (Opp. at 30.) While the copying is obvious, the legal justification is not, especially because Weekend Warrior does not articulate the commentary. Its brief does not explain the commentary the reader should discern from quoted testimony. (Opp. at 30–31.) The closest the testimony comes to specifying commentary is: (1) "a play on the cereal" where the Lucky Charms leprechaun is happy but the leprechaun in the asserted work is angry; and (2) for the copied Notre Dame mascot, "poking fun at their 'protect the house' slogan and their character of a leprechaun." (Opp. at 31.)

Making "a play" and "poking fun" are vague descriptions, not specific commentary. Weekend Warrior defends its copying as parody but fails to articulate the commentary this parody supposedly delivers—because it delivers none. Weekend Warrior also argues the design does not supplant the originals, but non-displacement is not the test—critical commentary is.

- *Do You Feel Lucky* does not parody *Dirty Harry*. Weekend Warrior describes a "reimagining": "a hardboiled, hardnosed detective" recast as "a threatening leprechaun." (Resp. to SPUF ¶ 196.) The "reimagining" is slight: Clint Eastwood— and his familiar scowl—appear in Weekend Warrior's copy with just a hat and pipe added. Like making a play and poking fun, "reimagining" is not specific commentary and Weekend Warrior again specifies none. It asserts the design conveys new "expression, meaning, or message," but that is "not the test." *Warhol*, 598 U.S. at 543. Finally, Amazon's contention that Weekend Warrior admitted the design contains no commentary does not twist its "testimony into knots." (Opp. at 32.) The testimony admits, "I don't know if comment is the right word, but I would say it's kind of a funny." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2828:23–2829:2; Resp. to SPUF ¶ 197.)

- *Enjoy Beer* and *Enjoy Beer – Ugly Sweater* do not parody the Coca-Cola Santa they copy. Weekend Warrior argues the designs parody Coca-Cola commercials by recasting Santa as a beer fan, but swapping beverage is not commentary on Coca-Cola's use of Santa. Asked whether the designs convey any such message, Weekend Warrior responded, "No, sir." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID at 2835:8–10; Resp. to SPUF ¶¶ 170, 176.)

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

- The challenged Bad Day designs (*Bad Day to Be a Beer – \*America Edition\**, *Bad Day to Be a Cerveza*, and *Poor Day to Be a Pilsner*) do not parody the Budweiser, Corona, or Miller Lite designs they copy. Weekend Warrior claims the designs juxtapose beer commercials' presentations of beer as passive victims "panicking at the prospect of being drank to death." (Resp. to SPUF ¶¶ 113, 128, 141.) But depicting beer in peril is not commentary on those brand designs—it uses them as recognizable backdrops for humor, which is what *Warhol* and *Campbell* prohibit. Weekend Warrior conceded as much: asked what commentary *Bad Day to Be a Beer – \*America Edition\** offers about Budweiser, Mr. Whelan answered: "I'm not sure, like, what commentary." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2792:23–2793:2; Resp. to SPUF ¶ 114.)

- *Bad Day to Be a Beer – Christmas Edition*, which shows the Grinch stuck in a beer stein, does not parody the Grinch. Weekend Warrior claims the design "makes him even more upset at his life's circumstances" by having him "trapped in a stein." (Resp. to SPUF ¶ 147.) The design simply continues the Grinch's grumpy theme rather than commenting on it. Weekend Warrior admitted the design does not critique Dr. Seuss. (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2794:21–2795:1; Resp. to SPUF ¶ 148.)

- *Ameri-CAN Eagle*, *Meri-CAN Eagle*, and *Ameri-CAN v2*—beer cans with mullets and sunglasses—do not parody the Budweiser and Pabst Blue Ribbon designs they copy. Weekend Warrior argues these works convey "extreme patriotism" (Resp. to SPUF ¶¶ 122, 152–57) but amplifying the originals' patriotic theme is not commentary on it. Weekend Warrior conceded: "I don't know if it's necessarily a

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

comment, I guess. Maybe that's not the right word." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2810:7-10, 2813:15–21; Resp. to SPUF ¶¶ 123, 153, 158.)

- *Uncle Sam's American Lager*, a Samuel Adams knockoff, likewise amplifies the original's patriotic message, and is not commentary on it. (SPUF ¶¶ 163–64.) Weekend Warrior testified the design does not comment on Samuel Adams: "I guess not in any sort of -- yeah." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2802:18–21; Resp. to SPUF ¶ 164.)

- *Griddy Cerveza*, a dancing Corona bottle, does not parody the Corona design. Weekend Warrior argues the design "reverses the parody" from another design. (Resp. to SPUF ¶ 134.) But a reverse parody is no parody—depicting Corona as fun is a familiar part of Corona's own marketing. Weekend Warrior confirmed, "I don't know if there's anything, like, specific commentary." (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2805:10–17; Resp. to SPUF ¶ 135.)

- *Fantasy Football Legend* does not parody the *Conan the Barbarian* poster it copies. Weekend Warrior claims the design parodies the original "by replacing a barbaric war-hero with a guy who really loves fantasy football." (Resp. to SPUF ¶ 181.) This is not commentary on the movie or its poster—it is substitution. Weekend Warrior admitted that Mr. Whelan "wasn't even trying to go for Conan" and used the image simply as a model for "a warrior" with football gear. (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2839:19–2840:4; Resp. to SPUF ¶ 182.)

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

- *Real American – Uncle Sam* does not parody the Hulk Hogan work it copies. Weekend Warrior argues the design "recasts Mr. Hogan's muscle-flexing nationalism in the form of the spiritual embodiment of America itself," but articulates no message. (Resp. to SPUF ¶ 201.) Weekend Warrior admitted the design does not comment on whether Hulk Hogan's patriotism is good or bad (Weekend Warrior 30(b)(6) Dep. (06-26-25), Doc. 55-12 at PageID 2808:18–20; Resp. to SPUF ¶ 202)—it merely riffs on the original's patriotic theme without commenting on it.

- *Make Mullets Great Again*, *I Want Brew*, *Can't Get Hungover*, *Papa Woody*, *Pat McCrotch*, and *Ameri-CAW* do not parody the works they copy, and Weekend Warrior does not contend otherwise. (Resp. to SPUF ¶¶ 207, 214, 221, 228, 234, 240.) Without parody as justification, Weekend Warrior has even narrower ground on which to defend its unauthorized copying. Weekend Warrior made only minor differences, but merely adding new expression, meaning, or message, is not sufficient to show fair use. *Warhol*, 598 U.S. at 543. For example, Weekend Warrior's brief argues that *I Want Brew* differs from the original work it copied by changing the color of the beer, making unspecified changes to the head of beer and collar, making the bowtie "crisper and bouncier," and adding stars and words. (Opp. at 39.) It focuses on this minutiae because it copied everything else.

### b) <u>Under the Second Factor, Weekend Warrior Has No Answer to the Creative Nature of the Underlying Works</u>

Weekend Warrior downplays the second fair use factor, but when properly applied, it favors Amazon. The factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). On that question there is no dispute: the works Mr. Whelan copied are highly creative, expressive visual

artworks. The Supreme Court has made clear that such works lie at "the core of the copyright's protective purposes." *Campbell*, 510 U.S. at 586. Weekend Warrior does not and cannot deny this, and under settled doctrine, copying creative works without authorization weighs against fair use even where other factors carry more analytical weight. *Id*.

> **c)** **<u>Under the Third Factor, Weekend Warrior Offers No Legitimate Justification for Copying So Much of the Underlying Works</u>**

The third fair-use factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Weekend Warrior does not deny that it copied the central, most recognizable expressive elements of each underlying work. Weekend Warrior's only justification is its repeated assertion that the designs are parodies, coupled with arguments about minor changes to details like Uncle Sam's bowtie or the addition of added snowflakes, writing, shading, and beer to Coca-Cola's classic Santa design. (Opp. at 37–40.) But as explained under the first factor, Weekend Warrior has not identified any reasonably discernible commentary on the originals. And its changes are insignificant, whereas its copying is pervasive. Without a legitimate parodic purpose, the justifications Weekend Warrior offers for copying fail. And Weekend Warrior's appeals to differences between the works or to supposed "new messages" do not justify the amount taken, because the third factor turns on the taking of the original's protected expression, not on changes or alleged new meaning in the secondary work. Even if parody were present, *Campbell* permits a parodist to take only so much of the original as is necessary to "conjure up" the original, not the heart of the work simply because it is effective. 510 U.S. at 588. Weekend Warrior reproduced the core expressive elements of the originals wholesale, copying of that magnitude "merely . . . to get attention" is precisely what *Campbell* excludes. *Id.* at 580–81.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

**d)**     <u>**Weekend Warrior Misstates the Fourth Factor's Market-Harm Inquiry**</u>

The fourth factor does not focus on whether the copier sells the same product as the rightsholders, but "the effect of the use upon the *potential* market for or value of the copyrighted work." 17 U.S.C. § 107(4) (emphasis added). Thus, the inquiry is not limited to the markets copyright owners already exploit but also those they would in general develop or license others to develop. *See Warhol*, 598 U.S. at 535–36. Amazon's undisputed evidence shows that many of the rightsholders whose works Weekend Warrior copied *already* license their imagery for t-shirts and other merchandise. Weekend Warrior's focus on the primary goods those companies sell (e.g., beer and movies) misses the point, because the fourth factor protects downstream licensing markets for the copyrighted works themselves. (Opp. at 41–42.) The Second Circuit's analysis in *Castle Rock* is instructive: an unauthorized *Seinfeld* trivia book threatened a protectable licensing market even though it did not compete with television programming, because it occupied a "market niche that Castle Rock would in general develop." *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 145–46 (2d Cir. 1998). The same logic applies here—t-shirts are a core licensing market for popular imagery, and Weekend Warrior's products compete directly with licensed merchandise the rightsholders offer or could offer. This potential has been recognized by at least Anheuser-Busch and Conan Properties, which sent cease-and-desist letters to Weekend Warrior for unauthorized use of their intellectual property. (Resp. to SPUF ¶¶ 115, 184.)

Weekend Warrior's remaining arguments reflect further misunderstandings of the fourth fair-use factor. Its assertion that its designs are "different" and therefore not substitutes for licensed merchandise again looks to the wrong question. (Opp. at 40–41.) Under *Warhol*, even a work with new expression can threaten a protected licensing market when it is sold for the same commercial purpose. *See* 598 U.S. at 539. Weekend Warrior's digressions about Amazon's subpoenas are

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

similarly misplaced. Amazon's investigation into the validity of Weekend Warrior's designs, including discovery into the preexisting works Weekend Warrior itself identified, is the norm. (Opp. at 41.) While Weekend Warrior seeks to recast Amazon's efforts as "scorched-earth litigation strategy," it does not deny that several companies sent cease-and-desist letters, highlighting Weekend Warrior's unauthorized use of third-party intellectual property. (Resp. to SPUF ¶¶ 115, 184.) The fourth factor focuses on harm to "potential" markets. 17 U.S.C. § 107(4). It does not condition market harm on enforcement activity.

Because Weekend Warrior's t-shirts occupy the same merchandise markets that rightsholders already exploit, and that *Warhol* held copyright law protects, the fourth factor weighs heavily against fair use.

**B.**      **The DMCA Safe Harbor Protects Amazon From Liability For The Unsold Listings**

     **1.**      **Amazon Reasonably Implements Its Repeat-Infringer Policy Under § 512(i)**

Weekend Warrior's § 512(i) challenge fails because Amazon terminated repeat infringers once it learned of the allegations—exactly what the statute requires. (Opp. at 44–45.) Weekend Warrior identifies three accounts, ██████████████████████████████████ ████████ (Opp. at 44–45, 50.), but the undisputed record shows that Amazon terminated these accounts. (Resp. to SPUF ¶ 29; Doc. 74-26 at PageID 8392.) This satisfies § 512(i). *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("A policy is unreasonable only if the service provider failed to respond when it had knowledge of the infringement."). It is also undisputed that Amazon *terminated* about ██ other accounts associated with accused products. (Resp. to SPUF ¶ 97.) Nor does Weekend Warrior offer evidence that Amazon allows terminated users to rejoin Merch, refuses to terminate any known repeat infringer, or impedes rightsholders from submitting notices.

The remainder of Weekend Warrior's repeat-infringer termination policy argument has little to do with whether Amazon maintains and enforces a repeat-infringer policy at all and instead fixates on how Amazon evaluated Weekend Warrior's own notices. (Opp. at 43–47.) But § 512(i) requires a working notification system—not a perfect one—and *Ventura Content, Ltd. v. Motherless, Inc.* makes clear that the statute tolerates "judgment, not a mechanical test" in evaluating whether to terminate infringers. 885 F.3d 597, 617–18 (9th Cir. 2018) ("Safe harbor eligibility does not require perfection, just reasonable implementation of the policy in appropriate circumstances." (cleaned up).) Weekend Warrior's anecdotes about its individual experience do not remotely show that Amazon's notification system is nonexistent or nonfunctional.

Weekend Warrior argues Amazon let Weekend Warrior's notices "fall into a vacuum," citing *Ellison v. Robertson*, 357 F.3d 1072, 1080 (9th Cir. 2004). (Opp. at 47.) Its reliance on *Ellison* is misplaced. There, AOL had broken its notification system by changing the email address for infringement notices but without notifying rightsholders or providing any forwarding to the new address. *Id.* Nothing comparable happened here. Amazon's system operated appropriately: Amazon investigators reviewed Weekend Warrior's submissions and, ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ concluded the sender could not be authenticated as the rightsholder. (SPUF ¶¶ 74–78; Resp. to SPUF ¶¶ 74, 77–78.) A system that automatically rubber-stamps every submission—including those bearing hallmarks of fraud— would invite abuse and undermine the DMCA's balanced notice-and-takedown framework. Amazon's fraud screens are the sort of discretionary safeguards *Ventura* endorses, not evidence of a broken system.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Weekend Warrior's assertion that Amazon's conduct was "willfully dishonest" (Opp. at 62) is rhetoric, not record evidence, and it does not convert an isolated incorrect classification into a statutory violation. The undisputed evidence confirms the opposite: Amazon employs more than ███████████, blocks more than █████ designs each month, and has terminated approximately ███ accounts associated with the accused infringing listings. (Resp. to SPUF ¶¶ 32, 56, 97.) That is consistent with a functioning notification-and-termination system operating as § 512(i) envisions.

## 2. The Unsold Listings Were Stored at the Direction of Users Under § 512(c)(1)

Weekend Warrior's argument that the Unsold Listing images were not stored "at the direction of a user" under § 512(c)(1) because Amazon manufactures Merch products misses the point. (Opp. at 48–49.) Amazon's motion seeks safe harbor protection only for *Unsold* Listings— i.e., product listings for which Amazon indisputably never sold or manufactured a single physical product. (Resp. to SPUF ¶¶ 4, 18, 72.) For those listings, Amazon's role was limited to automatically rendering mockups by overlaying user-submitted images onto product templates (Resp. to SPUF ¶ 12, 14)—precisely the kind of accessibility-enhancing processing that courts have held remains user-directed. *Ventura*, 885 F.3d at 606 (content remains stored at the direction of the user where service provider's activities were "'narrowly directed' towards enhancing the accessibility" of user-uploaded content) (quoting *Mavrix Photographs, LLC v. LiveJournal, Inc.*, 873 F.3d 1045, 1056 (9th Cir. 2017)); *Davis v. Pinterest, Inc.*, No. 22-15804, 2023 WL 5695992, at *1 (9th Cir. Sept. 5, 2023) (user-directed element satisfied even where service provider's algorithms "alter user-uploaded content to facilitate access"); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 39–40 (2d Cir. 2012) (automated "related videos" function protected).

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Weekend Warrior argues Amazon's content moderation is evidence against automatic rendering. (Resp. to SPUF ¶ 12; *see also* ¶¶ 9, 13–15.) The opposite is true: courts consistently hold that content moderation preserves—not forfeits—safe-harbor eligibility. *See Ventura*, 885 F.3d at 606; *UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 718 F.3d 1006, 1027–28 (9th Cir. 2013); *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1148 (N.D. Cal. 2008) (service provider does not lose safe-harbor protection through automated processes that facilitate user access). Weekend Warrior's contrary rule would penalize voluntary anti-infringement efforts—a result no court has endorsed and Congress did not intend.

Weekend Warrior ignores Amazon's lead case, *Wallster, Inc. v. Redbubble, Inc.*, 2024 WL 3313746 (C.D. Cal. May 31, 2024), where the court held that Redbubble—a print-on-demand service like Merch—qualified for the DMCA safe harbor for unsold listings, expressly rejecting the argument that content moderation defeated eligibility. *Id.* at *5.

Weekend Warrior's reliance on *Atari* fares no better. *Atari* denied summary judgment because Redbubble displayed "the designs on Redbubble-selected *physical products*." 515 F. Supp. 3d at 1113–14 (emphasis added). Here, no physical products exist for the *Unsold* Listings. Amazon seeks safe-harbor protection only for listings that never resulted in a manufactured item—making *Atari*'s "physical products" reasoning inapplicable.

The record and the case law align on the dispositive point: the Unsold Listings consist of user-submitted content stored and displayed through automated processes that fall squarely within § 512(c)(1).

### 3.  Amazon Lacked Red-Flag Knowledge of the Unsold Listings

Weekend Warrior contends that Amazon had red-flag knowledge under § 512(c)(1)(A)(ii), but its evidence fails on two independent grounds. Weekend Warrior first argues that, before suit, it "provided [Amazon] a link to [its] entire t-shirt catalogue." (Opp. at 49–50.) But the notice did

not allege infringement of the t-shirt catalog (the DMCA requires "specific knowledge of particular infringing activity," *Viacom*, 676 F.3d at 32), and general awareness that infringement might occur is insufficient, *Shelter Cap.*, 718 F.3d at 1023. In any event, a notice that "fails substantially to comply" with § 512(c)(3)(A) cannot establish red-flag knowledge. 17 U.S.C. § 512(c)(1)(B)(i). An unexplained link to an entire catalog—with no identification of specific infringing material— falls short of substantial compliance.

Weekend Warrior's apparent fallback contention that Amazon's investment in "sophisticated image policing technology" creates an elevated "red flag" duty to "scan[]" designs for infringement "before being uploaded in the first place" (Opp. at 51) is untethered to the DMCA's text and unsupported by precedent. The DMCA sets a uniform standard; it does not impose a sliding scale of obligations tied to a service provider's resources or technological capability. Nor does the DMCA impose any affirmative obligation on a service provider to implement filtering technology. *See, e.g., Viacom*, 676 F.3d at 35 ("DMCA safe harbor protection cannot be conditioned on affirmative monitoring . . . § 512(m) is incompatible with a broad common law duty to monitor or otherwise seek out infringing activity based on general awareness that infringement may be occurring."); *UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F.Supp.2d 1099, 1111 (C.D. Cal. 2009), *aff'd sub nom. UMG Recordings, Inc. v. Shelter Cap. Partners LLC*, 2013 WL 1092793 (9th Cir. Mar. 14, 2013) (rejecting argument that flaws in the provider's filtering system defeated safe harbor protection; emphasizing that the DMCA does not require filtering technology).

### 4. Amazon Acted Expeditiously Upon Obtaining Knowledge

Once Amazon learned of specific infringement allegations through this lawsuit, it acted "expeditiously," as § 512(c)(1)(A)(iii) requires. Within two days of filing, Amazon began removing listings; within five weeks, it had removed over ███ listings; and it ultimately removed

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

more than ▮▮▮ listings, despite Weekend Warrior only identifying 560 listings as allegedly infringing. (Resp. to SPUF ¶¶ 87, 91, 94.) Every listing identified by Weekend Warrior was removed within 14 days of Amazon's learning of the allegation. (SPUF ¶¶ 89–92, 95–96.) Courts routinely find 14-day removal expeditious. *McGucken v. Shutterstock, Inc.*, No. 22 CIV. 00905 (JHR), 2023 WL 6390530, at *9–10 (S.D.N.Y. Oct. 2, 2023) (granting summary judgment of no liability under the DMCA, deeming removal within 14 days "expeditious"); *Avdeef v. Google, Inc.*, No. 4:14-CV-788-A, 2015 WL 5076877, at *3 (N.D. Tex. Aug. 26, 2015) (same).

### 5.    Amazon Lacks the Right and Ability to Control and Received No Direct Financial Benefit

Weekend Warrior's theory that Amazon has "the right and ability to control" infringing activity and receives "a financial benefit directly attributable to" it is unsupported by any case law or material evidence. 17 U.S.C. § 512(c)(1)(B). Weekend Warrior first argues "the right and ability to control" can be shown by "purposeful conduct," without explaining what purposeful conduct Amazon allegedly engaged in. (Opp. at 51 (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1046 (9th Cir. 2013), which references *Grokster,* 545 U.S. 913). In *Grokster*, the defendant "sent users a newsletter promoting its ability to provide particular, popular copyrighted materials" and the software's "principal object" was downloading copyrighted works. *Id*. at 926. In *Columbia Pictures*, the defendant curated and labeled likely infringing content and "personally assisted [users] in locating the files." 710 F.3d at 1046. The facts here point in the opposite direction. Far from helping users locate infringing content, Amazon maintains extensive systems designed to detect and remove it. (SPUF ¶¶ 14–16, 29–32.) Aside from content moderation, Amazon undisputedly does not review designs before upload, does not dictate what creators post, and does not select which designs to feature. (SPUF ¶¶ 9, 13, 15.)

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Weekend Warrior's other "right and ability to control" arguments also miss the mark. Its claim that ███ of Merch designs are "legitimately accused of infringement" (Opp. at 52) is irrelevant and mathematically flawed. (emphasis omitted.) Weekend Warrior's back-of-the-envelope calculation divides notices Amazon *across its entire website* by designs on Merch alone—an apples-to-oranges ratio that wildly inflates the supposed infringement rate. And even if this number were accurate, this says nothing about whether Amazon exerts the "substantial influence" over user activity that *Columbia Pictures* requires.

Nor does Weekend Warrior advance its theory by pointing to Amazon's image-detection technology and supposed lack of content-moderation staffing. (Opp. at 54.) The mere ability to locate infringing material does not satisfy the "right and ability to control" standard. *See, e.g.,* *Columbia Pictures*, 710 F.3d at 1045 ("right and ability to control infringing activity involves something more than merely having the general ability to locate infringing material and terminate users' access . . . the service provider must [also] 'exert[ ] substantial influence on the activities of users") (quoting *Shelter*, 718 F.3d at 1030.)

Its "financial benefit" theory is equally deficient. The DMCA requires a benefit "directly" and "distinctly attributable to the infringing material at issue," *Ventura*, 885 F.3d at 613, and it is undisputed that the Unsold Listings generated no revenue. (Resp. to SPUF ¶ 72.) Weekend Warrior raises no material factual disputes on this issue, raising only a quibble that not all content creators are paid royalties. (*Id*. ¶ 19). As its theory, Weekend Warrior instead offers speculative ecosystem-wide advantages—copyright dilution and lost growth opportunities—but § 512(c)(1)(B) does not recognize reputational or competitive effects. Weekend Warrior offers no evidence of direct benefit—only stray social media commentary that Amazon has "cheaper" t-shirts and "more selections." (Opp. at 55).

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

## C. Weekend Warrior Provides No Substantive Opposition to Amazon's Attorney Fee Ineligibility Argument

Weekend Warrior offers no substantive response to Amazon's § 412 argument that late registration bars attorney-fee recovery for 22 asserted works. Its only answer is that fee eligibility should be decided at the end of the case. (Opp. at 56–57.) But when the relevant dates are not disputed, Sixth Circuit courts routinely resolve § 412 fee eligibility before trial, regardless of procedural posture. *See, e.g., Compass Homes, Inc. v. Trinity Health Grp., Ltd.*, No. 2:13-CV-647, 2016 WL 3406054, at \*9–10 (S.D. Ohio June 21, 2016) (granting summary judgment that § 412 barred attorney's fees based on timing of registration); *Remark Home Designs, LLC v. Oak St. Condo Projects, LLC*, No. 16-CV-14305, 2017 WL 5714489, at \*6–7 (E.D. Mich. Aug. 1, 2017) (denying motion to amend to add an attorney's fees claim because § 412 foreclosed eligibility); *Allen Trench Safety Corp. v. Ozark Laser Sys.*, No. 1:15-CV-255, 2015 WL 4475645, at \*7 (W.D. Mich. July 21, 2015) (dismissing attorney-fee request on § 412 grounds).

Resolving the issue now is not premature because the dates are not disputed. For each of the 22 copyrights, the parties have stipulated that (1) first publication occurred more than three months before registration, and (2) alleged infringement commenced before registration. (Resp. to SPUF ¶ 103.) Section 412 prohibits attorneys' fees for infringement that "commenced after first publication" but "before the effective date of [] registration," unless registration occurred within three months of publication. 17 U.S.C. § 412. Weekend Warrior stipulated to not seek statutory damages, yet refused to extend the stipulation to fees. That is not a genuine dispute—it is an attempt to delay a significant issue ripe for decision. The Court can and should hold that Weekend Warrior is ineligible for attorney's fees on these 22 copyrights.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

### D. **Weekend Warrior's Claims of Infringement for Five Unasserted Copyrights Cannot Survive Summary Judgment**

Weekend Warrior cannot resurrect claims for five copyrights it failed to assert. It expressly declined to plead claims for *King of the Kill* and *St. PatRizz Day* (Resp. to SPUF ¶ 98); never identified *Down Goes Liver* in any operative complaint (*id*. ¶ 99); has identified no alleged infringement of *Ameri-CAN v2* (*id*. ¶ 102); and first accused *Shut-Up Liver* listings in its opposition brief—six months after the Court's order to identify them (*id*. ¶¶ 101–02).

<u>*King of the Kill*</u> and <u>*St. PatRizz Day*</u>: Weekend Warrior never moved to amend its list of asserted copyrights—not after *St. PatRizz Day* was registered in November 2024 and not after *King of the Kill* was registered in July 2025. (SPUF ¶ 100).

Having declined to use Rule 15(a), Weekend Warrior now seeks to use Rule 15(b)(2) as a backdoor. It argues that Amazon implicitly consented through discovery (Opp. at 57), but for implied consent "a defendant must have notice that an implied claim is being tried against him." *Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 595 (6th Cir. 2015). Here, Weekend Warrior's FAC stated it was *not* asserting these claims—the FAC could not be clearer: Weekend Warrior "does not assert direct or indirect copyright infringement claims as to these designs at this time." (Doc. 17 at PageID 125, n.1; Resp. to SPUF ¶ 98.) Furthermore, Amazon relied on Weekend Warrior's statement in the FAC and treated these works as not at issue during discovery. *See* Report of Caroline de Baere, Doc. 55-3 at PageID 2170 n.1 (expert report not analyzing *Happy St. Rizz Day* and *King of the Kill* because of Plaintiffs' FAC representations). Thus, Amazon has not, and currently does not, consent to the additions of these two works at summary judgment.

Weekend Warrior's reliance on *American Family Mutual Insurance Co. v. Hollander*, 705 F.3d 339, 348 (8th Cir. 2013), is misplaced. Consistent with *Kehoe*, *Hollander* requires "actual

notice of an unpleaded issue" and "an adequate opportunity to cure any surprise resulting from the change in the pleadings." *Id.* Amazon reasonably relied on Weekend Warrior's representation of what it was asserting, foregoing third-party preexisting work discovery, depositions, and expert analysis on these copyrights. (Opp. at 59.) Weekend Warrior cannot now complain that Amazon took it at its word.

*Down Goes Liver*: Weekend Warrior concedes it never pleaded this registration: "WW does not currently assert claims for infringement of Down Goes Liver herein." (Opp. at 60; Resp. to SPUF ¶ 99.) It attributes its inclusion to "a simple mistake"—confusing it with *Shut-Up Liver*. (Opp. at 60.) The Court should grant summary judgment on this abandoned claim.

*Ameri-CAN v2*: Weekend Warrior's Court-ordered list of accused listings does not include this copyright. (5/7/25 Minute Order; Docs. 33, 33-1, 33-2.) In fact, Weekend Warrior concedes it does not allege infringement of this copyright. (*See* Opp. at 61 (merely "reserv[ing] the right to amend its accused-ASIN list upon discovery of any Amazon products that infringe Ameri-CAN V2").) A copyright plaintiff must prove copying to survive summary judgment. *Murray Hill Publ'ns, Inc.*, 361 F.3d at 316; *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511–12 (6th Cir. 2008) (affirming dismissal where plaintiff failed to "identify any specific works by defendants that infringe on plaintiff's copyright"). The Court should grant summary judgment because Weekend Warrior identifies no infringing products.

*Shut-Up Liver*: Weekend Warrior's *Shut-Up Liver* accusations came too late, and allowing them to be added now would prejudice Amazon. Weekend Warrior identified 11 accused product listings for this work *for the first time in its November 21, 2025, opposition brief*—more than six months after the Court's May 7, 2025, order to identify all accused listings. (Opp. at 61; SPUF ¶¶ 101–02.) With no *Shut-Up Liver* product listings placed at issue, Amazon had no reason to

depose witnesses about it or to challenge its validity. Discovery is now closed, and the summary judgment deadline has passed. Reopening discovery would be prejudicial because it would require further fact discovery, expert analysis, and likely summary judgment briefing. *See Davis v. Pinterest, Inc.*, 601 F. Supp. 3d 514, 527 (N.D. Cal. 2022) (finding "failure to timely disclose these new alleged infringements" before summary judgment briefing was "inherently prejudicial"), *aff'd*, No. 22-15804, 2023 WL 5695992 (9th Cir. Sept. 5, 2023).

***

For the foregoing reasons, summary judgment should be granted on all five copyrights: *King of the Kill* and *St. PatRizz Day* (unpleaded, never amended), *Down Goes Liver* (abandoned); *Ameri-CAN v2* (no accused products); and *Shut-Up Liver* (accused listings disclosed six months after Court Order, after discovery closed).

### E. Weekend Warrior Cannot Obtain Enhanced Statutory Damages for Willful Infringement

To counter Amazon's evidence of no willful infringement, Weekend Warrior's Opposition offers generalized arguments untethered to any specific alleged infringement. The undisputed facts foreclose willfulness as to each.

#### 1. It is Undisputed That the 22 Stipulated Works Are Not Eligible for Statutory Damages

For 22 of the asserted copyrights, Weekend Warrior has already stipulated it would not seek statutory damages. (*See* Doc. 41 at PageID 2061–63.) Because it cannot recover statutory damages for those works, Weekend Warrior necessarily cannot recover enhanced statutory damages either. Weekend Warrior does not acknowledge this bar, but it also does not dispute its ineligibility. Partial summary judgment of no enhanced statutory damages for these 22 works is therefore appropriate.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

### 2. Weekend Warrior Identifies No Evidence Supporting Enhanced Damages for the 26 Copyrights Eligible for Statutory Damages

To obtain enhanced statutory damages, Weekend Warrior must prove that Amazon "knowingly or recklessly" infringed the 26 remaining copyrights. *Bridgeport Music, Inc.*, 585 F.3d at 278. It cannot do so. Weekend Warrior points to nothing indicating Amazon had actual pre-suit knowledge of infringement, nothing that could allow a factfinder to infer reckless disregard before suit, and nothing suggesting Amazon engaged in willful infringement after the litigation began.

### a) It is Undisputed That Amazon Lacked Pre-Suit Actual Knowledge

The undisputed facts foreclose willful infringement based on actual notice. It is undisputed that Weekend Warrior did not specifically identify 24 of the 26 copyrights eligible for statutory damages or allegedly infringing listings in any pre-suit notice. (Resp. to SPUF ¶¶ 70, 71.) It is further undisputed that, because ███████████████████████████, Amazon did not review the attempted pre-suit notices—including for *Ameri-CAN Eagle* and *Pat McCrotch*. (Resp. to SPUF ¶ 80.) Weekend Warrior nevertheless argues Amazon *should have* known, but identifies no evidence Amazon *actually* knew. For example, even though Weekend Warrior once provided a catalog link to its designs in a notice to Amazon, Weekend Warrior does not contend that the notice even alleged infringement for any of the 24 works—much less that Amazon reviewed the notices or accessed the link to begin with. (Opp. at 65.) With no evidence that Amazon had actual knowledge, Weekend Warrior cannot satisfy *Bridgeport Music*'s requirement of acting "knowingly." 585 F.3d at 278.

### b) There is No Evidence Upon Which a Jury Could Reasonably Find Pre-Suit Recklessness or Willful Blindness

Nor do any of Weekend Warrior's reckless infringement theories support a willfulness finding. First, Weekend Warrior argues that Amazon acted willfully because ████████

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

███████████████, resulting in Amazon not reviewing Weekend Warrior's notices alleging infringement. (Opp. at 62.) But it is undisputed that Amazon did so only after applying its standard fraud-screening protocol—applying the same criteria used for all senders—and after an investigation failed to verify any relationship between the sender and the claimed rights owner. (Resp. to SPUF ¶¶ 77–79.) Weekend Warrior similarly contends that while ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

(Opp. at 67.) Even if fully credited, these critiques ████████████████, at most, reflect a good-faith anti-fraud system that (justifiably) misclassified a sender in a high-volume environment—conduct that does not even rise to negligence, let alone the reckless disregard required for willfulness. *See SA Music LLC v. Apple, Inc.*, 592 F. Supp. 3d 869, 884 (N.D. Cal. 2022) ("[T]o say that a defendant 'should have known' of a risk, but did not know of it, is to say that he or she was 'negligent' as to that risk."); *Capitani v. World of Miniature Bears, Inc.*, 552 F. Supp. 3d 781, 799 (M.D. Tenn. 2021) (facts that "*may* establish that [defendant] acted negligently [did] not show that [defendant's] conduct constituted willful infringement"). It is also undisputed that Weekend Warrior submitted notices that identified only two of the 26 works, so ████████ ███████████████, Amazon would not have received notices for 24 of those works.[12] (Resp. to SPUF ¶¶ 67–68.)

Second, Weekend Warrior suggests that Amazon recklessly ignored all alleged infringement because one of its pre-suit notices supposedly included a link to its entire t-shirt

---

[12] Weekend Warrior asserts that "████ of Amazon's ███████████ infringement notices per year (out of ████████ total designs) are not fraudulent." (Opp. at 66.) But that figure mixes site-wide notice volume with Merch-specific design counts—an apples-to-oranges comparison that sheds no light on Amazon's fraud-screening accuracy for the notices at issue.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

catalog. (Opp. at 63, 65.) Weekend Warrior theorizes this link triggered a duty to investigate that would have revealed the alleged infringement, and that Amazon acted recklessly by not investigating. But Weekend Warrior's notice alleged infringement of only a *single* work by a single listing, and the link for that one work merely happened to display other designs that the notice did *not* identify. (Doc. 74-24 at PageID 8390.) Further, when Weekend Warrior sent this link in May 2022, none of the relevant 26 works had even been published: the first-publication dates for all 26 works postdate May 2022. (Doc. 17 at PageID 139–243.) Thus, even if Amazon had clicked the link in May 2022, none of the 26 works would have appeared as they were still unpublished. A notice that identified no infringement and linked to a page that could not have displayed the works at issue is not evidence of recklessness.

Weekend Warrior's reliance on case law is equally flawed. Weekend Warrior cites *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502 (7th Cir. 1994) to argue that Amazon willfully infringed because it did not investigate Weekend Warrior's claims. But *Wildlife* included far more: a notice from U.S. Customs, direct pre-suit contact between the defendant and plaintiff's counsel, a limited product universe, and the defendant's false claim that it had all but terminated sales of the knock-off duffel bags. *Id.* at 506. Here, by contrast, Amazon had no pre-suit contact with Weekend Warrior's counsel and no actual knowledge of the allegations. (Resp. to SPUF ¶¶ 70, 71, 80.) The weight of authority confirms that willful infringement requires specific notice of the alleged infringement. *See King Recs., Inc. v. Bennett*, 438 F. Supp. 2d 812, 861–62 (M.D. Tenn. 2006) (without a "specific statement . . . of any particular violations," "the quality of the notice was so poor that [defendant] could not know which of Plaintiff's Titles he was allegedly infringing."); *see also Video Views, Inc. v. Studio 21, Ltd.*, 925 F.2d 1010, 1021 (7th Cir. 1991) (no willfulness for two films not specifically listed in notice); *Atari*, 515 F. Supp. 3d at 1115–17

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

(rejecting "needle in a haystack" theory to find no willfulness where plaintiff notified defendant about additional infringing listings but did not identify them). Contrary to Weekend Warrior's assertions, however, that specific notice did not occur here.

Weekend Warrior's attempt to distinguish *Michael Grecco* also fails. (Opp. at 65.) As described in Amazon's opening brief, that decision supports Amazon: a good-faith anti-fraud filtering system is not evidence of reckless avoidance of knowledge of the alleged infringement. (*See* Doc. 72 at PageID at 7020, 7022 (citing *Michael Grecco Prods., Inc. v. Fandom, Inc.*, No. 2:24-CV-05963 MWC (BFMX), 2025 WL 1675668, at *4 (C.D. Cal. May 9, 2025), *reconsideration denied,* No. 2:24-CV-05963 MWC (BFMX), 2025 WL 2271482 (C.D. Cal. July 9, 2025)).) Weekend Warrior attempts to distinguish *Michael Grecco* by arguing that the filtering there occurred because the plaintiff did not send the defendant verification codes. (Opp. at 65.) But that distinction misunderstands the decision. The court's reasoning did not turn on the plaintiff's unseen conduct; it turned on the defendant's state of mind. The court found no willfulness because the verification system was implemented "due to spam attacks, not as a deliberate action to avoid learning about the infringement." *Michael Grecco Prods., Inc*, 2025 WL 1675668, at *4 (cleaned up). Here too, it is undisputed that Amazon adopted its ███ system to prevent fraud in a high-volume environment, not to avoid receiving legitimate infringement complaints. (*See* Resp. to SPUF ¶¶ 45–47.)

Weekend Warrior's attempts to discount Amazon's other authorities fare no better. (Opp. at 66 n.9.) Those decisions emphasize that courts infer willfulness, if at all, only where a defendant receives clear notice that specifically identifies the alleged infringement and then fails to remediate. *See Bridgeport Music, Inc.*, 585 F.3d at 278–79 (holding the district court correctly instructed jury to find willfulness "if a defendant acquires knowledge that its actions infringe a

copyright and the defendant nevertheless continues such infringement"); *Philpot v. L.M. Commc'ns II of S.C., Inc.*, 343 F. Supp. 3d 694, 701 (E.D. Ky. 2018) (no willfulness when defendant had no knowledge and immediately removed asserted content once been made aware of the infringement); *SA Music*, 592 F. Supp. 3d at 882–83 (granted summary judgment for Apple when Apple lacked actual knowledge and relied on uploader's contractual representations); *King Recs.,* 438 F. Supp. 2d at 861–62 (no willfulness because pre-suit notices were insufficient to provide notice); *VHT, Inc.*, 918 F.3d at 749 (reversed and found no willfulness as to 2,700 photos because "minimal notice of infringement does not itself establish that any subsequent infringement was willful"). As explained at length *supra*, that was not the case here.

Finally, the other cases Weekend Warrior relies on are inapposite. It cites to a portion of *H-D U.S.A.*, that addresses trademark contributory infringement law, not copyright willful infringement law. 311 F. Supp. 3d at 1040. And while *Ducks Unlimited, Inc. v. Boondux LLC* addressed copyright, the court declined to find willful copyright infringement—despite the fact that the defendant deliberately copied and sold thousands of products nationwide. 2017 WL 3579215, at *40–41 (W.D. Tenn. Aug. 18, 2017). Weekend Warrior nevertheless quotes *Ducks Unlimited* for the proposition that willfulness may be shown by "repeatedly ignoring warnings from a copyright holder," *id*. at *40, but the record here shows nothing of the sort. There were no pre-suit warnings for 24 works, and the only attempted notices for the remaining two ██████████ and never reviewed. (Opp. at 63; Resp. to SPUF ¶¶ 70, 71, 80.)

### c)  <u>There Is No Evidence Upon Which a Jury Could Reasonably Find Post-Suit Willfulness</u>

Weekend Warrior does not dispute Amazon's extensive post-lawsuit efforts to stop the alleged infringement. The undisputed record shows that Amazon began removing listings within two days of Weekend Warrior filing its complaint. (Resp. to SPUF ¶ 87.) But Amazon's efforts

did not stop there. Within nine days of Weekend Warrior initiating this action, Amazon's counsel proactively contacted Weekend Warrior's counsel to update him on "steps Amazon has taken to remove accused listings from the Amazon.com website," or that, six days after that, Amazon's counsel encouraged Weekend Warrior's counsel to supply high-quality images for Amazon's proactive identification efforts. (*Id.* ¶¶ 88–90.) Crucially, Weekend Warrior does not dispute that Amazon removed every listing identified by Weekend Warrior within 14 days. (*Id.* ¶ 92.) In total, Amazon removed more than ███ listings within four weeks of Weekend Warrior filing suit, and ultimately removed more than ███ listings—far exceeding the 560 listings alleged in this action. (*Id.* ¶¶ 91–92, 94.) These undisputed steps foreclose any finding that Amazon willfully infringed after receiving actual notice through this lawsuit.

Weekend Warrior attempts to undermine these undisputed facts by pointing to (1) the continued sales for certain listings for a short period after suit was filed, and (2) the temporary ███ ██████████████████████████████████████████. (Opp. at 62.) Neither action supports a willfulness finding. Post-suit sales do not establish willful infringement where, as here, the sales occurred while Amazon was diligently removing listings and Amazon took down every listing identified within 14 days. The test is good faith, not perfection, and the temporary presence of allegedly infringing items during a large-scale removal effort does not suffice. *See King Recs.*, 438 F. Supp. 2d at 862–63 (continued presence of some infringing materials did not undermine overall showing of good faith and reasonable efforts).

Weekend Warrior's second point fails for an even more basic reason: ████████████ ████████████████████████████████████████████████████████████████ ████████ is not copyright infringement. And because Weekend Warrior identifies no sale, no

display, and no missed takedown attributable to the re-addition, there is no underlying act of infringement that could be labeled "willful" in the first place.

## IV.   <u>**CONCLUSION**</u>

When Weekend Warrior's rhetoric is set aside, the issues here are straightforward: Amazon did not engage in the act of copying; did not knowingly facilitate infringement; and did not stand in any relationship that could render the independent creators on Merch its agents. Weekend Warrior's opposition never engages with the governing doctrines and never identifies evidence that matters. The Court should grant summary judgment for Amazon on all claims.

*CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER*

Dated: December 12, 2025

Respectfully submitted,

| | |
|---|---|
| */s/ Moez M. Kaba* | */s/ Klaus H. Hamm* |
| by */s/ Klaus H. Hamm* per email authorization | |
| | Ryan L. Frei (*pro hac vice*) |
| Moez M. Kaba (*pro hac vice*) | Klaus H. Hamm (*pro hac vice*) |
| Jessica N. Trafimow (*pro hac vice*) | Ziyu Ma (*pro hac vice*) |
| HUESTON HENNIGAN LLP | Todd M. Siegel (*pro hac vice*) |
| 1 Little West 12th Street, 2nd Floor | KLARQUIST SPARKMAN, LLP |
| New York, NY 10014 | 121 SW Salmon Street, Suite 1600 |
| Telephone: (646) 930-0415 | Portland, Oregon 97204 |
| mkaba@hueston.com | Telephone: (503) 595-5300 |
| jtrafimow@hueston.com | Facsimile: (503) 595-5301 |
| | ryan.frei@klarquist.com |
| Christine Woodin (*pro hac vice*) | klaus.hamm@klarquist.com |
| Sourabh Mishra (*pro hac vice*) | ziyu.ma@klarquist.com |
| HUESTON HENNIGAN LLP | todd.siegel@klarquist.com |
| 523 West 6th Street, Suite 400 | |
| Los Angeles, CA 90014 | Gregory F. Ahrens |
| Telephone: (213) 788-4099 | Wood Herron & Evans LLP |
| cwoodin@hueston.com | 600 Vine Street, Suite 2800 |
| smishra@hueston.com | Cincinnati, OH 45202 |
| | Telephone: (513) 241-2324 |
| *Counsel for Defendants* | gahrens@whe-law.com |
| *Amazon.com Services LLC and* | |
| *Amazon.com, Inc.* | *Counsel for Defendants* |
| | *Amazon.com Services LLC and* |
| | *Amazon.com, Inc.* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 12, 2025, I caused the foregoing to be transmitted by email to the Clerk of the Court and all counsel of record registered with the Court's CM/ECF system as follows:

Gary F. Franke
gff@garyfrankelaw.com
Gary F. Franke Co., LPA
201 E. Fifth Street, Suite 910
Cincinnati, OH 45202

Keith J. Wesley
kwesley@ellisgeorge.com
Matthew L. Venezia
mvenezia@ellisgeorge.com
George B. A. Laiolo
glaiolo@ellisgeorge.com
Elizabeth Carpenter
ecarpenter@ellisgeorge.com
Amanda Mannshahia
amannshahia@ellisgeorge.com
Diane Torosyan
dtorosyan@ellisgeorge.com
Ellis George LLP
2121 Avenue of the Stars, 30th Floor
Los Angeles, CA 90067

*/s/ Klaus H. Hamm*
Klaus H. Hamm